UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
CHEN XIA LIU AND CHEN HUA LIU

                       Docket No: 20-cv-6369

                Plaintiffs,

      - against -

                          COMPLAINT

HOK KWAI CHAU,
BO JIN ZHU,
WING FUNG CHAU, a/k/a ANDY CHAU,
SALENA CHAU;
TU KANG YANG;
MEI YANG KO;
WING FUNG HOME REALTY GROUP INC.;
WING FUNG CHAU D/B/A WING FUNG REALTY GROUP

                Defendants.
----------------------------------------------------------X

       Plaintiffs Chen Xia Liu and Chen Hua Liu, by their undersigned attorneys, alleges as

follows for this Complaint against Defendants.

## NATURE OF THE CASE
## AND FACTUAL ALLEGATIONS COMMON TO ALL RICO COUNTS

      1.     This action concerns frauds and pattern of racketeering activity perpetrated by

Defendants.

      2.     As set forth below, this action is brought in this court based on diversity

jurisdiction and federal question jurisdiction (18 U.S.C. § 1962, et. seq.).

      3.     Plaintiffs are two individuals who signed a contract to purchase a four family

newly constructed house from 41-23 Haight Realty Inc. at 41-15 Haight Street, Flushing, New

York (the "House").

      4.     The House was to be built by 41-23 Haight Realty Inc. and between November

18, 2010 and November 18, 2015, Plaintiffs paid $750,000 to 41-23 Haight Realty Inc. towards

the purchase price of the House which was under construction.

1

5.      Upon information and belief, 41-23 Haight Realty Inc. never intended on conveying title to Plaintiffs for the House.

6.      41-23 Haight Realty Inc. was and is owned by Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau who used the entities 41-23 Haight Realty Inc., Defendant Wing Fung Home Realty Group Inc. to further their fraudulent scheme and racketeering scheme and enterprise of defrauding many individuals and entities of millions of dollars.

7.      Plaintiffs have lost their $750,000, which was, upon information and belief, taken by Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau, and Plaintiffs did not obtain title to the House.

8.      Plaintiffs were defrauded of $750,000.

9.      As articulated in this complaint, the evidence shows that there are many other individuals and entities of Asian descent who were defrauded of many millions of dollars by Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau, who have a history and pattern of committing fraud.

10.     Upon information and belief, Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau lured Asian buyers and investors into doing business with them, and trusting Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau because all are of Asian nationality, as are their victims.

11.     Upon information and belief, Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau's modus operandi is and has been to defraud Asian buyers and investors, who are hardworking individuals and lack the sophistication to protect themselves.

12.     Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau have been operating a racketeering enterprise defrauding many individuals and entities of millions of dollars, over a long period of time, and Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau are still doing so and victims need to be protected from Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau.

13.     This is an action for (a) violation of the Federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. ("RICO"); (b) fraud; (c) fraudulent inducement; (d) breach of contract; and (e) various common-law and statutory causes of action based on defendants' frauds. Plaintiff brings this action against defendants for compensatory and punitive damages arising from their fraudulent scheme to defraud buyers of houses; Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau's operation of a racketeering enterprise. Other defendants participated in the fraud, conspiracy, and racketeering activity with Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau.

14.     There have been numerous actions filed in New York State Supreme Court by buyers of the houses on the property described below, against 41-23 Haight Realty Inc., because of the frauds and racketeering activity by Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau.

15.     Five of the State Court Litigations related to 41-23 Haight Realty Inc.'s failure and defaults in honoring agreements of sale relating to houses which such buyers had contracted to buy from 41-23 Haight Realty Inc. and the millions of dollars in deposits that the buyers in the five State Court Litigations paid to 41-23 Haight Realty Inc. which funds were diverted and/or converted by and to Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau.

16.     Two of the State Court Litigations related to specific performance of the agreements of sale relating to houses which such buyers had contracted to buy from 41-23 Haight Realty Inc. and the millions of dollars in deposits that the buyers in the two State Court Litigations paid to 41-23 Haight Realty Inc. which funds were diverted and/or converted by and to Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau.

17.     Ultimately, 41-23 Haight Realty Inc. was forced into bankruptcy in the United States Bankruptcy Court for the Eastern District of New York (case no. 19-43441-nhl), and upon information and belief, Plaintiffs and all buyers have lost their deposits for the purchase of homes amounting to millions of dollars, which monies were diverted and/or converted by and to Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau.

18.     Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau have a long history of fraudulent and racketeering activity.

## JURISDICTION AND VENUE

19.     The United States District Court for the Eastern District of New York has jurisdiction over the parties, pursuant to (i) Title 28 of the United States Code §1332(a)(2) as the Plaintiffs and Defendants are citizens of different states.

20.     The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

21.     Additionally, the United States District Court for the Eastern District of New York also has jurisdiction over Plaintiffs' claims under the Racketeering Influenced and Corrupt Organizations Act ("RICO") statute pursuant to 18 U.S.C. § 1962, 18 U.S.C. § 1964(a) and 28 U.S.C. § 1331 over remaining claims pursuant to 28 U.S.C. §§ 1367(a).

22.     The United States District Court for the Eastern District of New York has venue pursuant to Title 29 of the United States Code §1391(b)(1) and Title 29 of the United States Code §1391(b)(2), as Defendants conduct business within and reside within the Eastern District of New York, and the events which are the subject of this action occurred within the Eastern District of New York.

## THE PARTIES

23.     Plaintiff Chen Xia Liu ("Plaintiff Xia") is an individual residing in, domiciled, and is a citizen of the State of Florida.

24.     Plaintiff Chen Hua Liu ("Plaintiff Hua") is an individual residing in, domiciled, and is a citizen of the State of Florida.

25.     Upon information and belief, Defendant Hok Kwai Chau is a resident of, citizen of, and is domiciled in the Eastern District of New York, State of New York residing at 6429 Ellwell Crescent, 1st Floor, Rego Park, New York 11374, within the Eastern District of New York.

26.     Upon information and belief, Defendant Bo Jin Zhu is a resident of, citizen of, and is domiciled in the Eastern District of New York, State of New York residing at 60 Henry Street, Apartment 14C2 a/k/a Apartment 15, New York, New York 10002.

27.     Upon information and belief, Defendant Wing Fung Chau, a/k/a Andy Chau ("Defendant Andy Chau") is a resident of, citizen of, and is domiciled in the Eastern District of New York, State of New York with his residence located at 3 August Lane, Old Westbury, County of Nassau, State of New York and/or 32-37 214th Place, County of Queens, State of New York.

28.     Upon information and belief, Defendant Salena Chau is a resident of, citizen of, and is domiciled in the Eastern District of New York, State of New York with her residence located at 3 August Lane, Old Westbury, County of Nassau, State of New York and/or 3237 214th Place, County of Queens, State of New York.

29.     Upon information and belief, Defendant Salena Chau is the daughter of Defendant Andy Chau.

30.      Upon information and belief, Defendant Tu Kang Yang is a resident of, citizen of, and is domiciled in the Eastern District of New York, State of New York.

31.     Upon information and belief, Defendant Tu Kang Yang is the granddaughter of Defendant Mei Yang Ko.

32.     Upon information and belief, Defendant Mei Yang Ko is a resident of, citizen of, and is domiciled in the Eastern District of New York, State of New York.

33.     Upon information and belief, Defendant Mei Yang Ko is the mother of Defendant Andy Chau, and Defendant Mei Yang Ko is or was the partner of Defendant Andy Chau.

34.     Upon information and belief, Wing Fung Home Realty Group Inc. maintains its principal place of business at 86-22 Broadway, 2nd Floor, Elmhurst, New York, within the Eastern District of New York.

35.     Defendant Salena Chau was involved in the conspiracy to defraud Plaintiffs and other buyers of houses when she entered into a stalking horse bid agreement for the real properties that were owned by 41-23 Haight Realty Inc. and failed to disclose to the United States Bankruptcy Court in the action entitled In Re 41-23 Haight Street Realty Inc., United States Bankruptcy Court, Eastern District of New York, Case No. 19-43441(NHL) (the "41-23

Haight Realty Bankruptcy"), that she was the daughter of Defendant Andy Chau, and she failed to timely deliver the full $3,100,000 deposit in good funds.

36.     It was alleged in 41-23 Haight Realty Bankruptcy that "… based on the record it is apparent that Mr. Chau (Defendant Andy Chau), the Stalking Horse Bidders and Mei Yang Ko and Lian Xiang Xu… all secretly colluded with each other in connection with the sale of the Real Property and wrongfully manipulated the sale process." The bankruptcy trustee moved to retain the $2,730,000 deposit paid by Mei Yang Ko.

37.     In a joinder and statement of 41-31 Haight Street Lender, LLC in support of the Trustee's motion to retain a deposit, filed as Doc # 211 in 41-23 Haight Realty Bankruptcy it stated that Defendant Andy Chau used strawmen to manipulate the sale of the real property owned by 41-23 Haight Realty Inc., for his "personal gain - - ag the expense of all creditors".

38.     Further, in the joinder and statement of 41-31 Haight Street Lender, LLC in support of the Trustee's motion to retain a deposit, filed as Doc # 211 in 41-23 Haight Realty Bankruptcy it stated that "As set forth below Purchaser's Silent Partner has at all relevant times been joined at the hip with Purchaser and Andy Chau – as well as the first set of stalking horse bidders propped up by Mr. Chau (i.e. Tu Kang Yang and Salena Chau a/k/a Andy Chau's daughter). Purchaser's Silent Partner *always knew* the funds it allegedly delivered to the Trustee were subject to forfeiture if the closing of the Real Property purchase did not timely occur, and it was a willing and fully involved participant in Mr. Chau's elaborate and clandestine scheme to manipulate the sale of the Real Property."

39.     Upon information and belief, Defendant Andy Chau d/b/a Wing Fung Realty Group maintains its principal place of business at 86-22 Broadway, 2nd Floor, Elmhurst, New York, within the Eastern District of New York.

40.     Defendant Andy Chau is a licensed real estate salesperson in the State of New York, license number 40CH0928321, employed by, or associated with, Defendant Wing Fung Home Realty Group Inc.

41.     Defendant Salena Chau is a licensed corporate real estate salesperson in the State of New York, license number 10311205519, employed by, or associated with, Defendant Wing Fung Home Realty Group Inc.

42.     Defendant Wing Fung Home Realty Group Inc. is a licensed real estate brokerage company in the State of New York, license number 10991208292.

## THE HISTORY

43.     41-23 Haight Realty Inc., a New York corporation, is hereby referred to as "41-23 Haight Realty Inc.".

44.     Upon information and belief, Defendant Andy Chau a/k/a Wing Fung Realty Group, is a real estate brokerage firm and/or real estate development company operating in New York City with its principal place of business located within the Eastern District of New York.

45.     Upon information and belief, Defendant Wing Fung Home Realty Group Inc. is a real estate development company operating in New York City with its principal place of business located within the Eastern District of New York.

46.     Upon information and belief, at all relevant times and between February 5, 2010 and the present date, Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau were all shareholders of 41-23 Haight Realty Inc., a New York corporation.

47.     Upon information and belief, at all relevant times and between February 5, 2010 the present date, Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau were all officers of 41-23 Haight Realty Inc., a New York corporation.

48.     Upon information and belief, at all relevant times and between November 18, 2010 and the present date, Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau are real estate professionals, experienced in the purchase and sale of real properties.

49.     While Plaintiffs were defrauded of their $750,000 by Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau, Defendant Andy Chau, through entities established by them, were buying, selling and developing real properties in New York City, upon information and belief, by using Plaintiffs' money and other persons monies who were all defrauded by Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau.

**PATTERN OF FRAUDS AND RACKETEERING ACTIVITY
DEFENDANT ANDY CHAU AND DEFENDANT BO JIN ZHU'S
VIOLATIONS OF THE NEW YORK STATE MARTIN ACT
AND FRAUDS UPON THE NEW YORK CITY DEPARTMENT OF HOUSING
PRESERVATION AND DEVELOPMENT AND THE NEW YORK CITY
DEPARTMENT OF FINANCE**

50.     As part of their pattern of racketeering activity, Defendant Andy Chau and Defendant Bo Jin Zhu failed to disclose material facts to, and intentionally deceived the New York State Department of Law in connection with condominium offering plans, the New York City Department of Housing Preservation and Development and the New York City Department of Finance in connection with partial tax exemption benefits pursuant to Section 421-a of the Real Property Tax Law.

51.     Upon information and belief, Defendant Andy Chau and Defendant Bo Jin Zhu were principals of 8225 Queens Mansion LLC, the sponsor of the Queens Mansion Condominium located at 82-23 Queens Boulevard, Elmhurst, New York pursuant to a

condominium offering plan accepted for filing by the New York State Department of Law as File No. CD-12-0157 on February 15, 2013.

52.     Upon information and belief, the offering plan for the Queens Mansion Condominium expired on September 3, 2016.

53.     Upon information and belief, Defendant Andy Chau violated the Martin Act by permitting 8225 Queens Mansion LLC to convey title to Dongmei Li of the condominium units known as Condominium Units # PS4, PS5, PS8 and PS9 on February 20, 2019 by deeds recorded in the office of the New York City Register on February 26, 2019 for no consideration.

54.     Upon information and belief, Defendant Andy Chau received cash from Dongmei Li to convey Condominium Units # PS4, PS5, PS8 and PS9 on February 20, 2019 from 8225 Queens Mansion LLC to Dongmei Li.

**55.     Upon information and belief, Defendant Andy Chau violated the Martin Act by permitting 8225 Queens Mansion LLC to convey title to Dongmei Li of the condominium unit known as Condominium Units # PS4, PS5, PS8 and PS9 on February 20, 2019 by deed recorded in the office of the New York City Register on February 26, 2019 for no consideration.**

56.     Defendant Andy Chau was the principal of 64-03 Realty LLC, the sponsor of the Wing Fung Plaza Condominium located at 64-05 Woodside Avenue, Woodside, New York pursuant to a condominium offering plan accepted for filing by the New York State Department of Law as File No. CD-13-0044 on August 12, 2013.

57.     Upon information and belief, the offering plan for the Wing Fung Plaza Condominium expired on June 18, 2019.

58.     **Defendant Andy Chau executed an affidavit, sworn to on April 5, 2018 (the "April 5, 2018 Affidavit"), submitted to the New York State Department of Law which was an affidavit declaring the Wing Fung Plaza Condominium effective.**

59.     **In his April 5, 2018 Affidavit, Defendant Andy Chau stated that there were bona fide contracts of sale executed for Units 2C, 2D, 3E, 4D and 4E in the Wing Fung Plaza Condominium.**

60.     The declaration of condominium dated June 15, 2018 for the Wing Fung Plaza Condominium was recorded in the Office of the New York City Register on October 5, 2018 in CRFN # 2018000331798.

61.     On March 5, 2019, 64-03 Realty LLC conveyed title to Unit 2D in the Wing Fung Plaza Condominium to WENDY CHAU.

62.     Upon information and belief, Wendy Chau is a relative of Defendant Andy Chau.

63.     As of the date of this complaint, no other condominium unit was conveyed in the Wing Fung Plaza Condominium.

64.     **In his April 5, 2018 Affidavit, Defendant Andy Chau stated that "all purchasers counted for purposes of declaring the plan effective: (a) are bona fide purchasers; (b) are not purchasing as an accommodation to, or for the account or benefit of the sponsor or principals of the sponsor; and (c) have duly executed purchase agreements and have paid the downpayment as required in the offering plan or an amendment thereto".**

65.     **In his April 5, 2018 Affidavit, Defendant Andy Chau further stated that "no purchaser counted for purposes of declaring the plan effective is the sponsor"… or "related to the sponsor" by ""blood, marriage or adoption….".**

66. **Upon information and belief, the April 5, 2018 Affidavit was false.**

67. **Upon information and belief, Defendant Andy Chau submitted a false affidavit to the New York State Department of Law.**

68. **Upon information and belief, Defendant Andy Chau committed a fraud upon the New York State Department of Law.**

69. **The Wing Fung Plaza Condominium is no longer a valid condominium in New York State by virtue of the failure of 64-03 Realty LLC to close title on five condominium units and by the improper utilizing of Wendy Chau to be a purchaser of a condominium unit in the Wing Fung Plaza Condominium, as she was not a bona fide purchaser.**

70. On or about December 23, 2019, 64-03 Realty LLC obtained a $2,000,000 mortgage from Axos Bank (the "Axos Mortgage").

71. The Axos Mortgage encumbered each and every condominium unit in the Wing Fung Plaza Condominium.

72. The Wing Fung Plaza Condominium is now a rental building and not a legal or valid condominium in the State of New York.

73. **Upon information and belief, Defendant Andy Chau committed financial institution fraud, in violation of 18 U.S.C.A. § 1344 by representing to Axos Bank that the real property located at 64-05 Woodside Avenue, Woodside, New York were condominium units, when the fact is that they are not condominium units and instead the real property located at 64-05 Woodside Avenue, Woodside, New York is a rental building.**

74. Streeteasy.com lists the apartments at 64-05 Woodside Avenue, Woodside, New York as rental apartments.

75.     Upon information and belief, Defendant Andy Chau committed fraud and evidenced his propensity to commit fraud, as Defendant Andy Chau defrauded Plaintiff by swearing in an affidavit that there were five condominium units sold by purchase agreements in the Wing Fung Plaza Condominium, when that was false.

**76.     Upon information and belief, the declaration of condominium for the Wing Fung Plaza Condominium was falsely and fraudulently filed by Defendant Andy Chau in the Office of the New York City Register.**

**77.     Upon information and belief, Defendant Andy Chau failed to file the documents required to be filed in the Office of the New York State Department of Law to abandon the Wing Fung Plaza Condominium.**

**78.     Upon information and belief, Defendant Andy Chau and/or 64-03 Realty LLC filed an application with the New York City Department of Housing Preservation and Development for real estate tax benefits for the real property consisting of the Wing Fung Plaza Condominium.**

**79.     Upon information and belief, the application filed by Defendant Andy Chau and/or 64-03 Realty LLC with the New York City Department of Housing Preservation and Development for real estate tax benefits under Section 421-a of the Real Property Tax Law for the real property consisting of the Wing Fung Plaza Condominium was based on 28 condominium units.**

**80.     Upon information and belief, based on the fact that the Wing Fung Plaza Condominium is NOT a valid condominium, and based upon the fact that the New York City Department of Housing Preservation and Development granted real estate tax benefits under Section 421-a of the Real Property Tax Law to 64-03 Realty LLC based on the**

**representations by Defendant Andy Chau that the real property located at 64-05 Woodside Avenue, Woodside, New York was a condominium, Defendant Andy Chau obtained real estate tax benefits under Section 421-a of the Real Property Tax Law based on fraud.**

81.     Upon information and belief, the New York City Department of Housing Preservation and Development, and the New York City Department of Finance which implemented the real estate tax benefits under Section 421-a of the Real Property Tax Law to 64-03 Realty LLC were defrauded by granting a fifteen (15) year partial tax exemption to 64-03 Realty LLC by millions of dollars.

82.     Upon information and belief, Defendant Andy Chau failed to file the documents required to be filed in the Office of the New York City Department of Finance to abandon the Wing Fung Plaza Condominium.

83.     Upon information and belief, Defendant Andy Chau was the principal of 88 Canal Realty Inc., the sponsor of the 86 Canal Condominium, located at 86 Canal Street, New York, New York pursuant to a condominium offering plan accepted for filing by the New York State Department of Law as File No. CD-16-0059 on February 16, 2016.

84.     Upon information and belief, the offering plan for the Wing Fung Plaza Condominium expired on April 17, 2019.

**85.     Upon information and belief, Defendant Andy Chau violated the Martin Act by permitting 88 Canal Realty Inc. to convey title to 94 Canal Realty LLC of the condominium units known as Condominium Unit # M1, S1, S6, S7, S8, 6A, 6D, 7D on September 30, 2019 by deeds recorded in the office of the New York City Register on October 16, 2019 for no consideration.**

86.     **Upon information and belief, Defendant Andy Chau violated the Martin Act by permitting 88 Canal Realty Inc. to convey title to Rong Fu Chen and Yan Mei Wu of the condominium unit known as Condominium Unit # 12A on May 22, 2019 by deed recorded in the office of the New York City Register on June 4, 2019 for no consideration.**

## PATTERN OF FRAUDULENT AND RACKETEERING ACTIVITY BY DEFENDANT HOK KWAI CHAU, DEFENDANT BO JIN ZHU, AND DEFENDANT ANDY CHAU

87.     Upon information and belief, Defendant Andy Chau has a history of fraudulent activity.

88.     Upon information and belief, Defendant Andy Chan is a convicted felon, who pled guilty on December 10, 1998, and was sentenced to imprisonment for a year and a day in the action entitled United States v. Wing Fung Chau, United States District Court for the Southern District of New York, Case No. 94-cv-673, for (i) two counts of conspiracy to defraud the United States (violation of 18 USC §371) and (ii) Conspiracy to launder money (violation of 18 USC §1956).

89.     Upon information and belief, Defendant Hok Kwai Chau is a convicted felon, who pled guilty on January 13, 1995, in the action entitled United States v. Kok Kwai Chau, United States District Court for the Southern District of New York, Case No. 95-cv-0015, for Fraud Food Stamp Program (violation of 7 USC §2024).

90.     On November 2, 2010, 19 Bogart Realty Development Inc., an entity owned by Defendant Andy Chau, purchased the real property located at 13, 15, 17 and 19 Bogart Street, Brooklyn, New York for the sum of $2,400,000, obtaining a $1,200,000 mortgage and paying $1,200,000 cash, using Plaintiff's and other unwitting victims of Defendants and later sold the same property on November 19, 2019 for the sum of $9,000,000.

91.     On May 5, 2016, Hong Qin Jiang and Shirokia Development LLC filed a complaint against Defendant Andy Chau, Index No. 705619/2016 in the Supreme Court of the State of New York, County of Queens (the "Jiang Action").

92.     In the Jiang Action, it was alleged that plaintiff Hong Qin Jiang "yielded to the harsh and usurious terms demanded by Chau…".

93.     In the Jiang Action, it was alleged that Defendant Andy Chau committed usury.

94.     Upon information and belief, in the Jiang Action, Defendant Andy Chau loaned approximately $2,450,000.00 to Hong Qin Jiang and the repayment to Defendant Andy Chau would be $4,500,000.

95.     Upon information and belief, instead of receiving the $4,500,000 demanded by Defendant Andy Chau in the Jiang Action, Defendant Andy Chau accepted interest at the rate of 9% per annum by settlement before Justice Martin Ritholtz.

96.     Upon information and belief, in an action commenced on October 7, 2016 entitled Hong Qin Jiang v. Ai Yun Chen, Index No. 712008/2016, Supreme Court of the State of New York, County of Queens, Andy Chau loaned approximately $3,620,900 to plaintiff Hong Qin Jiang and Defendant Andy Chau demanded payment of stock owned by plaintiff Hong Qin Jiang which was worth $12,500,000 (the "Ai Yun Chen Action").

97.     Upon information and belief, the loan made by Defendant Andy Chau to Hong Qin Jiang in the Ai Yun Chen Action was at an interest rate of approximately 50% per annum for a 6 month loan.

98.     On May 9, 2017, a complaint was filed in an action entitled ZLZ 33 Inc. v. Zhu and Han, et.al., Index No. 154292/2017, Supreme Court of the State of New York, County of

New York (the "ZLZ 33 Inc. Action"), it was alleged that Defendant Bo Jin Zhu defrauded the plaintiffs therein of $3,000,000 and converted the plaintiffs' $3,000,000.

99.     On September 19, 2017, a complaint was filed in the action entitled <u>Ji Juan Lin, et.al. v. Bo Jin Zhu, et.al.</u>, Index No. 713018/2017, Supreme Court of the State of New York, County of Queens, wherein the plaintiffs alleged that they were defrauded by Defendant Bo Jin Zhu and his partners of approximately $1,000,000.

100.    Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau implemented a Ponzi scheme upon the buyers of the houses which were to be sold by 41-23 Haight Realty Inc. to the buyers.

101.    On June 22, 2018, Amy Johnson a/k/a Wen Mei Wang commenced an action in Supreme Court, Queens County, entitled <u>Johnson v. Zhu and Chau, 41-23 Haight Realty, Inc.</u>, Index Number 709682/2018 (the "Johnson Action").

102.    The complaint in the Johnson Action alleged that Zhu and Chau engaged in fraudulent misrepresentations regarding the purchase and development of the Haight Street Property. Plaintiff therein alleged that Chau misrepresented the ownership of the property, their abilities to develop the properties, and intentionally defaulted in their obligations in order to deprive the plaintiff of her investment and pay other investors and creditors. As a result, Plaintiff claims she was defrauded out of $450,000.00.

103.    On September 26, 2019, an action entitled <u>Jianyuan Yang and Golden Urban Property Management LLC v. Bo Jin Zhu, Wing Fung Chau a/k/a Andy Chau, et.al.</u>, Index No. 655611/2019, in the Supreme Court of the State of New York, County of New York (the "Yang Action").

104.    In the Yang Action, Defendant Bo Jin Zhu represented to plaintiff that Zhu was involved in several real estate development deals with Defendant Andy Chau, and they needed capital to complete construction.

105.    On October 13, 2016, in reliance upon Defendant Bo Jin Zhu's representations, Yang loaned Defendant Bo Jin Zhu the sum of $900,000.00. Defendant Bo Jin Zhu executed a promissory note and personally agreed to repay the loan on or before January 13, 2017. At Defendant Bo Jin Zhu's request Yang gave Defendant Bo Jin Zhu two checks, one for $400,000.00 payable to 1989 3 Ave LLC and one for $500,000.00 payable to Columbia Towers. Defendant Bo Jin Zhu executed a promissory note in his individual capacity and agreed to repay the loan on or before January 13, 2017.

106.    Two weeks after the original loan Defendant Bo Jin Zhu represented to Yang that the Defendant Bo Jin Zhu and his associates needed additional capital to complete their projects. On October 28, 2016, in reliance upon Defendant Bo Jin Zhu's representations, Yang loaned Defendant Bo Jin Zhu the sum of $500,000.00. Defendant Bo Jin Zhu executed another promissory note and agreed to repay the loan on or before January 28, 2017.

107.    In the Yang Action, it was alleged in the complaint that "At the time Zhu secured the loan from Yang, Zhu misrepresented the purpose of the loans. Zhu further knew that the Zhu Group would not have sufficient funds to repay the two promissory notes totaling $1,400,000.00 (collectively referred to as the "Promissory Notes") when they became due."

108.    In the Yang Action, it was alleged in the complaint that "Contrary to Zhu's representation that the loans were needed to complete the ongoing projects, Zhu used the loan funds to pay other investors and creditors in a Ponzi Scheme for his benefit or for the benefit of the Zhu Group."

109. In the Yang Action, it was alleged in the complaint that Defendant Bo Jin Zhu convinced Yang to loan or invest an additional $2,000,000 with Defendant Bo Jin Zhu.

110. In a lawsuit entitled ZLZ 33 Inc. v. Zhu and Han, et al., in the Supreme Court of the State of New York, County of New York, Index Number 154292/2017, ZLZ 33 Inc. sets forth causes of action of fraud, unjust enrichment and conversion involving the Columbia Tower and the 1989 Property. They alleged that Zhu used his trust and confidence to defraud them out of $3,000,000.00.

111. It is alleged in another lawsuit that Chum Sun Cheng and Ji Juan Lin invested $1,800,000.00 with Defendant Bo Jin Zhu. It was alleged that when it became obvious to Cheng and Lin that Defendant Bo Jin Zhu and his group were frauds, they commenced an action in the Supreme Court of the State of New York, County of New York, Index Number 713018/2017, entitled Lin et al. v . Zhu et al. In that action Cheng and Lin allege that Zhu and his partners misappropriated partnership funds, converted partnership money for their own use, misused partnership property, committed fraud and breached their fiduciary duties.

112. In an action entitled Amy Johnson a/k/a Wen Mei Wang v. 41-23 Haight Realty Inc., Bo Jin Zhu and Andy Chau, Index No. 709682/2018, Supreme Court of the State of New York, County of Queens, it was alleged that Wen Mei Wang entered into a contract of sale for a house to be constructed on the Property by Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau through their entity 41-23 Haight Realty Inc. for a sales prices of $992,000. In that case it was alleged that Wen Mei Wang paid $450,000 of the $992,000 in deposits and in addition, paid installments of $102,000 each to 41-23 Haight Realty Inc. on October 8, 2014, July 30, 2015, August 27, 2015 and October 26, 2015. As stated in the aforesaid complaint, Wen Mei Wang paid 100% of the purchase price to 41-23 Haight Realty

Inc., which $992,000 was, upon information and belief, diverted and converted by Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau. Upon information and belief, construction of the house that was to be purchased by Wen Mei Wang was never completed, and Wen Mei Wang lost her $992,000, as the Property was sold to a bidder in a bankrutpcy auction.

113.    The Property sold for $28,100,000 at auction on August 5, 2020, however, it is unlikely that any persons who entered into a contract of sale with 41-23 Haight Realty Inc. will recover any of their deposits paid to 41-23 Haight Realty Inc., due to the frauds, schemes, and swindle by Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau.

114.    Upon information and belief, the total claims in 41-23 Haight Realty Inc. bankruptcy were $46,915,017 and of which more than $28,100,000 were secured claims leaving the contract vendees, including Plaintiff with no recovery.

115.    In an action entitled WLZ New York LLC v. 41-23 Haight Realty Inc., Bo Jin Zhu and Andy Chau, Index No. 701824/2016, Supreme Court of the State of New York, County of Queens, it was alleged that the Plaintiff's assignors, Zhong You Wang and Xiu Chai Lu, entered into a contract of sale for a house to be constructed on the Property by Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau through their entity 41-23 Haight Realty Inc. In that case it was alleged that Zhong You Wang and Xiu Chai Lu paid $450,000 in deposits to which 41-23 Haight Realty Inc. were, upon information and belief, diverted and converted by Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau. Upon information and belief, construction of the house that was to be purchased by Zhong You Wang and Xiu Chai Lu was never completed, and Zhong You Wang and Xiu Chai Lu lost their $450,000, as the Property was sold to a bidder in a bankrutpcy auction.

116.    In an action entitled <u>Wei X. Chen v. 41-23 Haight Realty Inc., Bo Jin Zhu,</u> <u>Andy Chau and Hok Kwai Chau</u>, Index No. 704522/2018, Supreme Court of the State of New York, County of Queens, it was alleged that <u>Wei X. Chen</u>, entered into a contract of sale for a house to be constructed on the Property by Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau through their entity 41-23 Haight Realty Inc. In that case it was alleged that Wei X. Chen paid $900,000 in deposits to 41-23 Haight Realty Inc. which were, upon information and belief, diverted and converted by Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau. Upon information and belief, construction of the house that was to be purchased by Wei X. Chen was never completed, and Wei X. Chen lost his $900,000, as the Property was sold to a bidder in a bankrutpcy auction.

117.    In an action entitled <u>Li Fang Zheng v. 41-23 Haight Realty Inc., Bo Jin</u> <u>Zhu, Andy Chau and Hok Kwai Chau</u>, Index No. 704528/2018, Supreme Court of the State of New York, County of Queens, it was alleged that Li Fang Zheng, entered into a contract of sale for a house to be constructed on the Property by Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau through their entity 41-23 Haight Realty Inc. In that case it was alleged that Li Fang Zheng paid $900,000 in deposits to 41-23 Haight Realty Inc. which were, upon information and belief, diverted and converted by Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau. Upon information and belief, construction of the house that was to be purchased by Li Fang Zheng was never completed, and Li Fang Zheng lost her $900,000, as the Property was sold to a bidder in a bankrutpcy auction.

118.    In an action entitled <u>LDWS LLC and T.8.J. LLC v. 41-23 Haight Realty</u> <u>Inc., et.al.,</u> Index No. 709188/2015, Supreme Court of the State of New York, County of Queens, it was alleged that Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau

through their entity 41-23 Haight Realty Inc. entered into two separate contracts of sale with LDWS and T8J for the same real property. The Court issued a hollow judgment in favor of these plaintiffs.

119.    In the lawsuit brought by both <u>Wei X. Chen</u> and <u>Li Fang Zheng</u>, they both alleged that there was a blatant fraud by, upon information and belief, Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau, by their entering into two (2) other contracts with two (2) different buyers to sell the very same house to other contract vendees.

120.    Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau duped buyers, including Plaintiffs and the individuals set forth above who entered into contracts of sale with 41-23 Haight Realty Inc., as 41-23 Haight Realty Inc., by the actions of Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau, never intended to and/or never had the ability to sell houses to Plaintiffs, Wei X. Chen and Li Fang Zheng and others.

121.    Based on filings in the United States Bankrutpcy Court, it appears that Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau defrauded and through their fraudulent schemes, swindles and racketeering activities, the following individuals and entities out of the following amounts based on claims filed in the United States Bankrutpcy Court, In Re: 41-23 Haight Street Realty Inc., Debtor, Case No. 1-19-43441 (NHL):

a.      Wen Mei Wang - $428,666.67;
b.      Xian Kang Zhang - $428,666.67;
c.      Yu Qing Wang - $428,666.67;
d.      Norman Lee – unstated claim;
e.      T.8.J. LLC – $3,500,000;
f.      Xue Hua Liu - $550,000.00;
g.      Xue Fei Liu - $550,000;
h.      Li Fang Zheng - $900,000;
i.      Wei X. Chen - $900,000;
j.      Zi Ying Chen - $575,000;

| k. | Min Dong Weng - $575,000; |
| l. | Jian Feng LLC - $1,094,794.38; |
| m. | Shi Yong Lin - $348,629; |
| n. | Bing Wen Lin - $348,629; |
| o. | Xiu Chen - $348,629; |
| p. | Feng Lin - $348,639; |
| q. | Lam Kam Development LLC - $1,417,038; |
| r. | Yungwa Ho - $1,475,973; |
| s. | Grand Investment LLC - $2,030,000; |
| t. | Rihong Zhang - $455,000; |
| u. | Chun Yin Chen - $480,000; |
| v. | Marisa Wong and Marcus Wong - $1,381,500; |
| w. | Yi Shou Jiang - $309,751; |
| x. | Mei Fund Stella Leung - $325,087.54; |
| y. | Xing Ju Lin - $287,920; |
| z. | Rui Jin Wang - $160,000; |
| aa. | Plaintiffs Chen Xia Liu and Chen Hua Liu - $1,020,088; |
| bb. | Wei Zhu - $580,068. |

122.    Zhu and Chau did not limit their fraud to large investors. According to an August 22, 2019 filing in the Haight Street Property Bankruptcy case, Zhu and Chau took 6 deposits of $20,000.00 or less on unbuilt apartments at the Haight Street Property. Pursuant to the Bankruptcy Court filing they defrauded $20,000.00 from Xue Mei Chen, $10,000.00 from Yi Shou Jiang, $12,500.00 from Xue Fei Lu, $12,500.00 from Inga Xue Hua Liu, $20,000.00 from Mei Yan Liu and $12,500.00 from Rui Jin Wang.

123.    In the complaint in the Yang Action, it is alleged in paragraph "52" that "As their fraud began to unravel Zhu and Chau began to threaten the creditors who had made claims in the Supreme and Bankruptcy Courts. Pursuant to an August 22, 2019 filing Zhu harassed and intimidated the people who he had defrauded in order to persuade them to drop the cases. It is alleged that Zhu violated 18 U.S. Code §1512 (A)(B)(i)(iii)(C) and (3)(d), criminal tampering with a witness, victim, or an informant."

124.     In an action entitled Miller v. Zhu, et.al., Index No. 509929/2018, filed in the Supreme Court of the State of New York, County of Kings, it was alleged that "Zhu…, in furtherance of their fraud, fabricated documents, forged documents, engaged in clandestine negotiations and caused damages in excess of $49,000,000.00."

125.     Goldberg Zonio and Associates, an environmental testing company, was also a victim of the scams by Defendant Bo Jin Zhu and Defendant Andy Chau. Despite assuring Goldberg Zonio and Associates that payment would be made for environmental work on the Dupont Property, payment never came. As a result, on March 5, 2019, Goldberg Zonio and Associates commenced a lawsuit in Supreme Court, New York County, entitled Goldberg Zonio and Associates v. Zhu, Index number 651327/2019. The motion for summary judgment in lieu of complaint alleges that despite numerous promises and representations Zhu defaulted in his obligations to pay for the environmental work causing the plaintiff damages in the amount of $283,000.00. On August 22, 2019 a judgment was entered in the amount of $295,137.77."

126.     Upon information and belief, Biao Chen lent Defendant Bo Jin Zhu $1,000,000.00. When Defendant Bo Jin Zhu could not pay Chen back, Defendant Bo Jin Zhu offered to sell Chen the 11.67% of 90 Queens, Inc. in exchange for the cancellation of the $1,000,000.00 loan.

127.     Upon information and belief, when it became obvious to Chen that Zhu and his partners were going to keep the $1,000,000.00 and then manipulate title to the property to defraud Chen, Chen commenced an action in Supreme Court, Queens County, entitled Chen v. Zhu et al, Index Number 700256/2019.

128.     In the complaint brought by Biao Chen, Chen alleged that Defendant Bo Jin Zhu engaged in a fraudulent scheme to convert corporate property, misappropriate corporate

funds, breach fiduciary duties and attempt to sell the Corona Avenue Property without Chen's consent to avoid paying back the investment.

129.   On July 13, 2015 Queens Abstract Company, Inc. commenced a lawsuit against entitled Queens Abstract Company, Inc. v. 90 Queens, Inc., Zhu and Chau, Supreme Court of the State of New York, County of Queens, Index Number 707342/2015. The complaint alleges that as a result of false and fraudulent statements signed by Zhu the plaintiff was caused to insure title under false pretenses and was damaged in the amount of $25,000.00.

130.   Upon information and belief, Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau acquired and sold the following real estate in furtherance of their scheme: 64-05 Woodside Avenue Woodside New York ("Woodside Property"), 90-25 55th Avenue, Elmhurst, New York ("55th Avenue Property"), 13/19 Bogart Street, Brooklyn, New York ("Bogart Property"), 90-17/19 43rd Avenue, Elmhurst, New York ("43rd Street Property") and 81-05 Queens Blvd., Elmhurst, New York ("Queens Blvd. Property")

131.   On July 15, 2019, Tina Tang, on behalf of 1989 Investor LLC, filed a notice of claim in the a bankruptcy proceeding alleging that Defendant Bo Jin Zhu and his entities misrepresented material facts and used alter egos to defraud her of $3,500,000.00.

132.   On August 24, 2020, AXOS Bank filed a lawsuit against Defendant Andy Chau in the United States District Court for the Eastern District of New York, Case No. 20-cv-3549 alleging that Defendant Andy Chau guaranteed a loan for his entity 64-03 Realty LLC, and 64-03 Realty LLC borrowed $2,000,000 from Axos Bank and failed to repay Axos Bank.

133.   In a complaint filed on November 19, 2020 in the action entitled Sunflu Condominium Inc. v. Wing Fung Chau, Index No. 722312/2020, Supreme Court of the State of New York, County of Queens, the Plaintiff alleged that "On or about October 5, 2020, Defendant

Wing Fung Chau, holding himself out as a representative of Sunflu Condominium Inc. signed a Declaration of Restriction on the Property, dated September 23, 2020" which was recorded in the office of the New York City Register, without the knowledge of or permission of Sunflu Condominium Inc. The complaint further alleges that "Sunflu never granted any permission or authority to Defendant Wing Fung Chau to sign the Declaration on behalf of Sunflu, let alone the filing and recordation of it" and "Defendant Wing Fung Chau is not, and has never been a representative, shareholder, or held any position with Sunflu Condominium Inc."

134.    Upon information and belief, Defendant Andy Chau, using Plaintiff's funds and other victim's funds acquired and owns substantial real estate holdings in New York.

135.    Upon information and belief, Defendant Andy Chau owns 95% of the membership interests in 64-03 Realty LLC.

136.    Upon information and belief, Defendant Andy Chau owns 15% of the membership interests in 88 Canal Realty Inc.

137.    Upon information and belief, Defendant Andy Chau owns 100% of the membership interests in Chan 8 Shi LLC.

138.    Upon information and belief, Defendant Andy Chau owns 18% of the membership interests in Wing 88 Realty LLC.

139.    Upon information and belief, Defendant Andy Chau owns 50% of the membership interests in 8105 Kneeland Ave LLC.

140.    Upon information and belief, Defendant Andy Chau owns 50% of the membership interests in 48-33 65 LLC.

141.    Upon information and belief, Defendant Andy Chau owns 50% of the membership interests in 40-70 Realty LLC.

142.    Upon information and belief, Defendant Andy Chau was the member of Flushing Point Holding LLC, a New York limited liability company.

143.    Upon information and belief, Flushing Point Holding LLC acquired the real property located at 131-02 40th Road and 40-70 Delong Street, Queens, New York (the "40th Road Property") on October 9, 2015 for the sum of $45,173,062 pursuant to a contract dated July 20, 2015 by and between Flushing Point LLC as 41-23 Haight Realty Inc. and Flushing Point Holding LLC as purchaser.

144.    On October 4, 2017, Flushing Point Holding LLC transferred the 40th Road Property to Flushing Point Holding (DE) LLC for no consideration.

145.    On December 8, 2020, Flushing Point Holding (DE) LLC reconveyed the 40th Road Property to Flushing Point Holding LLC for no consideration.

146.    Defendant Andy Chau used Plaintiff's monies to acquire the 40th Road Property.

## DEFENDANTS' FRAUDS BY DEFENDANTS REGARDING 41-23 HAIGHT REALTY INC.

147.    Upon information and belief, 41-23 Haight Realty Inc. was formed by Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau on February 5, 2010 in the Office of the New York Secretary of State.

148.    On May 7, 2010, 41-23 Haight Realty Inc. purchased the real property located at 41-13 to 41-23 Haight Street, Flushing, County of Queens, City and State of New York (the "Property") from DW Haight Street Owners LLC and TL Property Owners LLC for the sum of $5,400,000.

149.    The Property was also known as Block 5063, Lots 42, 53 and 55 on the Tax Map of the City of New York, County of Queens.

150.    The Property measured approximately 250 feet by 100 feet for a total of 25,000 sq.ft.

151.    On the date that 41-23 Haight Realty Inc. acquired the Property, 41-23 Haight Realty Inc. obtained mortgage loan from Global Bank in the sum of $2,300,000 (the "Global Bank Mortgage"), which mortgage encumbered the Property.

152.    The Global Bank Mortgage was assigned to Cathay Bank on January 30, 2014.

153.    On or about February 12, 2014, 41-23 Haight Realty Inc. obtained a mortgage loan from Cathay Bank in the sum of $4,500,000 (the "Cathay Bank Mortgage"), which mortgage encumbered the Property.

154.    On February 12, 2014, Defendant Andy Chan executed the Cathay Bank Mortgage as President of 41-23 Haight Realty Inc.

155.    On or about April 18, 2017, 41-23 Haight Realty Inc. obtained a mortgage loan from G4 18171 LLC ("G4") in the sum of $9,500,000 (the "G4 Mortgage"), which mortgage encumbered the Property.

156.    On or about April 18, 2017, Defendant Bo Jin Zhu executed the G4 Mortgage as President of 41-23 Haight Realty Inc.

157.    On or about May 26, 2017, 41-23 Haight Realty Inc. obtained an additional mortgage loan from G4  in the sum of $1,750,000 (the "Second G4 Mortgage"), which mortgage encumbered the Property.

158.    On or about May 26, 2017, Defendant Bo Jin Zhu executed the G4 Mortgage as President of 41-23 Haight Realty Inc.

159.    41-23 Haight Realty Inc. began to construct eleven (11) houses at the Real Property. Upon information and belief, the houses were four family residences.

160.    Defendants had a scheme to take deposits from individuals and entities who thought that they were paying money to buy four family houses.

161.    Defendants entered into contracts with individuals and defendants and signed contracts with different buyers, taking deposits and effectively taking multiple deposits on the same houses.

162.    Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau and 41-23 Haight Realty Inc. required by buyers of houses pay the down payments on the houses, in the Plaintiffs' case $750,000 directly to 41-23 Haight Realty Inc., and not held in escrow by any attorney. This enabled 41-23 Haight Realty Inc. to take Plaintiffs' funds and misappropriate the funds to Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau's own use.

163.    Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau then, upon information and belief, took the millions of dollars from Plaintiffs and other individuals and/or entities as part of their scheme and used the funds for personal uses.

164.    Defendant Selena Chau, Defendant Tu Kang Yang and Defendant Mei Yang Ko with Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau perpetrated a scheme to sell the eleven (11) houses to buyers making each buyer pay a total of millions of dollars to 41-23 Haight Realty Inc., and then ultimately, 41-23 Haight Realty Inc. borrowed millions of dollars from banks and/or lenders, and then 41-23 Haight Realty Inc. went into bankruptcy, after Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau had, upon information and belief, taken the millions of dollars in deposits paid by the numerous buyers of the eleven houses, including the Plaintiffs.

165.    Some of the houses being offered by 41-23 Haight Realty Inc., Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau were sold twice – to different buyers, whom paid deposits totaling millions of dollars which funds were, upon information and belief, then taken by Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau.

166.    Defendants were all part of a scheme and enterprise to defraud millions of dollars from hardworking individuals and entities.

167.    On February 2, 2016, Zhong You Wang and Xiu Chai Lu commenced an action on behalf of WLZ New York LLC in Supreme Court, Queens County, entitled WLZ New York LLC v. Zhu, Chau and 41-23 Haight Realty, Inc., Index Number 701824/2016.

168.    The complaint in WLZ New York LLC v. Zhu, Chau and 41-23 Haight Realty, Inc. alleges that Zhu and Chau engaged in fraudulent misrepresentations regarding the purchase and development of the Haight Street Property. They allege that Zhu and Chau misrepresented the ownership of the property, their abilities to develop the properties and intentionally defaulted in their obligations in order to deprive the plaintiff of its investment and pay other investors and creditors.

169.    41-23 Haight Realty Inc. was placed in involuntary bankruptcy on June 4, 2019 in the United States Bankruptcy Court for the Eastern District of New York, Case No. 2019bk43441.

170.    The real property owned by 41-23 Haight Realty Inc. was sold at bankruptcy auction.

171.    Prior to the conveyance of title to the real properties by the bankruptcy trustee, Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau along with

Defendant Selena Chau, Defendant Tu Kang Yang and Defendant Mei Yang Ko perpetrated a scheme, after defrauding Plaintiffs and many other individuals and entities, of bidding on the real property, secretly and not disclosing that Defendant Selena Chau, Defendant Tu Kang Yang and Defendant Mei Yang Ko were related to Defendant Andy Chau.  Upon information and belief, Defendant Selena Chau, Defendant Tu Kang Yang and Defendant Mei Yang Ko were sanctioned by the United States Bankruptcy Court by loss of all or a portion of the multimillion dollar downpayment paid for the purchase of the Real Property from the bankruptcy trustee.

172.    The Defendants entered into a scheme and conspiracy to try to buy back the real properties after 41-23 Haight Realty Inc. lost the real properties in bankruptcy, and after taking millions of dollars from Plaintiffs and many other individuals and entities as set forth in this complaint.

173.    Plaintiffs and many other individuals and entities were defrauded by Defendants' racketeering enterprise and scheme.

174.    On or about February 5, 2010, Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau established 41-23 Haight Realty Inc. entity in a scheme and swindle designed to defraud Plaintiffs from hundreds of thousands of dollars, and to defraud numerous other victims of Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau of millions of dollars.

175.    Upon information and belief, Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau are of Chinese nationality.

176.    The scheme and swindle established by Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau included abusing their trust with Chinese buyers, as the

Chinese buyers, including Plaintiffs, trusted Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau because they themselves were Chinese.

177.    The scheme and swindle established by Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau included entering into contracts of sale to sell the same residential houses at the Property (defined below) to multiple buyers and for the real property that was owned by 41-23 Haight Realty Inc. Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau to personally take substantial deposits from the multiple buyers who thought that they were the only buyers of certain houses.

178.    The deposits that Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau solicited and received from potential buyers, including Plaintiffs, were substantial, of up to more than 50% of the sale price of the houses that Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau were selling through 41-23 Haight Realty Inc. entity that they established.

179.    Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau established an enterprise to effectuate and perpetuate their scheme and swindle to defraud buyers.

180.    Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau established a criminal enterprise to effectuate and perpetuate their scheme and swindle to defraud buyers.

181.    Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau solicited millions of dollars in deposits from buyers, including $750,000 from Plaintiffs on the sale price of a house which was $1,320,000.

182.    Upon information and belief, between February 5, 2010 and the present date, Defendant Bo Jin Zhu was a principal of 1989 3rd Ave LLC, in which creditors were contract vendees who entrusted millions of dollars in deposits with the debtors principals who committed fraud.

183.    In this case, Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau solicited deposits from, upon information and belief, approxmately fifteen (15) contract vendees to buy eleven (11) homes on the Property, however, part of Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau's scheme and swindle was to sell the same house twice, to receive deposits from multiple people on the same house.

184.    Upon information and belief, between February 5, 2010 and the present date, Defendant Hok Kwai Chau was a shareholder, officer and/or director of 41-23 Haight Realty Inc.

185.    Upon information and belief, between February 5, 2010 and the present date, Defendant Hok Kwai Chau had direct control of 41-23 Haight Realty Inc.'s operations and management.

186.    Upon information and belief, between February 5, 2010 and the present date, Defendant Bo Jin Zhu was a shareholder, officer and/or director of 41-23 Haight Realty Inc.

187.    Upon information and belief, between February 5, 2010 and the present date, Defendant Bo Jin Zhu had direct control of 41-23 Haight Realty Inc.'s operations and management.

188.    Upon information and belief, between February 5, 2010 and the present date, Defendant Wing Fung Chau was a shareholder, officer and/or director of 41-23 Haight Realty Inc.

189.   Upon information and belief, between February 5, 2010 and the present date, Defendant Wing Fung Chau had direct control of 41-23 Haight Realty Inc.'s operations and management.

190.   Upon Information and belief, Defendant Selene Chau is the daughter of Defendant Andy Chau.

191.   Upon Information and belief, Defendant Tu Kang Yang is a business partner of Defendant Andy Chau.

192.   Upon Information and belief, Defendant Mei Yang Ko is the mother of Defendant Andy Chau.

193.   Upon information and belief, at all relevant times mentioned in this complaint, Defendant Hok Kwai Chau was and is a shareholder and/or director of Defendant Andy Chau d/b/a Wing Fung Realty Group with direct control of its operations and management.

194.   Upon information and belief, at all relevant times mentioned in this complaint, Defendant Defendant Bo Jin Zhu was and is a shareholder and/or director of Defendant Andy Chau d/b/a Wing Fung Realty Group with direct control of its operations and management.

195.   Upon information and belief, at all relevant times mentioned in this complaint, Defendant Wing Fung Chau was and is a shareholder and/or director of Defendant Andy Chau d/b/a Wing Fung Realty Group with direct control of its operations and management.

196.   Upon information and belief, Defendant Andy Chau d/b/a Wing Fung Realty Group was and is the real estate broker that promoted and offered for sale the new House to Plaintiffs and to members of the public including Plaintiffs and others.

197.   On or about November 18, 2010, Plaintiff Chen Xia Liu and Plaintiff Chen Hua Liu executed a contract of sale for the purchase of a four family residential building to be

constructed by 41-23 Haight Realty Inc. and such four family residential building located at at 41-15 Haight Street, Flushing, County of Queens, City and State of New York (the "House") pursuant to a Residential Contract of Sale Plaintiffs and 41-23 Haight Realty Inc. for the total purchase price of $1,350,000.00 (the "Contract of Sale").

198.    Upon information and belief, Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau agreed to cause the Contract of Sale to be executed by 41-23 Haight Realty Inc.

199.    A copy of the Contract is attached as **Exhibit "1"**.

200.    The terms of the Contract of Sale provided for an initial payment upon execution of the Contract and periodic payments over time as the House was being constructed.

201.    The Contract of Sale provided that Plaintiffs would pay to 41-23 Haight Realty Inc. the sum of $450,000 as a first deposit to be paid upon signing of the Contract of Sale.

202.    The Contract of Sale provided that Plaintiffs would pay to 41-23 Haight Realty Inc. the sum of $60,000 within five days from the date that Purchaser received a written notice from 41-23 Haight Realty Inc. or its attorney of issuance of a work permit.

203.    The Contract of Sale provided that Plaintiffs would pay to 41-23 Haight Realty Inc. the sum of $60,000 within five days from the date that Purchaser received a written notice from 41-23 Haight Realty Inc. or its attorney of issuance of completion of the foundation of the House.

204.    The Contract of Sale provided that Plaintiffs would pay to 41-23 Haight Realty Inc. the sum of $60,000 within five days from the date that Purchaser received a written notice from 41-23 Haight Realty Inc. or its attorney of issuance of "pouring cement of 1st floor".

205. The Contract of Sale provided that Plaintiffs would pay to 41-23 Haight Realty Inc. the sum of $60,000 within five days from the date that Purchaser received a written notice from 41-23 Haight Realty Inc. or its attorney of issuance of "pouring cement of 2nd floor".

206. The Contract of Sale provided that Plaintiffs would pay to 41-23 Haight Realty Inc. the sum of $60,000 within five days from the date that Purchaser received a written notice from 41-23 Haight Realty Inc. or its attorney of issuance of "completion of roof".

207. The Contract of Sale provided that Plaintiffs would pay to 41-23 Haight Realty Inc. the sum of $600,000 at the time of closing of title for the House from 41-23 Haight Realty Inc. to Plaintiffs.

208. Between approximately November 18, 2010 and approximately November 18, 2015, Plaintiffs paid the sum of $750,000 (the "Deposit") to 41-23 Haight Realty Inc. as follows:

    a.      $50,000 by check dated November 18, 2010;

    b.      $200,000 by check dated December 23, 2010;

    c.      $170,500 by check dated December 24, 2010;

    d.      $29,500 by check dated December 23, 2010;

    e.      $20,000 by check dated November 10, 2014;

    f.      $10,000 by check dated November 10, 2014;

    g.      $20,000 by check dated November 10, 2014;

    h.      $10,000 by check dated November 10, 2014;

    i.      $30,000 by check dated July 21, 2015;

    j.      $30,000 by check dated July 21, 2015;

    k.      $30,000 by check dated August 21, 2015;

    l.      $30,000 by check dated August 21, 2015;

m.   $30,000 by check dated October 27, 2015;

n.   $30,000 by check dated October 27, 2015;

o.   $30,000 by check dated November 18, 2015; and

p.   $30,000 by check dated November 18, 2015.

209.   Upon information and belief, 41-23 Haight Realty Inc. was required to use the Deposit for the construction of the House.

210.   Upon information and belief, Defendant Hok Kwai Chau did not cause 41-23 Haight Realty Inc. to use the Deposit for the construction of the House.

211.   Upon information and belief, Defendant Hok Kwai Chau used the Deposit for his own personal expenses and other real estate ventures, other than for the construction of the House.

212.   Upon information and belief, Defendant Hok Kwai Chau represented to Plaintiffs that the Deposit would be used for the construction of the House.

213.   Upon information and belief, Defendant Hok Kwai Chau represented to Plaintiffs that if 41-23 Haight Realty Inc. did not complete the construction of the House and convey title to Plaintiffs, Defendant Hok Kwai Chau would return the Deposit to Plaintiffs.

214.   41-23 Haight Realty Inc. did not complete the construction of the House and convey title to Plaintiffs.

215.   Plaintiff made a demand upon Defendant Hok Kwai Chau to return the Deposit to Plaintiffs.

216.   Defendant Hok Kwai Chau refused to return the Deposit to Plaintiffs.

217.    Defendant Hok Kwai Chau diverted the Deposit from 41-23 Haight Realty Inc. to Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau for purposes other than the purpose of using the Deposit for the construction of the House.

218.    Defendant Hok Kwai Chau converted the Deposit from 41-23 Haight Realty Inc. to Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau for purposes other than the purpose of using the Deposit for the construction of the House.

219.    Upon information and belief, Defendant Bo Jin Zhu did not cause 41-23 Haight Realty Inc. to use the Deposit for the construction of the House.

220.    Upon information and belief, Defendant Defendant Bo Jin Zhu used the Deposit for his own personal expenses and other real estate ventures, other than for the construction of the House.

221.    Upon information and belief, Defendant Bo Jin Zhu represented to Plaintiffs that the Deposit would be used for the construction of the House.

222.    Upon information and belief, Defendant Bo Jin Zhu represented to Plaintiffs that if 41-23 Haight Realty Inc. did not complete the construction of the House and convey title to Plaintiffs, Defendant Bo Jin Zhu would return the Deposit to Plaintiffs.

223.    Plaintiff made a demand upon Defendant Bo Jin Zhu to return the Deposit to Plaintiffs.

224.    Defendant Bo Jin Zhu refused to return the Deposit to Plaintiffs.

225.    Defendant Bo Jin Zhu diverted the Deposit from 41-23 Haight Realty Inc. to Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau for purposes other than the purpose of using the Deposit for the construction of the House.

226.    Defendant Bo Jin Zhu converted the Deposit from 41-23 Haight Realty Inc. to Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau for purposes other than the purpose of using the Deposit for the construction of the House.

227.    Upon information and belief, Defendant Andy Chau did not cause 41-23 Haight Realty Inc. to use the Deposit for the construction of the House.

228.    Upon information and belief, Defendant Defendant Andy Chau used the Deposit for his own personal expenses and other real estate ventures, other than for the construction of the House.

229.    Upon information and belief, Defendant Andy Chau represented to Plaintiffs that the Deposit would be used for the construction of the House.

230.    Upon information and belief, Defendant Andy Chau represented to Plaintiffs that if 41-23 Haight Realty Inc. did not complete the construction of the House and convey title to Plaintiffs, Defendant Andy Chau would return the Deposit to Plaintiffs.

231.    Plaintiff made a demand upon Defendant Andy Chau to return the Deposit to Plaintiffs.

232.    Defendant Andy Chau refused to return the Deposit to Plaintiffs.

233.    Defendant Andy Chau diverted the Deposit from 41-23 Haight Realty Inc. to Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau for purposes other than the purpose of using the Deposit for the construction of the House.

234.    Defendant Andy Chau converted the Deposit from 41-23 Haight Realty Inc. to Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau for purposes other than the purpose of using the Deposit for the construction of the House.

235.    During the period from November 18, 2010 to approximately December 31, 2019, Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau continued to make representations to Plaintiffs, that the House was under construction and that the construction of the House and the issuance of the certificate of occupancy would occur and the closing would occur before December 31, 2019.

236.    The House was constructed on one of the eleven lots created from the subdivision of the Property.

237.    On October 22, 2018, G4 filed a complaint for foreclosure of its mortgage in Supreme Court of the State of New York, County of Queens under Index No. 716119/2018.

238.    Ultimately, G4 was or shall be paid all monies due to G4 from the bankruptcy court sale of the Property, leaving no monies available to the victims of Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau, who are left without the monies that they gave to 41-23 Haight Realty Inc., and which monies were diverted and converted by Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau, as part of their fraudulent and racketeering scheme.

239.    On August 5, 2013, Defendant Bo Jin Zhu executed a Zoning Lot Description and Ownership Statement as President of 41-23 Haight Realty Inc., which was recorded in the Office of the New York City Register on September 4, 2013 in CRFN No. 2013000354947.

240.    On or about July 5, 2016, the Property was divided from three (3) lots into eleven (11) lots, known as Block 5063, Lots 44, 45, 46, 47, 48, 49, 50, 51, 52, 53 and 55 on the Tax Map of the City of New York, County of Queens.

241.    Upon information and belief, Defendants, through their company 41-23 Haight Realty Inc. offered a total of eleven separate new buildings for construction and sale to individuals and companies.

242.    Between on or about November 11, 2010 and the present date, Defendants, through their company 41-23 Haight Realty Inc. entered into Contracts of Sale for the construction and sale of all of the new homes in the project developed by 41-23 Haight Realty Inc.

243.    Pursuant to these Contract of Sale, purchasers, including Plaintiffs were required to make substantial periodic payments to 41-23 Haight Realty Inc. towards the total purchase price.

244.    In 2010 through the present, Plaintiffs agreed to and did enter into a Contract of Sale that provided for the construction and sale of a four (4) unit residence.

245.    Defendants made representations on behalf of 41-23 Haight Realty Inc. that it had good legal title to convey title in the properties under Contract.

246.    Defendants failed to disclose that Wing Fung Realty Group as broker, was owned and/or operated by Defendant Andy Chau.

247.    Defendants failed to disclose that Defendant Wing Fung Chau had an ownership and/or controlling interest in 41-23 Haight Realty Inc.

248.    Defendants failed to disclose their secret arrangements with each of Defendants, which provided substantial secret profits by obtaining construction cost down payments from Plaintiffs and other purchasers of houses to be developed on certain properties that were sold to unrelated purchasers while prior valid Contracts of Sale were already outstanding.

249.     Upon information and belief, Defendants sold the same real properties to different buyers.

250.     Upon information and belief, Defendants took from Plaintiffs approximately 50% of the purchase price for the house to be purchased by Plaintiffs and misappropriated those funds to themselves, and then 41-23 Haight Realty Inc. entered into bankruptcy, causing Plaintiffs to lose all of the Plaintiffs' monies that were paid to 41-23 Haight Realty Inc.

251.     Upon information and belief, Defendants stole the funds that Plaintiffs paid to 41-23 Haight Realty Inc.

252.     Upon information and belief, each of Defendants knew that the secret arrangements with multiple purchasers for the same properties was improper and unlawful.

253.     41-23 Haight Realty Inc. failed and/or refused to complete construction and/or covey title to Purchasers, including Plaintiffs, pursuant to the contract of sale between Plaintiffs and 41-23 Haight Realty Inc.

254.     41-23 Haight Realty Inc. was unable to convey title to purchasers due to having previously contracted to sell the same property to other purchasers and/or because 41-23 Haight Realty Inc. obtained mortgage financing on the real property that Plaintiffs contracted to purchase and 41-23 Haight Realty Inc. failed to repay the lender who advanced funds for the real property that Plaintiffs contracted to purchase.

255.     Defendants, as part of a scheme or conspiracy, offered personal guarantees to certain purchasers in an effort to maintain contracts and to continue to receive periodic payments from certain purchasers pursuant to the contracts of sale.

256.     Defendants operated a fraudulent scheme.

257.    Defendants obtained construction loans to aid in funding the construction costs of the eleven (11) houses.

258.    Defendants diverted funds paid by Plaintiffs and, upon information and belief, paid by other purchasers, which were intended to be used by 41-23 Haight Realty Inc. for the completion of construction of the houses.

259.    Upon information and belief, due to the substantially rising price of the Premises, Defendants would unilaterally terminate the contract with buyers at will and then enter into new contracts with other buyers for the sale of the same house at a higher price.

260.    Upon information and belief, although in most cases, 41-23 Haight Realty Inc. received approximately 50% of the purchase price of the houses from the buyers of the houses, including Plaintiffs, Defendants did not use the funds for the construction of the houses and instead, obtained mortgage loans encumbering the houses without buyers, including Plaintiffs' consent.

261.    Prior to the execution of the above-referenced Agreement and Contract of Sale, Defendant ZHU and Defendant CHAU, as officers and directors of defendant 41-23 Haight Realty Inc., represented to Plaintiff that the construction of the Premises will be completed within eighteen (18) months after obtaining the work permit and Plaintiff relied upon such representation as a condition precedent to the Contract.

262.    Upon information and belief, Defendants and 41-23 Haight Realty Inc. had no intention to close the title with Plaintiffs and abide by the obligations set forth in the Agreement between Plaintiffs and 41-23 Haight Realty Inc.

263.    It is further believed that, due to the substantially rising price of the eleven (11) houses developed by 41-23 Haight Realty Inc., Defendants unilaterally terminated contracts at

will and thereby enter into new contracts with other buyers for the sale of the said Premise at a higher price.

264.    Defendants failed to hold monies paid by Plaintiffs for the purchase of the House in an attorney escrow account until the closing of title from 41-23 Haight Realty Inc. to Plaintiffs.

265.    Defendants failed to use the monies paid by Plaintiffs for the purchase of the House for the construction of the House.

266.    Upon information and belief, on or about March 29, 2010, 41-23 Haight Realty Inc. entered into a contract of sale for the real property located at 41-05 Haight Street, Flushing, New York, wherein Bo Jin Zhu, a principal of 41-23 Haight Realty Inc. executed a personal guaranty to guaranty the repayment of the monies paid by the contract purchaser to 41-23 Haight Realty Inc., in the event that the closing of title to the House did not occur.

267.    Upon information and belief, on or about July 20, 2016, 41-23 Haight Realty Inc. entered into a contract of sale for the real property located at 41-11 Haight Street, Flushing, New York, wherein Bo Jin Zhu and Hok Kwai Chau, principals of 41-23 Haight Realty Inc. executed a personal guaranty to guaranty the repayment of the monies paid by the contract purchaser to 41-23 Haight Realty Inc., in the event that the closing of title to the House did not occur.

268.    Upon information and belief, on or about September 28, 2016, 41-23 Haight Realty Inc. entered into a contract of sale for the real property located at 41-13 Haight Street, Flushing, New York, wherein all of the shareholders of 41-23 Haight Realty Inc., jointly and severally were liable to the contract purchaser for the monies paid by the contract purchaser to 41-23 Haight Realty Inc., in the event that the closing of title to the House did not occur.

269.    Upon information and belief, on or about November 15, 2018, 41-23 Haight Realty Inc. entered into second contract of sale for the real property located at 41-13 Haight Street, Flushing, New York, wherein Bo Jin Zhu, a principal of 41-23 Haight Realty Inc. executed a personal guaranty to guaranty the repayment of the monies paid by the contract purchaser to 41-23 Haight Realty Inc., in the event that the closing of title to the House did not occur.

270.    Upon information and belief, on August 20, 2019, 41-23 Haight Realty Inc. was placed into involuntary bankruptcy. (USBC EDNY Case No.: 19-42441 (NHL)

271.    During the time that the assets of 41-23 Haight Realty Inc. were subject to the protection of the Bankruptcy Court's Automatic Stay, Defendant Wing Fung Chau had a "Memorandum of Contract filed on ACRIS in an effort to illegally and improperly give a creditor's preference to another purchaser.

272.    The Trustee of the Bankrupt 41-23 Haight Realty Inc. moved for damages as against Defendant Wing Fung Chau for his illegal acts in perpetrating a fraud upon the Bankruptcy Court by violating the Automatic Stay which prohibited the actions taken by Defendant Wing Fung Chau.

273.    Plaintiffs have been damaged by the loss of the $750,000 that Plaintiffs paid to 41-23 Haight Realty Inc.

274.    Plaintiffs have been damaged by the costs of the interest expense paid by Plaintiffs to third party lenders in order to borrow all or part of the $750,000 that Plaintiffs paid to 41-23 Haight Realty Inc.

275.    Plaintiffs have been damaged by the costs incurred by Plaintiffs as and for legal fees for the legal fees paid by and incurred by Plaintiffs for commencing this action and for filing claims in the United States Bankruptcy Court against 41-23 Haight Realty Inc.

276.    Plaintiffs have been damaged by the costs incurred by Plaintiffs as and for legal fees for the legal fees paid by and incurred by Plaintiffs for commencing or to commence an action against the principals of 41-23 Haight Realty Inc. in the United States District Court for the Eastern District of New York.

277.    At all times, until on or about February 9, 2020, Plaintiffs believed, based on represenations made by Defendants that Plaintiffs would be closing title and purchasing the House.

278.    Due to the Defendants acts which resulted in the bankruptcy filing of 41-23 Haight Realty Inc., Plaintiffs lost the opportunity to acquire the House.

## COUNT ONE
## FOR BREACH OF CONTRACT
## BY 41-23 HAIGHT REALTY INC.
## BETWEEN PLAINTIFFS AND 41-23 HAIGHT REALTY INC.
## AGAINST DEFENDANT HOK KWAI CHAU (PIERCING THE CORPORATE VEIL),
## DEFENDANT BO JIN ZHU  (PIERCING THE CORPORATE VEIL), AND
## DEFENDANT ANDY CHAU (PIERCING THE CORPORATE VEIL)

279.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "278" of this complaint, with the same force and effect as if more fully set forth at length herein.

280.    Plaintiffs paid $750,000 to 41-23 Haight Realty Inc.

281.    41-23 Haight Realty Inc. failed to deliver title to the House pursuant to the Contract of Sale.

282.     Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau misappropriated Plaintiffs' funds totaling $750,000 to themselves.

283.     Due to the malfeasance of Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau, Plaintiffs are entitled to pre-judgment interest at the rate of 9% per annum in the total sum of $553,448.20, per diem interest at the rate of 9% per year to the date of judgment, as follows:

a.     Interest on $50,000 from November 18, 2010 to December 29, 2020 in the amount of $45,542.47, plus per diem interest at the rate of 9% per year to the date of judgment;

b.     Interest on $400,000 from December 24, 2010 to December 29, 2020 in the amount of $360,789.00, plus per diem interest at the rate of 9% per year to the date of judgment;

c.     Interest on $60,000 from November 10, 2014 to December 29, 2020 in the amount of $33,154.52, plus per diem interest at the rate of 9% per year to the date of judgment;

d.     Interest on $60,000 from July 21, 2015 to December 29, 2020 in the amount of $29,411.51, plus per diem interest at the rate of 9% per year to the date of judgment;

e.     Interest on $60,000 from August 21, 2015 to December 29, 2020 in the amount of $28,952.88, plus per diem interest at the rate of 9% per year to the date of judgment;

f.     Interest on $60,000 from October 27, 2015 to December 29, 2020 in the amount of $27,961.64, plus per diem interest at the rate of 9% per year to the date of judgment;

g.     Interest on $60,000 from November 18, 2015 to December 29, 2020 in the amount of $27,636.16, plus per diem interest at the rate of 9% per year to the date of judgment;

284.     41-23 Haight Realty Inc. entered into a contract with Plaintiffs.

285.     41-23 Haight Realty Inc. breached the terms of the Contract of Sale.

286.    Plaintiffs were damaged as a result of the breach of contract by 41-23 Haight Realty Inc.

287.    Plaintiffs complied with all of the terms and conditions of the Contract of Sale.

288.    Demand has been made by Plaintiffs to 41-23 Haight Realty Inc. for 41-23 Haight Realty Inc. to convey title to the House to Plaintiffs.

289.    Demand has been made by Plaintiffs to 41-23 Haight Realty Inc. for the return of the downpayments, totaling $750,000 paid by Plaintiffs to 41-23 Haight Realty Inc.

290.    41-23 Haight Realty Inc. refused to convey title to the House to Plaintiffs.

291.    41-23 Haight Realty Inc. refused to return the downpayments, totaling $750,000, paid by Plaintiffs to 41-23 Haight Realty Inc.

292.    Plaintiffs performed all obligations which Plaintiffs were required to perform under the Contract of Sale.

293.    Plaintiffs have been injured and suffered damages as a result of 41-23 Haight Realty Inc.'s breach of the terms and conditions of the Contract of Sale.

294.    Plaintiffs have been injured and suffered damages as a result of the malfeasance by Defendant Hok Kwai Chau.

295.    Plaintiffs have been injured and suffered damages as a result of the malfeasance by Defendant Bo Jin Zhu.

296.    Plaintiffs have been injured and suffered damages as a result of the malfeasance by Defendant Andy Chau.

297.    Defendant Hok Kwai Chau is liable to Plaintiffs for the breaches by 41-23 Haight Realty Inc. of the Contract of Sale between Plaintiffs and 41-23 Haight Realty Inc.

298.    Defendant Bo Jin Zhu is liable to Plaintiffs for the breaches by 41-23 Haight Realty Inc. of the Contract of Sale between Plaintiffs and 41-23 Haight Realty Inc.

299.    Defendant Andy Chau is liable to Plaintiffs for the breaches by 41-23 Haight Realty Inc. of the Contract of Sale between Plaintiffs and 41-23 Haight Realty Inc.

300.    Upon information and belief, between November 10, 2010 and the present date, Defendant Hok Kwai Chau was and a principal, shareholder and/or officer of 41-23 Haight Realty Inc.

301.    Upon information and belief, between November 10, 2010 and the present date, Defendant Bo Jin Zhu was and a principal, shareholder and/or officer of 41-23 Haight Realty Inc.

302.    Upon information and belief, between November 10, 2010 and the present date, Defendant Andy Chau was and a principal, shareholder and/or officer of 41-23 Haight Realty Inc.

303.    Between November 10, 2010 and the present date, Defendant Hok Kwai Chau exercised control over the daily operations of 41-23 Haight Realty Inc.

304.    Between November 10, 2010 and the present date, Defendant Bo Jin Zhu exercised control over the daily operations of 41-23 Haight Realty Inc.

305.    Between November 10, 2010 and the present date, Defendant Andy Chau exercised control over the daily operations of 41-23 Haight Realty Inc.

306.    Between November 10, 2010 and the present date, Defendant Hok Kwai Chau was the prime mover behind 41-23 Haight Realty Inc.

307.    Between November 10, 2010 and the present date, Defendant Bo Jin Zhu was the prime mover behind 41-23 Haight Realty Inc.

308.    Between November 10, 2010 and the present date, Defendant Andy Chau was the prime mover behind 41-23 Haight Realty Inc.

309.    Defendant Hok Kwai Chau is not entitled to be shielded or protected from liability for the actions and breaches of the obligations of 41-23 Haight Realty Inc. to Plaintiffs.

310.    Defendant Bo Jin Zhu is not entitled to be shielded or protected from liability for the actions and breaches of the obligations of 41-23 Haight Realty Inc. to Plaintiffs.

311.    Defendant Andy Chau is not entitled to be shielded or protected from liability for the actions and breaches of the obligations of 41-23 Haight Realty Inc. to Plaintiffs.

312.    Upon information and belief, Defendant Hok Kwai Chau used 41-23 Haight Realty Inc. as an instrumentality to defraud Plaintiffs of the sum of $750,000.

313.    Upon information and belief, Defendant Hok Kwai Chau used Defendant Andy Chau d/b/a Wing Fung Realty Group as an instrumentality to defraud Plaintiffs of the sum of $750,000.

314.    Upon information and belief, Defendant Hok Kwai Chau used Wing Fung Home Realty Group Inc. as an instrumentality to defraud Plaintiffs of the sum of $750,000.

315.    Upon information and belief, Defendant Bo Jin Zhu used 41-23 Haight Realty Inc. as an instrumentality to defraud Plaintiffs of the sum of $750,000.

316.    Upon information and belief, Defendant Bo Jin Zhu used Defendant Andy Chau d/b/a Wing Fung Realty Group as an instrumentality to defraud Plaintiffs of the sum of $750,000.

317.    Upon information and belief, Defendant Bo Jin Zhu used Wing Fung Home Realty Group Inc. as an instrumentality to defraud Plaintiffs of the sum of $750,000.

318.    Upon information and belief, Defendant Andy Chau used 41-23 Haight Realty Inc. as an instrumentality to defraud Plaintiffs of the sum of $750,000.

319.    Upon information and belief, Defendant Andy Chau used Defendant Andy Chau d/b/a Wing Fung Realty Group as an instrumentality to defraud Plaintiffs of the sum of $750,000.

320.    Upon information and belief, Defendant Andy Chau used Defendant Wing Fung Home Realty Group Inc. as an instrumentality to defraud Plaintiffs of the sum of $750,000.

321.    The Court should impose the obligations of 41-23 Haight Realty Inc., Defendant Andy Chau d/b/a Wing Fung Realty Group and Defendant Wing Fung Home Realty Group Inc. upon Defendant Hok Kwai Chau with regard to the obligations of 41-23 Haight Realty Inc., Defendant Andy Chau d/b/a Wing Fung Realty Group and Defendant Wing Fung Home Realty Group Inc. to Plaintiffs, which have been breached.

322.    The Court should impose the obligations of 41-23 Haight Realty Inc., Defendant Andy Chau d/b/a Wing Fung Realty Group and Defendant Wing Fung Home Realty Group Inc. upon Defendant Bo Jin Zhu with regard to the obligations of 41-23 Haight Realty Inc., Defendant Andy Chau d/b/a Wing Fung Realty Group and Defendant Wing Fung Home Realty Group Inc. to Plaintiffs, which have been breached.

323.    The Court should impose the obligations of 41-23 Haight Realty Inc., Defendant Andy Chau d/b/a Wing Fung Realty Group and Defendant Wing Fung Home Realty Group Inc. upon Defendant Andy Chau with regard to the obligations of 41-23 Haight Realty Inc., Defendant Andy Chau d/b/a Wing Fung Realty Group and Defendant Wing Fung Home Realty Group Inc. to Plaintiffs, which have been breached.

324.     Defendant Hok Kwai Chau is liable to Plaintiffs for the breaches by 41-23 Haight Realty Inc. of the Contract of Sale between Plaintiffs and 41-23 Haight Realty Inc.

325.     Defendant Bo Jin Zhu is liable to Plaintiffs for the breaches by 41-23 Haight Realty Inc. of the Contract of Sale between Plaintiffs and 41-23 Haight Realty Inc.

326.     Defendant Andy Chau is liable to Plaintiffs for the breaches by 41-23 Haight Realty Inc. of the Contract of Sale between Plaintiffs and 41-23 Haight Realty Inc.

327.     By reason of the foregoing, Plaintiffs have been damaged by 41-23 Haight Realty Inc., Defendant Andy Chau d/b/a Wing Fung Realty Group and Defendant Wing Fung Home Realty Group Inc., Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau in an amount to be determined at trial but expected to be no less than $1,500,000.00, plus interest, plus costs, disbursements and attorney's fees.

328.     By reason of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial but expected to be no less than $1,500,000, plus interest, plus costs, disbursements and attorney's fees.

**AS AND FOR COUNT TWO FOR**
**FRAUD AGAINST**
**DEFENDANT HOK KWAI CHAU (INDIVIDUALLY AND FOR PIERCING THE**
**CORPORATE VEIL), DEFENDANT BO JIN ZHU (INDIVIDUALLY AND PIERCING**
**THE CORPORATE VEIL), DEFENDANT ANDY CHAU**
**(INDIVIDUALLY AND PIERCING THE CORPORATE VEIL),**
**DEFENDANT ANDY CHAU D/B/A WING FUNG REALTY GROUP, AND**
**DEFENDANT WING FUNG HOME REALTY GROUP INC.**

329.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "328" of this complaint, with the same force and effect as if more fully set forth at length herein.

330.    On or about November 18, 2010, 41-23 Haight Realty Inc., Defendant Andy Chau d/b/a Wing Fung Realty Group and Defendant Wing Fung Home Realty Group Inc., Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau fraudulently induced Plaintiffs into entering into the Contract of Sale.

331.    On or about November 18, 2010, 41-23 Haight Realty Inc., Defendant Andy Chau d/b/a Wing Fung Realty Group and Defendant Wing Fung Home Realty Group Inc., Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau fraudulently induced Plaintiffs into causing the downpayments due under the Contract of Sale to be paid directly to 41-23 Haight Realty Inc. instead of being placed in an attorney escrow account.

332.    On or about November 18, 2010, 41-23 Haight Realty Inc., Defendant Andy Chau d/b/a Wing Fung Realty Group and Defendant Wing Fung Home Realty Group Inc., Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau represented to Plaintiffs that if Plaintiffs agreed to pay $750,000.00 to 41-23 Haight Realty Inc. and not placed in an attorney escrow account, 41-23 Haight Realty Inc. would construct the House and convey title to the House to Plaintiffs.

333.    41-23 Haight Realty Inc., Defendant Andy Chau d/b/a Wing Fung Realty Group and Defendant Wing Fung Home Realty Group Inc., Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau made misrepresentations of fact to Plaintiffs.

334.    When 41-23 Haight Realty Inc., Defendant Andy Chau d/b/a Wing Fung Realty Group and Defendant Wing Fung Home Realty Group Inc., Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau made such statements to Plaintiffs, 41-23 Haight Realty Inc., Defendant Andy Chau d/b/a Wing Fung Realty Group and Defendant Wing

Fung Home Realty Group Inc., Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau knew that the representations were false.

335.    Plaintiffs justifiably relied upon the representations made by 41-23 Haight Realty Inc., Defendant Andy Chau d/b/a Wing Fung Realty Group and Defendant Wing Fung Home Realty Group Inc., Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau to Plaintiffs that 41-23 Haight Realty Inc. would convey title to the House to Plaintiffs.

336.    Plaintiffs justifiably relied upon the representations made by 41-23 Haight Realty Inc., Defendant Andy Chau d/b/a Wing Fung Realty Group and Defendant Wing Fung Home Realty Group Inc., Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau to Plaintiffs that Defendant Andy Chau d/b/a Wing Fung Realty Group and Defendant Wing Fung Home Realty Group Inc., Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau would cause 41-23 Haight Realty Inc. to convey title to the House to Plaintiffs in accordance with the Contract of Sale.

337.    Plaintiffs would not have paid $750,000 to 41-23 Haight Realty Inc. if any of the representations made by Defendant Andy Chau d/b/a Wing Fung Realty Group and Defendant Wing Fung Home Realty Group Inc., Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau to Plaintiffs were untrue.

338.    By reason of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial but expected to be no less than $1,500,000, plus interest, plus costs, disbursements and attorney's fees.

## AS AND FOR COUNT THREE FOR
## UNJUST ENRICHMENT
## AGAINST DEFENDANT HOK KWAI CHAU (INDIVIDUALLY AND FOR PIERCING THE CORPORATE VEIL), DEFENDANT BO JIN ZHU (INDIVIDUALLY AND PIERCING THE CORPORATE VEIL), DEFENDANT ANDY CHAU (INDIVIDUALLY AND PIERCING THE CORPORATE VEIL) DEFENDANT ANDY CHAU D/B/A WING FUNG REALTY GROUP, AND DEFENDANT WING FUNG HOME REALTY GROUP INC.

339.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "338" of this complaint, with the same force and effect as if more fully set forth at length herein.

340.     In the event that the Court finds that there is no contract between Plaintiffs and 41-23 Haight Realty Inc., Defendant Andy Chau d/b/a Wing Fung Realty Group and Defendant Wing Fung Home Realty Group Inc., Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau, then Plaintiffs claim in the alternative against Defendant Andy Chau d/b/a Wing Fung Realty Group and Defendant Wing Fung Home Realty Group Inc., Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau for unjust enrichment.

341.     Plaintiffs agreed to provide $750,000 to 41-23 Haight Realty Inc. to construct the House at 41-15 Haight Street, Flushing, New York.

342.     Defendant Andy Chau d/b/a Wing Fung Realty Group and Defendant Wing Fung Home Realty Group Inc., Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau were the direct and/or indirect recipients of Plaintiffs' $750,000.00 or portion thereof.

343.     Plaintiffs agreed to provide $750,000 to 41-23 Haight Realty Inc. based on certain representations and promises made to Plaintiffs by Defendant Andy Chau d/b/a Wing Fung Realty Group and Defendant Wing Fung Home Realty Group Inc., Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau, and/or by their agents.

344.     Upon information and belief, Defendant Andy Chau d/b/a Wing Fung Realty Group and Defendant Wing Fung Home Realty Group Inc., Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau received monies and benefits from Plaintiffs as a result of Plaintiffs' fund advances of downpayments in the amount of $750,000.00.

345.     Upon information and belief, a benefit was bestowed upon Defendant Andy Chau d/b/a Wing Fung Realty Group and Defendant Wing Fung Home Realty Group Inc., Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau by their receipt of receipt of monies from Plaintiffs, directly and/or indirectly, as a result of Plaintiffs' fund advances of downpayments in the amount of $750,000.00.

346.     Defendant Andy Chau d/b/a Wing Fung Realty Group and Defendant Wing Fung Home Realty Group Inc., Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau have obtained a benefit without adequately compensating Plaintiffs.

347.     Plaintiffs demanded that Defendant Andy Chau d/b/a Wing Fung Realty Group and Defendant Wing Fung Home Realty Group Inc., Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau pay the sum of $750,000.00 to Plaintiffs.

348.     Defendant Andy Chau d/b/a Wing Fung Realty Group and Defendant Wing Fung Home Realty Group Inc., Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau have refused to pay to Plaintiffs the sums claimed by Plaintiffs totaling $750,000.00 due and unpaid by Defendant Andy Chau d/b/a Wing Fung Realty Group and Defendant Wing Fung Home Realty Group Inc., Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau to Plaintiffs.

349.     Defendant Andy Chau d/b/a Wing Fung Realty Group and Defendant Wing Fung Home Realty Group Inc., Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau have been unjustly enriched.

350.     Equity and good conscience require restitution to Plaintiffs.

351.     By reason of the foregoing, Plaintiffs have been damaged in the sum to be determined at trial, but anticipated to be no less than $10,000,000, plus attorneys' fees, costs, expenses and disbursements.

352.     By reason of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial but expected to be no less than $1,500,000, plus interest, plus costs, disbursements and attorney's fees.

## AS AND FOR COUNT FOUR FOR
## CONSPIRACY TO COMMIT FRAUD
## AGAINST DEFENDANT HOK KWAI CHAU (INDIVIDUALLY AND FOR PIERCING THE CORPORATE VEIL), DEFENDANT BO JIN ZHU (INDIVIDUALLY AND PIERCING THE CORPORATE VEIL), DEFENDANT ANDY CHAU (INDIVIDUALLY AND PIERCING THE CORPORATE VEIL) DEFENDANT ANDY CHAU D/B/A WING FUNG REALTY GROUP, AND DEFENDANT WING FUNG HOME REALTY GROUP INC.

353.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "352" of this complaint, with the same force and effect as if more fully set forth at length herein.

354.     Defendant Andy Chau d/b/a Wing Fung Realty Group and Defendant Wing Fung Home Realty Group Inc., Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau perpetrated a fraud on Plaintiffs as set forth herein.

355.     Defendant Andy Chau d/b/a Wing Fung Realty Group and Defendant Wing Fung Home Realty Group Inc., Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant

Andy Chau maintained a corrupt enterprise in which they knowingly misrepresented to Plaintiffs the uses of the $750,000.00 that Plaintiffs paid to 41-23 Haight Realty Inc.

356. Defendant Andy Chau d/b/a Wing Fung Realty Group and Defendant Wing Fung Home Realty Group Inc., Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau participated in the scheme to solicit and receive $750,000.00 paid to 41-23 Haight Realty Inc. by Plaintiffs giving rise to the inference of a conscious, corrupt intent and agreements provided by 41-23 Haight Realty Inc., Defendant Andy Chau d/b/a Wing Fung Realty Group and Defendant Wing Fung Home Realty Group Inc., Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau to Plaintiffs.

357. Defendant Andy Chau d/b/a Wing Fung Realty Group and Defendant Wing Fung Home Realty Group Inc., Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau had actual or constructive knowledge of the fraud, as set forth above.

358. Defendant Andy Chau d/b/a Wing Fung Realty Group and Defendant Wing Fung Home Realty Group Inc., Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau committed overt acts in furtherance of the conspiracy by, *inter alia*, diverting the $750,000.00 paid by Plaintiffs to 41-23 Haight Realty Inc. to Defendant Andy Chau d/b/a Wing Fung Realty Group and Defendant Wing Fung Home Realty Group Inc., Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau.

359. In reliance on Defendant Andy Chau d/b/a Wing Fung Realty Group and Defendant Wing Fung Home Realty Group Inc., Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau's misrepresentations and omissions, Plaintiffs were damaged in the amount of $750,000.00 plus, interest, costs, attorneys' fees.

360.     Because Defendant Andy Chau d/b/a Wing Fung Realty Group and Defendant Wing Fung Home Realty Group Inc., Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau engaged in the conspiracy to commit fraud stated in this complaint willfully and maliciously, and with the intent to damage Plaintiff, Plaintiff is entitled to an award of punitive damages.

361.     By reason of the foregoing, Plaintiffs have been damaged in the sum to be determined at trial, but anticipated to be no less than $1,500,000.00, plus punitive damages in the amount of $3,000,000.00, plus, attorneys' fees, costs, expenses and disbursements.

**AS AND FOR COUNT FIVE**
**PURSUANT TO RELIEF FOR**
**CIVIL RACKETEER INFLUENCED AND**
**CORRUPT ORGANIZATIONS ACT, 18 U.S.C. §1961, ET. SEQ. ("RICO")**
**VIOLATION OF RICO SECTION 18 U.S.C. §1962(C) AGAINST ALL DEFENDANTS**

362.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "361" of this complaint, with the same force and effect as if more fully set forth at length herein.

363.     The RICO statute 18 U.S.C. §1962(c) and (d), provides a civil cause of action to persons in their business or property by reason of the defendant's operation of, or conspiracy to operate, an enterprise through a pattern of racketeering acts.

364.     Plaintiffs are a "person" as defined in 18 U.S.C. §1961(3) and 1962(c).

365.     Defendants are each a "person" as defined in 18 U.S.C. §1961(3) and 1962(c).

366.     Upon information and belief, Defendant Andy Chau d/b/a Wing Fung Realty Group and Defendant Wing Fung Home Realty Group Inc., Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau, Defendant Salena Chau, Defendant Tu Kang Yang and Defendant Mei Yang Ko were employed by and/or associated with an enterprise

59

to conduct or participate, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity.

367.    41-23 Haight Realty Inc. was and is the enterprise whose activities affect interstate commerce.

368.    Defendant Andy Chau d/b/a Wing Fung Realty Group was and is the enterprise whose activities affect interstate commerce.

369.    Defendant Wing Fung Home Realty Group Inc. was and is the enterprise whose activities affect interstate commerce.

370.    Upon information and belief, Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, Defendant Andy Chau, Defendant Salena Chau, Defendant Tu Kang Yang and Defendant Mei Yang Ko were and are members of the enterprise whose activities affect interstate commerce.

371.    Upon information and belief, Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau, Defendant Salena Chau, Defendant Tu Kang Yang and Defendant Mei Yang Ko participated in the operation of the enterprise whose activities affect interstate commerce.

372.    Upon information and belief, Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau, Defendant Salena Chau, Defendant Tu Kang Yang and Defendant Mei Yang Ko participated in the operation of the enterprise whose activities affect interstate commerce.

373.    Upon information and belief, Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau, Defendant Salena Chau, Defendant Tu Kang Yang and Defendant Mei Yang Ko were and are employed by or associated with the enterprise.

374.     Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau, Defendant Salena Chau, Defendant Tu Kang Yang and Defendant Mei Yang Ko agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiffs.

375.     Pursuant to, and in furtherance of their fraudulent scheme, Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau, Defendant Salena Chau, Defendant Tu Kang Yang and Defendant Mei Yang Ko committed multiple related acts of wire fraud, mail fraud and interference with interstate commerce.

376.     The acts of wire fraud, mail fraud and interference with interstate commerce set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. §1961(5).

377.     The association of Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau, Defendant Salena Chau, Defendant Tu Kang Yang and Defendant Mei Yang Ko and other individuals constituted an enterprise within the meaning of 18 U.S.C. § 1961(c) (the "Enterprise"), which enterprise was engaged in, and whose activities affected, interstate and foreign commerce.

378.     The Enterprise was continuous in that it lasted for more than two years, had an ascertainable structure, and acted in ways distinct from the predicate offenses alleged by Plaintiffs.

379.     The Enterprise was continuous for the additional reason that the predicate acts were a regular way of conducting 41-23 Haight Realty Inc., Defendant Andy Chau d/b/a Wing Fung Realty Group and Defendant Wing Fung Home Realty Group Inc.'s ongoing business and of conducting or participating in the ongoing Racketeering Influenced and Corrupt Organizations Act ("RICO") enterprise.

380.   41-23 Haight Realty Inc., Defendant Andy Chau d/b/a Wing Fung Realty Group and Defendant Wing Fung Home Realty Group Inc., Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau, Defendant Salena Chau, Defendant Tu Kang Yang and Defendant Mei Yang Ko are each a person within the meaning of 18U.S.C. § 1961(3) and separate from the enterprise.

381.   41-23 Haight Realty Inc., Defendant Andy Chau d/b/a Wing Fung Realty Group and Defendant Wing Fung Home Realty Group Inc., Defendant Hok Kwai Chau, Defendant Bo Jin Zhu, and Defendant Andy Chau, Defendant Salena Chau, Defendant Tu Kang Yang and Defendant Mei Yang Ko's scienter is established by the pattern of intentional and knowing fraudulent, material misrepresentations and omissions described above.

382.   The precise role each defendant played, is known only to defendants at this time. Such information, and evidence concerning their participation, is exclusively within the possession and knowledge of defendants

383.   Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau, Defendant Salena Chau, Defendant Tu Kang Yang and Defendant Mei Yang Ko have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering and activity descried above, in violation of 18 U.S.C. §1962(c).

384.   As a direct and proximate result of Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau, Defendant Salena Chau, Defendant Tu Kang Yang and Defendant Mei Yang Ko racketeering activities and violations of 18 U.S.C. §1962(c), Plaintiffs have been injured in their business and property as fully stated in this complaint.

385.   Upon information and belief, Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau, Defendant Salena Chau, Defendant Tu Kang Yang and Defendant

Mei Yang Ko are each a culpable person, who conducts the enterprise which affects interstate commerce, through a pattern of racketeering activity, which has caused injury to Plaintiffs through the violation of the Civil Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. §1961, et.seq.

386.    Upon information and belief, Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau, Defendant Salena Chau, Defendant Tu Kang Yang and Defendant Mei Yang Ko have engaged in at least two (2) acts of violations of the Civil Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. §1961, et.seq. in the past ten years.

387.    The acts of Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau, Defendant Salena Chau, Defendant Tu Kang Yang and Defendant Mei Yang Ko's violations of the Civil Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. §1961, et.seq. have been related and continuous and have evidenced a pattern of racketeering.

388.    By Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau, Defendant Salena Chau, Defendant Tu Kang Yang and Defendant Mei Yang Ko continuing to defraud creditors of 41-23 Haight Realty Inc., and other real estate ventures as demonstrated by the numerous lawsuits filed against Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau, Defendant Salena Chau, Defendant Tu Kang Yang an/ord Defendant Mei Yang Ko, there is a continuing threat of continuity of the violations of Civil Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. §1961, et.seq.

389.    Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau, Defendant Salena Chau, Defendant Tu Kang Yang and Defendant Mei Yang Ko engaged in mail fraud and wire fraud by using emails, cellular phones, text messages and United States mails.

390.    Plaintiffs are persons who sustained injuries to their business and property by reason of Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau, Defendant Salena Chau, Defendant Tu Kang Yang and Defendant Mei Yang Ko's violation of 18 U.S.C. §1962.

391.    Plaintiffs' injuries stem from the predicate acts of wire fraud and mail fraud, which occurred between November 18, 2010 and up to and including December 15, 2019, when Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau, directly and/or indirectly continued to represent to Plaintiffs that the closing of title to the House would occur "shortly".

392.    Plaintiffs' injuries stem from the investment of racketeering income, by the Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau into various real estate ventures, and unilateral breach of contracts, and continuing its racketeering enterprise.

393.    All of the allegations made in this Complaint concerning the violations of Civil Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. §1961, et.seq. occurred within four years prior to the date of the filing of this Complaint.

394.    Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau, Defendant Salena Chau, Defendant Tu Kang Yang and Defendant Mei Yang Ko are culpable persons, who conduct the enterprise which affects interstate commerce, through a pattern of racketeering activity, which has caused injury to Plaintiffs through the violation of the Civil Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. §1961, et.seq.

395.    Upon information and belief, as set forth below, Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau, Defendant Salena Chau, Defendant Tu Kang Yang and Defendant Mei Yang Ko engaged in mail fraud in violation of 18 U.S.C. §1341.

396.     Upon information and belief, Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau, Defendant Salena Chau, Defendant Tu Kang Yang and Defendant Mei Yang Ko established a scheme to defraud Plaintiffs and purchasers of the houses developed by 41-23 Haight Realty Inc.

397.     Upon information and belief, the object of the scheme to defraud purchasers was money – millions of dollars.

398.     Upon information and belief,  the Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau, Defendant Salena Chau, Defendant Tu Kang Yang and Defendant Mei Yang Ko used the United States Mails to send contracts, checks, receive checks, to collect the monies that Plaintiffs paid to 41-23 Haight Realty Inc. totaling $750,000.00.

399.     Upon information and belief,  the Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau, Defendant Salena Chau, Defendant Tu Kang Yang and Defendant Mei Yang Ko created a plan or plans to scheme and defraud Plaintiffs.

400.     Upon information and belief,  the Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau, Defendant Salena Chau, Defendant Tu Kang Yang and Defendant Mei Yang Ko intended to defraud Plaintiffs.

401.     It was reasonably foreseeable that Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau, Defendant Salena Chau, Defendant Tu Kang Yang and Defendant Mei Yang Ko knew that the United States Mails and wires would be used, and actually were used to further their scheme to defraud Plaintiffs and other individuals and entities.

402.     The mailings that were used to perpetrate the Defendants' scheme to defraud were sent via United States Mail and overnight courier services.

403.    The purchase agreement for the House by Plaintiffs was mailed by Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau on or about November 18, 2010.

404.    A check from Plaintiff CHEN HUA LIU to 41-23 Haight Realty Inc. dated December 23, 2010 in the amount of $200,000.00 received by Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau was transmitted through United States Mail.

405.    A check from Plaintiff CHEN XIA LIU to 41-23 Haight Realty Inc. dated December 23, 2010 in the amount of $170,500.00 received by Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau was transmitted through United States Mail.

406.    A check from Plaintiff CHEN XIA LIU to 41-23 Haight Realty Inc. dated December 23, 2010 in the amount of $29,500.00 received by Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau was transmitted through United States Mail.

407.    Upon information and belief, on or about November 6, 2014, Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau transmitted a notice to the Plaintiffs via United States Mail that 41-23 Haight Realty Inc. received a work permit for the construction of the House, which required Plaintiffs to make a $60,000 payment to 41-23 Haight Realty Inc.

408.    Upon information and belief, on or about November 6, 2014, Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau transmitted a notice to the Plaintiffs via email that 41-23 Haight Realty Inc. received a work permit for the construction of the House, which required Plaintiffs to make a $60,000 payment to 41-23 Haight Realty Inc.

409.   A check from Plaintiff CHEN XIA LIU to 41-23 Haight Realty Inc. dated November 10, 2014 in the amount of $20,000.00 received by Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau was transmitted through United States Mail.

410.   A check from Plaintiff CHEN XIA LIU to 41-23 Haight Realty Inc. dated November 10, 2014 in the amount of $10,000.00 received by Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau was transmitted through United States Mail.

411.   A check from Plaintiff CHEN HUA LIU to 41-23 Haight Realty Inc. dated November 10, 2014 in the amount of $20,000.00 received by Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau was transmitted through United States Mail.

412.   A check from Plaintiff CHEN HUA LIU to 41-23 Haight Realty Inc. dated November 10, 2014 in the amount of $10,000.00 received by Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau was transmitted through United States Mail.

413.   Upon information and belief, on or about July 18, 2014, Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau transmitted a notice to the Plaintiffs via United States Mail that 41-23 Haight Realty Inc. completed the construction of the foundation for the House, which required Plaintiffs to make a $60,000 payment to 41-23 Haight Realty Inc.

414.   Upon information and belief, on or about July 18, 2014, Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau transmitted a notice to the Plaintiffs via email that 41-23 Haight Realty Inc. completed the construction of the foundation for the House, which required Plaintiffs to make a $60,000 payment to 41-23 Haight Realty Inc.

415.   A check from Plaintiff CHEN HUA LIU to 41-23 Haight Realty Inc. dated July 21, 2015 in the amount of $30,000.00 received by Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau was transmitted through United States Mail.

416.   A check from Plaintiff CHEN XIA LIU to 41-23 Haight Realty Inc. dated July 21, 2015 in the amount of $30,000.00 received by Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau was transmitted through United States Mail.

417.   Upon information and belief, on or about August 21, 2015, Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau transmitted a notice to the Plaintiffs via United States Mail that 41-23 Haight Realty Inc. completed the pouring of concrete for the 1st floor of the House, which required Plaintiffs to make a $60,000 payment to 41-23 Haight Realty Inc.

418.   Upon information and belief, on or about August 21, 2015, Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau transmitted a notice to the Plaintiffs via email that 41-23 Haight Realty Inc. completed the pouring of concrete for the 1st floor of the House, which required Plaintiffs to make a $60,000 payment to 41-23 Haight Realty Inc.

419.   A check from Plaintiff CHEN HUA LIU to 41-23 Haight Realty Inc. dated August 21, 2015 in the amount of $30,000.00 received by Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau was transmitted through United States Mail.

420.   A check from Plaintiff CHEN XIA LIU to 41-23 Haight Realty Inc. dated August 21, 2015 in the amount of $30,000.00 received by Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau was transmitted through United States Mail.

421.   Upon information and belief, on or about October 22, 2015, Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau transmitted a notice to the Plaintiffs

via United States Mail that 41-23 Haight Realty Inc. completed the construction of the roof of the House, which required Plaintiffs to make a $60,000 payment to 41-23 Haight Realty Inc.

422.    Upon information and belief, on or about October 22, 2015, Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau transmitted a notice to the Plaintiffs via email that 41-23 Haight Realty Inc. completed the construction of the roof of the House, which required Plaintiffs to make a $60,000 payment to 41-23 Haight Realty Inc.

423.    A check from Plaintiff CHEN HUA LIU to 41-23 Haight Realty Inc. dated October 27, 2015 in the amount of $30,000.00 received by Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau was transmitted through United States Mail.

424.    A check from Plaintiff CHEN XIA LIU to 41-23 Haight Realty Inc. dated October 27, 2015 in the amount of $30,000.00 received by Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau was transmitted through United States Mail.

425.    A check from Plaintiff CHEN HUA LIU to 41-23 Haight Realty Inc. dated November 18, 2015 in the amount of $30,000.00 received by Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau was transmitted through United States Mail.

426.    A check from Plaintiff CHEN XIA LIU to 41-23 Haight Realty Inc. dated November 18, 2015 in the amount of $30,000.00 received by Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau was transmitted through United States Mail.

427.    Upon information and belief, as set forth below, Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau, Defendant Salena Chau, Defendant Tu Kang Yang and Defendant Mei Yang Ko engaged in mail fraud in violation of 18 U.S.C. §1341.

428.    Upon information and belief, as set forth below, Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau, Defendant Salena Chau, Defendant Tu Kang Yang and Defendant Mei Yang Ko engaged in wire fraud in violation of 18 U.S.C. §1343.

429.    Upon information and belief, between November 18, 2010 and the present date, Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau, Defendant Salena Chau, Defendant Tu Kang Yang and Defendant Mei Yang Ko engaged in a regular practice of interfering with interstate commerce, by using emails and telephones to communicate with each other and victims of Defendants in furtherance of their scheme to defraud.

430.    Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau, Defendant Salena Chau, Defendant Tu Kang Yang and Defendant Mei Yang Ko made decisions to cause 41-23 Haight Realty Inc. to default of its Contracts of Sale to Purchasers and use the monies for purposes other than for the business purposes of 41-23 Haight Realty Inc.

431.    The numerous defaults, duplicates contracts regarding the same property to different unrelated purchasers between on or about November 18, 2010 to the present date, are predicate acts under 18 U.S.C. §1961, et. seq.

432.    At all times relevant to this complaint, Defendant Andy Chau d/b/a Wing Fung Realty Group and Defendant Wing Fung Home Realty Group Inc. constituted an enterprise within the meaning of 18 U.S.C. §1961(4) in that they were corporations and/or group of individuals associated in fact.

433.    The purpose of the enterprise was to generate money through the taking of deposits from contract vendees for the construction and sale of new homes and taking of monies from lenders who furnished funds to 41-23 Haight Realty Inc.

434.    The purpose of the enterprise was implemented by the enterprise associates through various legal activities.

435.    The Defendants used the enterprise to prey upon purchaser of its properties.

436.    Each of the associates of the enterprise, to wit: Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau, Defendant Salena Chau, Defendant Tu Kang Yang and Defendant Mei Yang Ko had relationships with the other associates of the enterprise.

437.    The enterprise and its activities continued from at least November 10, 2010 to the present date.

438.    At all times relevant to this complaint, Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau, Defendant Salena Chau, Defendant Tu Kang Yang and Defendant Mei Yang Ko has been an "enterprise" within the meaning of 18 U.S.C. §1961(4).

439.    The enterprise operated in the Eastern District of New York.

440.    Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau, Defendant Salena Chau, Defendant Tu Kang Yang and Defendant Mei Yang Ko together constituted an ongoing organization whose members and associates, including Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau, Defendant Salena Chau, Defendant Tu Kang Yang and Defendant Mei Yang Ko functioned as a conspiracy for many with the common purpose of defrauding purchasers of 41-23 Haight Realty Inc.'s real properties.

441.    The enterprise's associates implemented the unlawful purpose through various legal activities, but principally through mispresenting 41-23 Haight Realty Inc.'s ability to legally convey title and complete construction of new houses.

442.    The acts of Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant

Andy Chau, Defendant Salena Chau, Defendant Tu Kang Yang and Defendant Mei Yang Ko, as described in the previous paragraphs of this complaint, entitle Plaintiffs to redress under the provisions of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.A. §§ 1961 et seq., specifically 18 U.S.C.A. § 1964(c), because: The activities engaged in by the defendants constituted a "pattern of racketeering activity," as that term is defined in 18 U.S.C.A. § 1961(5), in that the activities of the defendants constituted mail fraud, in violation of 18 U.S.C.A. § 1341, wire fraud, in violation of 18 U.S.C.A. § 1343, and financial institution fraud, in violation of 18 U.S.C.A. § 1344.

443.    Among the acts constituting a pattern of racketeering activity is the following:

444.    Upon information and belief, Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau committed fraud regarding one of the other properties owned and/or controlled by their company 41-23 Haight Realty Inc.  A prospective buyer of this this property, Wei X. Chen, sued the Defendants for fraud and breach of contract (Queens Co Index # 704522/2018). Among the allegations, Mr. Chen alleged, upon information and belief, that Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau, through their company 41-23 Haight Realty Inc., contracted to sell him the properties located at 41-25 Haight Block 5063, lot 46 while aware that they could not convey title because they had already agreed to sell the same property to another purchaser WLZ New York LLC.

445.    Upon information and belief, Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau committed fraud regarding another of the other properties owned and/or controlled by their company 41-23 Haight Realty Inc.  A prospective buyer of this property, Li Fang Zheng, sued the Defendants for fraud and breach of contract.  (Queens Co Index # 704528/2018). Among the allegations, Mr Zheng alleged that upon information and

belief, Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau Defendants, through their company 41-23 Haight Realty Inc., contracted to sell him the properties located at 41-27 Haight Block 5063, lot 45 while aware that they could not convey title because they had already agreed to sell the same property to another purchaser LNW Realty Development, LLC.

446.    Upon information and belief, during the time that the assets of the Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau's company 41-23 Haight Realty Inc, were subject to the protection of the Bankruptcy Court's Automatic Stay, Defendant Andy Chau had a "Memorandum of Contract filed on ACRIS in an effort to illegally and improperly give one creditor a preference to others. The Trustee of the Bankrupt Seller 41-23 Haight Realty Inc, moved for damages as against Defendant Andy Chau for his illegal acts in perpetrating a fraud upon the Bankruptcy Court by violating the Automatic Stay which prohibited the actions taken by Defendant Wing Fung Chau.

447.    Upon information and belief, the Bankruptcy Court then granted an Order on December 1, 2019 that automatic stay was in effect so as to prohibit Defendant Andy Chau, 77 Shi Inc., Ken Chung, Season Abstract Inc., any parties purporting to act on behalf of or in concert with the Debtor and their respective professionals from taking any further acts with respect to the Debtor's assets in violation of Section 362(a) of the Bankruptcy Code.

448.    Upon information and belief, despite the prior order directed to Defendant Andy Chau, Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau attempted to extract and/or extort money from prospective purchasers of Debtor's condo units in an effort to supplement their second "stalking horse" deposit requirement.

449.    Upon information and belief, despite the prior order directed to Defendant Andy

Chau, Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau attempted to extract and/or extort money from prospective purchasers of Debtor's condo units in an effort to further perpetrate a fraud upon the Bankruptcy Court by violating the Automatic Stay which prohibited the actions.

450.    Upon information and belief, this "Second Stalking Horse Bidder" was actually Defendant Mei Yang Ko, who is the mother of Defendant Andy Chau.

451.    Upon information and belief, Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau attempts to extort money from prospective purchasers of Debtor's condo units were done without the Trustee's knowledge, awareness or consent and were done prior to "Second Stalking Horse Bidder" ever obtaining any right to negotiate or impair any of the bankrupt "Seller" assets.

452.    Upon information and belief, the Bankruptcy Court was advised that the "Second Stalking Horse Bidder" had defaulted on the purchase agreement and that the Debtor's property was not sold.

453.    Upon information and belief, as a result of the Defendants' attempts to profit themselves and defraud the Bankruptcy Trustee, on June 26, 2020, the Bankruptcy Court granted a Preliminary Injunction ordering and prohibiting Defendant  Andy Chau, Xiu Qin Shi a/k/a Amy Shi (Wing Fung Chau's wife), Mei Yang Ko (Wing Fung Chau's mother), Salena Chau (Wing Fung Chau's daughter), Bo Jin Zhu (shareholder of Debtor), Hok Kwai Chau (shareholder of Debtor), Chun Yin Chen (shareholder of Debtor), Tu Kang Yang (Wing Fung Chau's partner), Dongmei Li (collectively, the "Insiders"), and their agents, attorneys, employees, from entering the Debtor's Real Property, enjoined them from interfering with, or taking any adverse action against, the property of the Debtors estate, and enjoined from soliciting or accepting any funds

from the creditors with pre-petition contracts for the purpose of purchasing any unit and/or townhouse of the Debtor's Real Property.

454.    Upon information and belief, the "Second Stalking Horse Bidder" has defaulted on their obligation to tender the deposit required to become a purchaser of the Debtor's property.

455.    Upon information and belief, the actions of Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau, Defendant Salena Chau, Defendant Tu Kang Yang and Defendant Mei Yang Ko their servants and/or agents damaged the value of the Debtor's assets and the ability of the Plaintiffs' to be made whole.

456.    Plaintiffs have suffered injury to its person and property within the meaning of 18 U.S.C. §1964(c) by reason of Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau, Defendant Salena Chau, Defendant Tu Kang Yang and Defendant Mei Yang Ko's violations of 18 U.S.C. §1962(c), in an amount to be determined at trial, but no less than the minimum jurisdictional limit of $75,000 of this court.

457.    Plaintiffs are entitled to recover treble damages and the costs of this action, including a reasonable attorney's fee, under the provisions of 18 U.S.C.A. § 1964(c).

458.    By reason of the foregoing, Plaintiffs have been damaged in the sum to be determined at trial, but anticipated to be no less than $1,500,000.00, plus punitive damages in the amount of $3,000,000.00, treble damages, pre-judgment and post-judgment interest, costs, and attorneys' fees.

## AS AND FOR COUNT SIX
## FOR RELIEF PURSUANT TO RELIEF FOR CIVIL RACKETEER
## INFLUENCED AND CORRUPT ORGANIZATIONS ACT, 18 U.S.C. §1961,
## ET. SEQ. ("RICO") VIOLATION OF RICO SECTION 18 U.S.C. §1962(a)

459.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraph "1" through "458" of this Complaint, with the same force and effect as if more fully set forth at length herein.

460.    Defendant Andy Chau d/b/a Wing Fung Realty Group is an enterprise engaged in and whose activities affect interstate commerce used and invested income, through mail fraud, wire fraud and by interfering with interstate commerce that was derived from a pattern of racketeering activity in interstate commerce.

461.    Defendant Wing Fung Home Realty Group, Inc. is an enterprise engaged in and whose activities affect interstate commerce used and invested income, through mail fraud, wire fraud and by interfering with interstate commerce that was derived from a pattern of racketeering activity in interstate commerce.

462.    Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau, Defendant Salena Chau, Defendant Tu Kang Yang and Defendant Mei Yang Ko together is an enterprise engaged in and whose activities affect interstate commerce used and invested income, through mail fraud, wire fraud and by interfering with interstate commerce that was derived from a pattern of racketeering activity in interstate commerce.

463.    Defendant Andy Chau d/b/a Wing Fung Realty Group used income derived from the a pattern of racketeering activity in interstate commerce to further the enterprise and the racketeering activity.

464.    Defendant Wing Fung Home Realty Group, Inc. used income derived from the a pattern of racketeering activity in interstate commerce to further the enterprise and the

racketeering activity.

465. Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau, Defendant Salena Chau, Defendant Tu Kang Yang and Defendant Mei Yang Ko used income derived from the a pattern of racketeering activity in interstate commerce to further the enterprise and the racketeering activity.

466. The mail fraud, wire fraud, financial institution fraud and by interfering with interstate commerce constitutes a pattern of racketeering activity pursuant to 18 U.S.C. 1961(5).

467. As a direct and proximate result of Defendant Wing Fung Realty, Inc's racketeering activities and violations of 18 U.S.C. 1962(a), Plaintiffs have been injured in their business and property.

468. As a direct and proximate result of Defendant Wing Fung Home Realty Group, Inc.'s racketeering activities and violations of 18 U.S.C. 1962(a), Plaintiffs have been injured in their business and property.

469. As a direct and proximate result of Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau, Defendant Salena Chau, Defendant Tu Kang Yang and Defendant Mei Yang Ko's racketeering activities and violations of 18 U.S.C. 1962(a), Plaintiffs have been injured in their business and property.

470. By reason of the foregoing, Plaintiffs have been damaged in the sum to be determined at trial, but anticipated to be no less than $1,500,000.00, plus punitive damages in the amount of $3,000,000.00, treble damages, pre-judgment and post-judgment interest, costs, and attorneys' fees.

## AS AND FOR COUNT SEVEN FOR
## RACKETEERING IN VIOLATION OF 18 U.S.C. §1962(d)
## RACKETEERING INFLUENCED AND CORRUPT ORGANIZATIONS ACT

471.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "470" of this complaint, with the same force and effect as if more fully set forth at length herein.

472.    In violation of 18 U.S.C. § 1962(d), Defendant Andy Chau d/b/a Wing Fung Realty Group and Defendant Wing Fung Home Realty Group Inc., Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau, Defendant Salena Chau, Defendant Tu Kang Yang and Defendant Mei Yang Ko and others whose identities are known only to defendants at this time conspired to violate the provisions of 18 U.S.C. § 1962(c) in that, beginning no later than 2010 and continuing through at least approximately December 2020, they knowingly agreed and conspired together and with others to conduct or participate, directly or indirectly, in the affairs of an enterprise through the pattern of racketeering activity described above. The sophisticated frauds that were perpetrated and the continuance of this scheme could not have occurred without the consent and knowing connivance of Defendant Andy Chau d/b/a Wing Fung Realty Group and Defendant Wing Fung Home Realty Group Inc., Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau, Defendant Salena Chau, Defendant Tu Kang Yang and Defendant Mei Yang Ko, other defendants and other conspirators.

473.    As part of and in furtherance of their conspiracy, Defendant Andy Chau d/b/a Wing Fung Realty Group and Defendant Wing Fung Home Realty Group Inc., Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau, Defendant Salena Chau, Defendant Tu Kang Yang and Defendant Mei Yang Ko, agreed to and conspired in the commission of the many predicate acts described above, with the knowledge that they were in

furtherance of that pattern of racketeering activity. As part of and in furtherance of their conspiracy, each of the defendants, Defendant Andy Chau d/b/a Wing Fung Realty Group and Defendant Wing Fung Home Realty Group Inc., Defendant Hok Kwai Chau, Defendant Bo Jin Zhu and/or Defendant Andy Chau, Defendant Salena Chau, Defendant Tu Kang Yang and Defendant Mei Yang Ko agreed to and did commit at least two predicate acts of racketeering. Further, each defendant's actions are attributable to the other defendants.

474.    None of defendants have withdrawn, or otherwise dissociated themselves, from the conspiracy at issue or the other conspirators.

475.    By reason of the foregoing, Plaintiffs have been damaged in the sum to be determined at trial, but anticipated to be no less than $1,500,000.00, plus punitive damages in the amount of $3,000,000.00, treble damages, pre-judgment and post-judgment interest, costs, and attorneys' fees.

**WHEREFORE,** Plaintiffs respectfully request that the Court enter judgment awarding Plaintiff:

A.    Compensatory damages in the sum to be determined at trial, but anticipated to be no less than $1,500,000.00, plus punitive damages in the amount of $3,000,000.00, treble damages, pre-judgment and post-judgment interest, costs, and attorneys' fees.;

B.    Punitive damages in an amount to be determined at trial on Plaintiff's Count Five, Count Six and Count Seven, as a result of defendants' willful and intentional tortious misconduct;

C.    Treble damages under 18 U.S.C. § 1962(c) and (d);

D.    Costs, expenses, disbursements, and reasonable attorneys' fees in an amount to be awarded at trial; and

E.      Such other relief as the Court deems just and proper.


Dated:      December 30, 2020
            Great Neck, New York

_____
Gary Rosen
ROSEN LAW LLC
Attorneys for Plaintiffs
216 Lakeville Road
Great Neck, New York 11020
516-437-3400

# Exhibit "1"

# RESIDENTIAL CONTRACT OF SALE

**CONTRACT OF** SALE made this *18th* day of November, 2010

Seller:        **41-23 HAIGHT REALTY INC.**
Purchaser:   *Chen Xia Liu and Chen Hua Liu* \*\*
Premises:    **41-15** Haight Street, Flushing, NY *11355*
*\*\* Purchasers shall have right to assign this contract of sale to LLC formed by Purchasers*

WITNESSTH

THAT SELLER agrees to sell and convey, and PURCHASER agrees to purchase:  ALL that certain Plot, piece or parcel of Land, with the building and improvements thereon erected, situated, lying and being in the County of Queens, State of New York, in accordance with architectural plans delivered to the Purchaser attached hereto and made a part hereof, known as and by:

STREET ADDRESS: **41-15** Haight Street, Flushing, NY as designated in the attached plan.

TAX MAP DESIGNATION: SEC:            BLOCK:            LOT:

Lot size 100' x 19' building size is about 19' x 55' with the ground floor to be 16'6" height and 8' height for 2nd, 3rd and 4th floor with finished cellar (8' high).  **This sale specifically excludes any and all air rights above the roof of the subject building.  The sale is also sold subject to and together with driveway easements in common with the other owners of the rest of the buildings depicted in the attached plan total of 10 buildings and the adjoining Condominium.**

The Purchase Price is **$1,350,000.00** to be paid as follows:

1. $450,000.00     first deposit upon signing this Agreement paid directly to seller *$50,000 upon signing and $400,000 on or before 45 days after signing*
2. $ 60,000.00     to be paid directly to seller within 5 days from the date Purchaser receives a written notice from the seller or its attorney of issuance of the work permit ;

3. $ 60,000.00     **to be paid directly to seller within 5 days from the date Purchaser receives a written notice from the seller or its attorney of completion of foundation;**

4. $ 60,000.00     **to be paid directly to seller within 5 days from the date Purchaser receives a written notice from the seller or its attorney of completion of pouring cement of 1st floor;**

5. $ 60,000.00     **to be paid directly to seller within 5 days from the date Purchaser receives a written notice from the seller or its attorney of completion of pouring cement of 2nd floor;**

6. $ 60,000.00     **to be paid directly to seller within 5 days from the date Purchaser receives a written notice from the seller or its attorney of completion of roof;**

7. **$600,000.00**    to be paid by certified or bank checks drawn on any bank having an office in the State of New York at the time of closing.

**The aforesaid Deposit shall not be held in escrow by SELLER'S attorney, the PURCHASER agrees that the deposit shall be paid directly to SELLER.   Purchaser acknowledges that Time being of the essence to pay the above-mentioned installment deposits.  Failure to pay the above-mentioned installment payments within 20 days after receipt of written notice by Purchaser's attorney that such payments are due, Purchaser shall pay a late charge equals to 10% of each installment payment that was not paid when due for each month that is late.  However, if Purchaser fails to pay any required installment payment more than 90 days of the due date, then Purchaser shall be considered to be in material default of the contract and PURCHASER hereby agrees that the measure of damage shall be ten (10%) percent of the purchase price, regardless of any subsequent sale or disposition of the premises, and SELLER SHALL retain ten (10%) percent of the purchase price as part of such liquidated damages inasmuch as actual damages are difficult to ascertain and ten (10%) percent of the purchase price is a reasonable estimate of SELLER'S damages.**

DELIVERY OF DEED; ADJUSTMENT.  The closing of title shall take place at the office to be designated by the SELLER or PURCHASER'S lending institution so long as said office is located in New York County or Queens County.  **It is anticipated that the closing shall take place** on or about **twenty-four (24) months from the date Seller obtains its construction permit but no later than sixty (60)** days from written notification to PURCHASER's attorney that a **Temporary Certificate of Occupancy** has been issued **TIME BEING OF THE ESSENCE.**  The SELLER shall be entitled to a reasonable adjournment in the closing of title as set forth in this agreement or in the event of delay by reason of weather conditions, strikes, labor or material shortages, or delays in inspections and reports thereon, or other requirements.  If the PURCHASER is not ready to close title at the date and time fixed pursuant to the contract, any adjournment exceeding **fourteen (14) days** granted at the request of the PURCHASER shall be upon the condition that (a) interest on the balance of the purchase price computed from the date originally fixed for closing to the actual date of closing, shall be paid to SELLER at a rate of 12 % per annum; (b) all adjustments shall be made as of the date originally fixed for the closing of title and the PURCHASER also agrees to apportion with SELLER such taxes, security costs, insurance as may be determined to be due at the time of closing; Nothing herein contained shall be construed to require SELLER to grant any adjournment beyond **fourteen (14) days** from the date originally fixed for closing.

1.     THE PARTIES AGREE that   **Wing Fung Realty Group** is/are the broker(s) who brought about this sale, and that the commission is to be paid by SELLER as per separate agreement.  PURCHASER represents to SELLER that the has not dealt or negotiated with any other broker with respect to this transaction, and agrees to defend, indemnify and hold SELLER harmless from and against any loss, claim damage or expenses regarding any claim suit or action which may be asserted against SELLER for any brokerage fee, commission or other compensation due hereunder, asserted by any other person, firm, corporation, agency or other entity arising from PURCHASER'S ACTS.   SELLER shall pay the commission of the above

named broker(s) pursuant to a separate agreement.  This paragraph shall survive the delivery of the deed or any other termination of this contract.

2.      **SELLER AGREES**, at its own cost and expense, to erect and complete a legal Four (4) **family dwelling plus medical office and finished cellar with two parking space, if approved by NYC Building Dept, otherwise, at least one parking space** which dwelling shall be constructed substantially in accordance with the requirements as to materials and workmanship of the municipality wherein it is or will be located and per the attached plan to be approved by NYC Building Dept.  **The Seller agrees to build the subject building using the materials and appliances and workmanship same as the building located at 80-28 Cornish Avenue, Elmhurst, NY unless same is not available, then the seller shall use at least equivalent materials and appliances.** *Specifications include : Kitchens- marble countertop, marble floor Bathrooms - marble floor*

3.      ALL EXTRAS, upgrades or modifications from the original plans ordered herein or subsequent to the signing of this contract must be in writing and signed by both SELLER and PURCHASER.  Said extras, upgrades or modifications from the original plans must be paid for in full upon their order unless SELLER, at his option, agrees to wait until closing, and such sums are non-refundable unless SELLER shall be unable to deliver title to the premises herein, described in accordance with the conditions hereof.  In the event any extras, upgrade or modification from the original plans is not paid for when due, the work on the building shall proceed in normal course, as if no extras, upgrade or modification from the original plans had been ordered, and the premises shall be completed without the extra, upgrades or modifications from the original plans.  In the event SELLER does not performed the extras work herein set forth or subsequently ordered, SELLER'S liability shall be limited to the return of any monies that have been paid to his for such extras or upgrades, and there shall be no further liability of any kind with respect to such extras, upgrades or modifications from the original plans. PURCHASER shall nevertheless be obligated to perform all the conditions of the contract of sale between the parties.

4.      PURCHASER DOES hereby agree to pay off any outstanding personal loans prior to closing if so requested by the bank.  PURCHASER represents that he has no tax liens or judgments outstanding against him in any Court, nor has he ever been adjudicated a bankrupt or filed bankruptcy.  PURCHASER represents that he has no knowledge of any financial or employment circumstances or claims against him which would impair his ability to obtain a mortgage loan, render him unacceptable to a bank or adversely affect his credit history or standing.  PURCHASER represents he is a citizen or permanent legal residence of the United States of America.

5.      This contract is subject to and conditioned upon the ability of the PURCHASER to obtain a mortgage not more than **$600,000.00** for a period of 15/25/30 years, with interest at the prevailing rates within **45 days from the date the PURCHASER's attorney receives a copy of temporary certificate of occupancy.**  In the event a firm commitment for such loan is not obtained by PURCHASER within said **45** days, then either party may cancel this contract by giving written notice to the other party, then this Contract shall become null and void and SELLER will agree to return to PURCHASER all monies paid hereunder.  Upon the return of all the monies, all liabilities under this Contract shall come to an end and neither party shall have a

claim against the other. However, if PURCHASER fails to notify the SELLER's attorney by mail postmarked within said *45* days the PURCHASER's inability to secure a commitment or PURCHASER fails to obtain a written extension from the SELLER to secure a commitment, then the PURCHASER is deemed to have waived the cancellation provision and the contract shall be firm as if there is no contingency.

PURCHASER shall make diligent good faith efforts to apply for a mortgage in the amount not more than $_____ and execute all necessary documents and instruments necessary for obtaining said mortgage and expressly warrant and represent that the PURCHASER have sufficient income to meet the mortgage bank requirements. The costs and expenses of securing said mortgage shall be the responsibility of the PURCHASER. The PURCHASER represent that total annual income of PURCHASER to be approximately $_____.

It is specifically agreed that if the PURCHASER choose to apply a mortgage more than the above-stated amount, then the PURCHASER are deemed to waive PURCHASER's mortgage contingency and therefore, this contract is firm regardless whether the PURCHASER are able to obtain said mortgage commitment and regardless the "subject to and conditioned upon" provision stated above.

Any mortgage commitment obtained by PURCHASER shall be deemed a firm commitment despite any requirement that the PURCHASER must sell or be in contract to sell PURCHASER's present home or any other property or satisfy any other obligation.\

If PURCHASER applies for a no income no asset verification loan, PURCHASER warrants that he has sufficient income/assets to qualify for the above-stated mortgage amount even if it cannot all be verified. If PURCHASER applies for an income verification loan, PURCHASER warrants that his current verifiable and reportable annual income is sufficient to qualify for said mortgage. PURCHASER shall apply for a mortgage and shall comply with all requirements of such commitment. PURCHASER shall furnish SELLER with a copy of such commitment within five (5) business days after receipt of same and shall return a signed acceptance of such commitment to the bank within the time required pursuant to said commitment together with any deposit required therewith. If PURCHASER complies with all of the conditions of this contract and such commitment is not issued, the application is rejected or a commitment is offered for less than the amount set forth herein, PURCHASER may cancel this contract by serving written notice, accompanied by a copy of any denial or non-conforming commitment and subject to written verification of compliance with all of the conditions of this contract from the bank, within five (5) business days after receipt of same or expiration of the commitment period, whichever is earlier. IF PURCHASER fails to serve notice of cancellation, or if PURCHASER shall accept commitment that does not comply with the conditions set forth in this contract, then PURCHASER shall be deemed to have waived his right to cancel this contract and his right to receive a refund of the deposits by reason of the contingency contained in this section.

6.      PURCHASER SHALL pay any and all expenses or fees incurred or due in connection with said mortgage application or commitment. It is expressly understood and agreed that this transaction is not subject to the conditions of any mortgage commitment received by PURCHASER, except as otherwise specifically set forth herein, and SELLER shall not be

obligated to make any alterations or repairs by the bank as a condition of closing. PURCHASER warrants that he has sufficient funds available to satisfy the balance due at closing, including any and all necessary closing costs.

7.     IF THE APPLICATION for the mortgage loan hereinabove set forth is approved and the commitment is issued, then PURCHASER does hereby agree to execute, acknowledge and deliver such bond, mortgage, assumption, extension and/or modification agreements, affidavits, statements or any other instruments and /or documents, which my be necessary or required by the local bank and /or the Title Company insuring the mortgage, in order to properly effectuate the placing of the mortgage loan above described.

8.     THIS CONTRACT is NOT subject to PURCHASER selling another premises. The mortgage commitment is to be obtained by PURCHASER pursuant to the mortgage contingency clause above, shall be considered firm and unconditional even thought it contains a condition requiring the sale of PURCHASER'S home or any other property prior to closing PURCHASER acknowledges that the sale of such home or other property shall not be a condition to completing his obligations under this contract, and PURCHASER hereby waives any such condition as an inducement to SELLER to enter into this contract. In the even PURCHASER'S mortgage commitment requires him to discharge any debts, those obligations shall be the sole obligation of PURCHASER and shall have no effect upon PURCHASER'S obligation to purchase the premises which is the subject of this contract. For purposes of this contract a mortgage commitment requiring PURCHASER to meet any of the foregoing conditions shall be an unconditional commitment and PURCHASE shall be in default of this contract of sale if he fails to close despite his ability to meet those conditions set by PURCHASER'S bank. If PURCHASER is unable to sell the premises as required, PURCHASER shall at his own cost and expense obtain a bridge loan or home equity loan, if possible, in order that he shall be able to close on the premises subject to this contract, within the time set forth in this contract. It shall be the sole obligation of PURCHASER, if PURCHASER is issued a mortgage commitment, to obtain any necessary time extensions to his mortgage commitment in the event his commitment expires sooner than one month beyond the "on or about" closing date agreed to in this contract of sale. Failure to obtain said extension shall not constitute a basis for PURCHASER canceling this contract, which shall remain in full force and effect.

9.     IN THE EVENT any personal property is included in this sale, such personal property shall be included in and be deemed part of this sale and shall be transferred to PURCHASER free of liens and encumbrances.

10.     PURCHASER AGREES that all conditions of this contract are and shall be subject and subordinate to the lien of any building loan mortgage heretofore or hereinafter made and any advances heretofore or hereafter made thereon, and any payments or expenses already made or incurred or which may hereafter be made or incurred, pursuant to the conditions thereof, or incidental thereto, or to protect the security thereof, to the full extent thereof without the execution of any further legal documents by PURCHASER. This subordination shall apply whether such advances are voluntary or involuntary and whether made in accordance with the building loan schedule of payments or accelerated thereunder by virtue of the lender's right to make advances before they become due in accordance with the schedule with the payments.

However, SELLER shall provide a release for the subject premises at the time of closing.

11.     SELLER, at its sole discretion, expressly reserves the right to, and PURCHASER recognizes that SELLER may without diminution of the purchase price:
      (1)     make such changes or substitutions of equipment, fixtures, personal property, materials and construction which may be required, authorized or approved by or acceptable to, the bank or any Governmental Agencies having jurisdiction thereof, provided such changes and/or substitutions are comparable or better quality; and
      (2)     determine the grading and elevation of the plot, the foundation the from stoop, any outside steps, and the streets as to conform with topographical conditions and with requirements of Governmental Agencies having jurisdictions thereof.  PURCHASER hereby agrees to execute any documents, agreements affidavits, and any other instruments which may be necessary or required by any Governmental Agency in  furtherance of the purposes of this paragraph; and

      (3)     determine the design and location of the building on the plot, including reversal of the building layout, construction of cathedral style ceilings on the second floor, and making such changes in the facade and roof line of the building as to blend in with the general character of the development.

12.     SELLER SHALL grade the entire plot according to the rules, regulations and requirements of the appropriate governmental agencies having jurisdiction thereof.

13.     Intentionally deleted.

14.     IN THE EVENT SELLER assigns that portion of the building loan encumbering the said property to the PURCHASER's lending institution, PURCHASER shall pay to SELLER the mortgage recording tax that would have been due had the PURCHASER recorded said mortgage for said amount. In other words, if the SELLER assigns its pro- rata share of its mortgage encumbering said lot to PURCHASER's lending institution, PURCHASER shall pay to SELLER the amount of the mortgage recording tax that would have been payable to record a mortgage of such amount.

15.     PURCHASER AGREES to apportion with SELLER and to pay the apportioned amount found to be due at the time of closing for taxes, sewer and water rates.  PURCHASER shall make the usual and/or required deposits with the bank in order to set up an estimated escrow fund for future payments of taxes, sewer and water charges and insurance premiums.

16.     **PURCHASER SHALL, because this purchase is new construction, pay at closing the New York City real property transfer tax, if applicable, and the New York State real estate transfer tax, RPT5217 filing fee and mansion tax if applicable.  The required Survey with the proper certification shall be provided by SELLER, and the PURCHASER shall pay the cost of $750.00 for the survey itself and any necessary certifications thereto, at the time of closing and transfer of title;**

17.     IN THE EVENT that the dwelling or its environs are substantially complete but some

repairs or finishing work is incomplete at the time set by SELLER for closing of title same shall not constitute an objection to such title closing and PURCHASER hereby agrees to close, provided SELLER shall furnish PURCHASER with a letter in which SELLER shall agree to complete any incomplete items with a reasonable time after title closing, and which letter shall survive delivery of the deed.  PURCHASER hereby agrees to inspect the premises prior to the closing of title and to acknowledge said letter.  SELLER at his option, shall have the right to give PURCHASE a monetary adjustment, equal to the reasonable cost of parts, materials, and labor, at the time of closing in lieu of making repairs or replacement.  PURCHASER further agrees that at closing of title he will, if required, execute the usual form letter required by the bank stating that the premises have been completed to his satisfaction and he request the institution close the loan, and further that he releases the institution from any liability accruing.

18.     (a) SELLER AGREES to deliver a **Temporary** Certificate of Occupancy for the dwelling by closing of title.  At the time of this contract the dwelling is not yet completed and the municipality has not issued a **Temporary** Certificate of Occupancy on the premises.  It is the intention by SELLER to obtain said **Temporary** Certificate of Occupancy no later than the date designated in this contract.  In the event that SELLER is unable, despite his best efforts, to obtain said **Temporary** Certificate of Occupancy, the seller is entitled to an additional period **not to exceed six (6) months from the original closing date stated in this contract,** to get said **Temporary** Certificate of Occupancy, PURCHASER hereby agrees to close within thirty (30) days from the date written notice sent to PURCHASER's attorney that such **Temporary** Certificate of Occupancy has been issued.  SELLER'S rights to this additional period of time shall not grant PURCHASER any additional period or periods of time to close. However, SELLER shall not be obligated to commence any proceedings, legal or otherwise, or applications of any kind whatsoever to comply with this paragraph.  If SELLER still  cannot close title in compliance with this contract by **the end of the aforesaid six (6) months, Purchaser** may cancel this contract and all deposits paid  hereunder plus the net cost of title examination (not insurance) **not to exceed $350.00** shall be returned to PURCHASER with no further liability to the other party. *In the event that  closing  does not happen on or before 3 0 months from the date of contract due to no fault of Purchaser, Seller shall pay 6 % interest +*

(b) If at the time of closing, the SELLER is not able to deliver the Final Certificate of *Purchaser to.* Occupancy, then the SELLER shall at SELLER's expense to obtain same in a diligent manner *the deposit* **and the SELLER agrees to deposit the sum of $10,000.00 with the SELLER's attorney to** *starting to* **be held in escrow until the issuance of said Final Certificate of Occupancy.** *3 0 months from contract date*

19.     PURCHASER AGREES that SELLER or its agents, employees, etc., may enter upon the premises after the closing of title in order to complete any outside work on the adjoining premises which may be required to be done, provided such entry will not cause any damages to the subject property.  This paragraph shall survive delivery of the deed.

20.     IT IS UNDERSTOOD and agreed that SELLER will accept no liability whatsoever for any property belonging to PURCHASER, his agents, employees, family, or belonging to any party other than SELLER which is placed on the premises prior to the closing of title.  No act of SELLER, whatever its nature, shall constitute a waiver of this paragraph.

21.     IT IS UNDERSTOOD and agreed that PURCHASER may not enter upon the premises herein being sold unless they have specific written permission from SELLER and are

accompanied by SELLER or his agent. In any event, SELLER assumes no liability whatsoever for any injury to PURCHASER, his agents, employees, family or anyone accompanying them on the premises. PURCHASER acknowledges that a building site is inherently dangerous place, therefore, no acts of SELLER, whatever its nature, shall constitute a waiver of this paragraph.

22.    THE RISK OF LOSS or damage to said premises by fire or any peril until the delivery of the deed is assumed by SELLER, PROVIDED THAT PURCHASER HAS NOT TAKEN POSSESSION OF THE PREMISES.

23.    IT IS UNDERSTOOD and agreed that the construction of the premises herein described either about to be or has already been started. In view of present economic conditions, the programs or preparedness, current and/or future wage and price controls, and the consequent uncertainty in the obtaining of labor and/or materials for residential construction in quantities and at prices presently contemplated, the parties hereto do hereby agree as follows: That SELLER may cancel this contract with notice in writing addressed to PURCHASER's attorney at the address hereinabove set forth, in the event of the occurrence of any of the following:

(1)    That any Governmental bureau, department, or subdivision thereof shall    impose restrictions on the sale, manufacture, distribution and/or use of materials    necessary in the construction of residential housing and such restrictions shall prevent SELLER from obtaining such materials and/or labor from its regular suppliers or from using same in the connection and/or completion of the dwelling; or

(2)    That SELLER is unable to obtain materials and/or labor from its usual sources due to strikes, lockouts, war insurrection, military operation and/or requirements, national emergencies, etc., or

(3)    Any occurrence, delay, accident or act of God which limits the SELLER'S ability to promptly perform under the conditions of this contract; or

(4)    That the installation of utilities is delayed, restricted or curtailed.

24.    IT IS UNDERSTOOD and agreed that should zoning and/or building restrictions and regulations, imposed by any Governmental body having jurisdiction over the construction of residential housing and appurtenances, either presently in effect or as enacted or promulgated in the future, create or imposed requirements upon SELLER which are not presently contemplated, then in that event SELLER may cancel this contract with a notice in writing addressed to PURCHASER's attorney at the address hereinabove set forth.

25.    IT IS UNDERSTOOD and agreed that PURCHASER shall in no event take possession of the premises prior to the delivery of the deed and full compliance with the conditions of this contract. Should PURCHASER violate this condition, it shall constitute a breach of this contract. In that event, PURCHASER consents that SELLER shall have the right to dispossess him from the premises as a squatter and intruder by summary proceedings. Such proceedings shall not constitute a waiver by SELLER of any other rights or remedies which SELLER may have under the conditions of this contract.

26.     UPON PURCHASER'S failure to take title as herein provided, or in the event of an unauthorized possession in violation of the conditions hereof, or in the event of PURCHASER'S violation of any of the conditions of this contract, PURCHASER shall be deemed in default hereunder.  If PURCHASER is in default of the conditions of this contract, SELLER, and PURCHASER hereby agree that the measure of damage shall be ten (10%) percent of the purchase price, regardless of any subsequent sale or disposition of the premises, and SELLER SHALL retain ten (10%) percent of the purchase price as part of such liquidated damages inasmuch as actual damages are difficult to ascertain and ten (10%) percent of the purchase price is a reasonable estimate of SELLER'S damages.  In the event PURCHASER brings a judicial proceeding to obtain the return of the Deposits, said Deposits shall not be a lien upon the premises so long as the Deposits are either held in escrow by SELLER'S attorney or deposited with the Court wherein the action is pending.  In the event either party in any forum institutes any unsuccessful judicial proceeding in connection with this contract, the unsuccessful party shall be liable for the costs, disbursements and reasonable attorney's fees incurred by the prevailing party as a result of such unsuccessful judicial proceeding.   In addition, PURCHASER shall be liable for any consequential damages caused to SELLER in the event of his failure to abide by this condition of this contract, other than failure to close as required by the conditions of this contract.

27.     THE DEED SHALL be a Bargain and Sale Deed with Covenants Against Grantor's Acts, shall be in proper statutory short from for recording, shall contain such a description of the premises as shall be accepted and/or approved by the bank or title company insuring said lender and shall be duly executed and acknowledged by SELLER or grantor at SELLER'S expense, so as to convey to PURCHASER the fee simple of the premises, free of all encumbrances except as herein stated.  The deed shall contain the covenant required by Subdivision 5 of Section 13 of the Lien Law.

28.     PURCHASER SHALL within **ten (10) business** days from **the date Purchaser's attorney receives a written notice from Seller's attorney that the construction signoffs have been obtained**, order a title search from any reputable New York State licensed title insurance company.  SELLER shall give and PURCHASER shall accept such title as the title insurance company insuring the fee and mortgage hereinabove mentioned shall approve and insure, subject to the following which may be given and recorded at any time prior to subsequent to the delivery of the deed an such deed shall be deemed subject thereto:

        (1)     Zoning and building restrictions and regulations of the jurisdiction wherein the building is to be located and amendments and additions thereto in effect at the date of the closing of title, provided same do not prohibit the erection and maintenance of the structure referred to herein; and

        (2)     Any state of facts as accurate survey or physical inspection may show, provided same does not render title unmarketable in accordance with the conditions hereof; and

        (3)     Encroachments or stoops, areaways, sidewalks, party walls, steps trim, fences, hedges, curbs and/or retaining walls and cornices; and

(4)     Sewer, water, gas, drainage, electric, and telephone easements, if any, and/or any other utility easements; and

(5)     Covenants, easements, agreements, declarations, restrictions, reservations, driveway and party wall agreements affecting said premises provided same do not prohibit the erection and maintenance of the structure referred to herein; and

(6)     Approval, and the conditions thereof, by the building department any other governmental boards, departments or agencies as to the building, plot grade, retaining or curb walls, and street; and

(7)     If the premise to be conveyed herein is so constructed as to require a common walk or driveway for access to any part thereof, or a surface drainage easement, then this property shall be conveyed together with the right to use such walk or driveway or easement and subject to the use by others of the same; and

(8)     Protective covenants which may be imposed by SELLER in the deed conveying the premises herein described; and

(9)     Approval, and the conditions thereof, by the building department and any  other governmental boards, departments or agencies as to the building, plot layout, plot grade, retaining or curb walls, and street; and

(10)    Proposed or adopted street openings, and/or street widening; and/or existing or proposed adopted grades; and/or grade waivers, if any, of streets abutting and/or crossing over the above described premises providing same do not or will not encroach upon the existing or proposed structure to be sold herein; and

(11)    City Planning Commission, Board of Estimate and Zoning Lot Declarations and/or Agreements.

29.     THE PREMISE SHALL be conveyed together with all right, title and interest of SELLER, if any, of, in and to the land lying in the bed of the street, road or avenue in front of and adjoining the said premises, to the center line thereof, provided such street, road or avenue in front of and adjoining the above described premises, is, at the time of closing title, dedicated to, and under maintenance by  the town, city, village or other principality in which the premises are situated, and if, at the time of closing of title, such street, road or avenue is not dedicated and maintained as aforesaid, then SELLER shall grant to PURCHASER a good and sufficient easement of ingress and egress to and from the nearest public highway.  SELLER'S failure to fully complete the roadway, sidewalks and curbs shall not be an objection to taking title, as long as hard safe access to the premise is provided.

30.     IN THE EVENT the title search discloses objections to the transfer of title, PURCHASER'S attorney shall notify SELLER'S attorney in writing at least ten (10) calendar days prior to the scheduled closing.  SELLER shall be entitled to a reasonable postponement for

the purpose of removing said objections, however, SELLER shall not be required to remove said objections, but may instead return the Deposits plus the net cost of the title search to PURCHASER and this contract shall be null and void, and neither party shall have any rights against the other. If the objections do not make entire premises unmarketable, PURCHASER, at his option, may take such title as SELLER may convey without any reduction or abatement in the selling price.

31.    IF FOR ANY REASON whatsoever other than SELLER's willful default, SELLER shall be unable to deliver title to the premises herein described in accordance with conditions hereof, it is agreed that SELLER'S liability shall be limited to the return of PURCHASER'S payment hereunder together with the net bulk rate cost of title examination without title insurance as actually charged to PURCHASER, by the title company who is engaged in making a search of the premises for the bank, and upon the return of said sum, this contract shall be and become null and void, and neither SELLER nor PURCHASER shall have any further rights against the other, SELLER shall not be required to incur any expense or start any lawsuit or other proceeding to clear title.

32.    SELLER MAY PAY and discharge any liens and encumbrances not provided for in this contract out of the moneys to be paid by PURCHASER at the closing. The existence of unpaid taxes or liens or encumbrances of any kind at the time of closing shall not constitute any objection to title provided that the title company insuring the mortgage hereinabove set forth shall be willing to insure against collection of same from the premises.

33.    PURCHASER HAS examined the Plot agreed to be sold herein, and is fully and completely familiar with the physical condition thereof. PURCHASER agrees that SELLER has not made and does not make any representations as to the physical condition, the manner of method of construction, the quantity or quality of the materials to be used, the items of personality or fixtures which are included in the sale, present or prospective rents or taxes, expenses of operating or maintaining the premises, except as herein specifically set forth. SELLER shall not be bound by any stipulation, representation agreement or promise, oral or otherwise, not set forth herein. PURCHASER acknowledges that no representations have been made by SELLER or his agents in order to induce PURCHASER to enter into this contract, other than as expressly stated herein. PURCHASER hereby expressly acknowledges that no such representations have been made, the premises shall be delivered vacant and broom clean. It is further understood and agreed that all understandings and agreement heretofore had between the parties are merged in this contract, which alone fully and completely expresses their agreement, and that the same is entered into after full investigation, neither party relying upon any statement or representation not embodied in this contract, made by the other.

34.    THE DELIVERY and acceptance of the deed conveyance at the time of the closing of title hereunder, without specific written agreement which by its conditions shall expressly survive such closing of title, shall be deemed to constitute full compliance, performance and discharge by SELLER of each and every agreement and obligation on the part of SELLER to be performed pursuant to the conditions of this contract. None of the conditions hereof except those specifically made to survive such closing shall survive same. PURCHASER and SELLER hereby expressly waive trial by jury in any action, proceeding or counterclaim arising out of or

from this agreement or arising out of or from the guarantee enumerated in this contract is hereby waived by PURCHASER, and PURCHASER agrees that he shall be limited to an action at law (no specific performance) in event SELLER'S breach, and that the right to file a Lis Pendens in any action is hereby waived irrevocably.  This paragraph shall survive delivery of the deed or other termination of this contract.

35.   UNDER NO CIRCUMSTANCE shall SELLER be obligated to bring any proceeding for a variance, change of zone or special permit, but instead may return the deposit and thereafter neither party shall have any further rights against the other and it shall be as if no contract had been entered into between SELLER and PURCHASER.

36.   IT IS EXPRESSLY understood and agreed that PURCHASER will in no event assign this contract or any of his rights hereunder without written consent of SELLER, to be given or withheld in SELLER'S SOLE discretion and any such unauthorized assignment or recording shall constitute a default hereunder.  SELLER shall have the right to assign this contract to any person or entity that assumes the obligation to construct and complete the dwelling in accordance with the conditions of this contract.

37.   IN THE EVENT PURCHASER is unable to close within thirty (30) days from the "on or about" date (provided SELLER has a **Temporary** Certificate of Occupancy as of that date) set forth in this contract of sale, SELLER at his sole option, may extend the time period to close provided PURCHASER pays SELLER, at closing , any and all real estate taxes, and per diem interest equal to sixteen (16%) percent of the purchase price divided by three hundred and sixty (360) days, from the thirtieth (30th) day beyond the "on or about" date until midnight of the day before closing. *Purchaser shall have the right to record this contract after Seller receives the contract deposit of $450,000.*

38.   AT CLOSING, the balance of funds due SELLER, including the mortgage proceeds shall be in good certified funds or official bank check drawn upon a New York Bank (Attorney Escrow Account checks are not to be construed as bank or certified funds), payable directly to the order of the SELLER or whomever or whatever SELLER designates.  Three (3) business days prior to closing, PURCHASER shall request to whom the checks are to be paid and the amount thereof. PURCHASER may pay up to five hundred and 00/100 ($500.00) dollars in personal check toward adjustments at closing, and up to one thousand and 00/100 ($1,000.00) dollars in cash.  If an uncertified check given at closing is dishonored, for any reason, by the bank upon which is drawn, then SELLER shall be entitled to any costs, disbursements and expenses, including reasonable attorneys' fees, incurred in connection with the collection of such sums.  All adjustments and apportionment shall be made as of 11:59 p.m. of the day before closing or possession, whichever is earlier, and based upon a three hundred sixty (360) day year comprised of twelve (12) thirty (30) day months regardless of the number of days in each month.

39.   ANY NOTICE required to given pursuant to the conditions of this contract shall be in writing an sent to the attorneys for the respective parties at their offices by certified or registered mail or facsimile, and such attorneys are hereby authorized and empowered to act on behalf of the parties with respect to adjournments and extensions of the time limitations set forth in this contract.

40.    THE FAILURE OF SELLER to insist upon strict performance of any rights or remedies which he may have, may at his option, declare this contract null and void, and thereupon SELLER shall be relieved and released from any and all obligations hereunder.

41.    IN THE EVENT the check given for the Deposits upon execution of this contract is dishonored, for any reason, by the bank upon which it is drawn then SELLER, in addition to any other rights and remedies which he may have may at his option, declare this contract null and void, and thereupon SELLER shall be relieved and released from any and all obligations hereunder.

42.    ANY MODIFICATIONS or termination of this contract shall be binding upon the parties, if and only if, in writing and executed by the parties hereto.  This contract shall be binding upon the parties hereto, their respective heirs, executors, administrations and/or assigns, if applicable.  This contract is being delivered and is intended to be performed in the State of New York, and shall be governed by interpreted, enforced and construed in accordance with the laws of the State of New York and in the Courts of the State of New York.  Any and all actions or proceedings relating to or arising from directly or indirectly, to this contract shall be litigated only in the Courts of the State of New York located within the same county as the subject premises and shall be commenced within **ninety (90) calendar** days from the date of closing or termination of this contract, whichever occurs first.  In the event either party institutes any unsuccessful judicial proceeding in connection with this contract following the closing, the unsuccessful party shall be liable for the costs, disbursements and reasonable attorney's fee incurred by the prevailing party as a result of such unsuccessful judicial proceeding.

43.    THE PARTIES agrees that any arithmetical error made in the computation of adjustments at closing but discovered after closing, shall be corrected between the parties subject to such error being documented.  This provision shall survive closing.

44.    The SELLER reserves the right to include this transaction as part of a tax deferred exchange under Section 1031 of the Internal Revenue Code for the benefit of SELLER, at no cost, liability or expense to PURCHASER.  SELLER expressly reserves the right to assign, on or before the closing date, this Agreement to a "Qualified Intermediary" as defined in and provided for in the Internal Revenue Code Regulations.  PURCHASER agrees to execute any and all documents as are reasonably necessary in connection with such exchange.

45.    The SELLER will apply for **421-a partial** tax abatement for the subject premises **for at least 15 year program.** In the event preliminary tax abatement certificate is not provided at closing, seller's attorney shall hold ~~$15,000~~ in escrow to ensure the delivery of the same.

46.    LIMITED WARRANTY.  EXCEPT AS PROVIDED IN THE LIMITED WARRANTY CONTAINED IN THIS AGREEMENT, SELLER HEREIN MAKES NO HOUSING MERCHANT IMPLIED WARRANTY OR ANY OTHER WARRANTIES EXPERESS OR IMPLIED.  IN CONNECTION WITH THIS AGREEMENT OR HOME COVERED HEREBY AND ALL SUCH WARRANTIES ARE EXCLUDED.  THE TERMS OF THE LIMITED WARRANTY ARE HEREBY INCORPORATED INTO THIS AGREEMENT AND THERE ARE NO WARRANTIES WHICH EXTEND BEYOND THE FACE THEREOF. PURCHASER UNDERSTANDS AND ACCEPTS THIS LIMITED WARRANTY IN LIEU OF

ANY OTHER EXPRESS OR IMPLIED WARRANTIES IN CONNECTION WITH THIS TRANSACTION. THE WARRANTY WILL BE FULLY EFFECTIVE WITHOUT THE EXECUTION OF ANY OTHER DOCUMENT BY EITHER PURCHASER OR SELLER ON THE DATE THAT PURCHASER OR ITS FAMILY SHALL FIRST OCCUPY THIE HOME WHICH IS THE SUBJECT OF THIS AGREEMENT AS A RESIDENTIAL HOME OR THE DATE THAT THE DEED TO SUCH HOME SHALL BE DELIVERED TO PURCHASER, WHICHEVER OCCURS FIRST.

The SELLER guarantees the following:

1. Plumbing, Heating and Electrical systems against defective materials and/or installation;

2. Heating to be of sufficient capacity to furnish seventy (70) degrees Fahrenheit inside when the outside temperature is zero (0) degree Fahrenheit.

3. Basement against seepage through foundation walls due to defective materials and/or faulty construction thereof.

4. Roof against leakage due to defective materials and/or installation; and

5. Exterior wall against seepage due to defective materials and/or faulty construction thereof.

ALL OF THE ABOVE GURANTEES are to be for one (1) year from the time of closing of the title. The guarantees stated above do not include the acts of God or conditions beyond the control of the SELLER/Builder. Further, the above-mentioned guarantees shall be void upon any work or alteration to the subject premises performed by PURCHASER, his assigns, successor, employees, agents or any other persons on behalf of PURCHASER after closing. All guarantees are limited solely to the repair or replacement of items or items shown to be defective.


SELLER                                          PURCHASER
41-23 Haight Realty Inc.


By: _____            _____

K-41-15 Haight St, Flushing, NY-10-28-10    _____