FILED: QUEENS COUNTY CLERK 03/18/2021 01:11 PM        INDEX NO. 703462/2021
NYSCEF DOC. NO. 9                                     RECEIVED NYSCEF: 03/18/2021

Case 1:20-cv-06369-FB-TAM  Document 86-5  Filed 12/10/23  Page 1 of 74 PageID #: 1583

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF QUEENS**

**AFFIDAVIT OF SERVICE**



*2817359*

Index no :703462/2021

| Plaintiff(s): | U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR VELOCITY COMMERCIAL CAPITAL LOAN TRUST 2016-1, |
|---|---|
| Defendant(s): | 82-25 QUEENS MANSION LLC, ET AL |

STATE OF NEW YORK
COUNTY OF SUFFOLK    ss.:

**Joseph Leggio**, the undersigned, being duly sworn, deposes and says that I was at the time of service over the age of eighteen and not a party to this action. I reside in the STATE OF NEW YORK.

On **03/12/2021** at **2:10 PM**, I served the within **SUMMONS AND COMPLAINT AND NOTICE OF PENDENCY AND E-FILE NOTICE; NOTICE TO DEFENDANT, IN BOTH ENGLISH AND SPANISH VERSIONS, PURSUANT TO AO-131-20 Bearing Index Number 703462/2021 and date of filing of 02/12/2021** on **WING FUNG CHAU** at **21436 32ND RD, BAYSIDE, NY 11361** in the manner indicated below:

SUITABLE AGE: By delivering a true copy of said documents to **MRS. CHAU, FIRST NAME REFUSED, FEMALE RELATIVE**, a person of suitable age and discretion. Said premises is **defendant's** place of residence within the state.

On _2-16-21_, deponent enclosed a copy of above mentioned documents to **WING FUNG CHAU** at said **defendant's** Place of Residence, at 21436 32ND RD,BAYSIDE, NY 11361 in a 1st Class postpaid properly addressed envelope not indicating that the mailing was from an attorney or concerned legal action and marked "Personal and Confidential" in an official depository under the exclusive care and custody of the United States Post Office.

Comments: **THREE STORY BUILDING**

A description of the **defendant**, or other person served on behalf of the **defendant** is as follows:

| Sex | Color of skin/race | Color of hair | Age aprx | Height aprx | Weight aprx |
|---|---|---|---|---|---|
| Female | Tan | Black | 48 | 5ft4in - 5ft7in | 125-149 lbs |
| Other Features: | | | | | |

Your deponent asked the above mentioned recipient whether the **defendant** was active in the military service and received a negative reply. Upon information and belief I have; being based on the conversations and observations above narrated, **defendant** is not active in the military service.

Sworn to and subscribed before me on _3/17/21_

Notary Public,

RITA DALEY
Notary Public, State of New York
No.01DA6231235
Qualified in Suffolk County
Commission Expires Nov. 22, 2022

X _____
Joseph Leggio
License#: 1273575
Alstate Process Service Inc.
60 Burt Drive
Deer Park, NY 11729
631/667-1800

MCCALLA RAYMER LEIBERT PIERCE, LLC
485 ROUTE 1 SOUTH
BUILDING F, SUITE 300
ISELIN, NJ 08830
732-662-2040

Atty File#: 9573-0003 BP

1 of 1

Case 1:20-cv-06369-FB-TAM  Document 86-5  Filed 12/10/23  Page 2 of 74 PageID #: 1584

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

| | |
|---|---|
| U.S. Bank National Association, as Trustee for Velocity Commercial Capital Loan Trust 2016-1,<br><br>Plaintiff,<br><br>vs.<br><br>82-25 Queens Mansion LLC; Wing Fung Chau; Simply Milan, Inc.; New York State Department of Taxation and Finance; New York City Department of Finance; John Doe #1 through #6, and Jane Doe #1 through #6, the last twelve names being fictitious, it being the intention of Plaintiff to designate any and all occupants, tenants, persons or corporations, if any, having or claiming an interest in or lien upon the premises being foreclosed herein,<br><br>Defendants. | **SUMMONS**<br><br>INDEX NO.:<br><br>MORTGAGED PREMISES:<br><br>82-25 Queens Boulevard, Unit 1B Elmhurst, New York 11373<br><br>Block: 1542  Lot: 1102 |

THE ABOVE NAMED DEFENDANTS:

YOU ARE HEREBY SUMMONED to answer the Complaint in the above captioned action and to serve a copy of your Answer on the Plaintiff's attorney within twenty (20) days after the service of this Summons, exclusive of the day of service, or within thirty (30) days after completion of service where service is made in any other manner than by personal delivery within the State. The United States of America, if designated as a Defendant in this action, may answer or appear within sixty (60) days of service hereof. In case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the Complaint.

Queens County is designated as the place of trial. The basis of venue is the location of the mortgaged premises foreclosed herein.

Date: February 12, 2021                    By:    _____

Richard P. Haber, Esq.
McCalla Raymer Leibert Pierce, LLC
420 Lexington Avenue, Suite 840
New York, New York 10170
Phone: 347-286-7409
Fax: 347-286-7414
Attorneys for Plaintiff,
U.S. Bank National Association, as Trustee
for Velocity Commercial Capital Loan Trust 2016-1

9573-0003

Case 1:20-cv-06369-FB-TAM  Document 86-5  Filed 12/10/23  Page 3 of 74 PageID #: 1585

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

| | |
|---|---|
| U.S. Bank National Association, as Trustee for Velocity Commercial Capital Loan Trust 2016-1, | **COMPLAINT FOR COMMERCIAL MORTGAGE FORECLOSURE** |
| Plaintiff, | INDEX NO.: |
| vs. | MORTGAGED PREMISES: |
| 82-25 Queens Mansion LLC; Wing Fung Chau; Simply Milan, Inc.; New York State Department of Taxation and Finance; New York City Department of Finance; John Doe #1 through #6, and Jane Doe #1 through #6, the last twelve names being fictitious, it being the intention of Plaintiff to designate any and all occupants, tenants, persons or corporations, if any, having or claiming an interest in or lien upon the premises being foreclosed herein, | 82-25 Queens Boulevard, Unit 1B Elmhurst, New York 11373<br><br>Block: 1542 Lot: 1102 |
| Defendants. | |

Plaintiff, U.S. Bank National Association, as Trustee for Velocity Commercial Capital Loan Trust 2016-1 ("Plaintiff"), by its Counsel, McCalla Raymer Leibert Pierce, LLC, and for its Complaint against the above named Defendants, alleges as follows:

1. Plaintiff, a national bank organized under the laws of the United States of America, is the owner and holder of the note and mortgage to be foreclosed in this action, or has been delegated the authority to institute a mortgage foreclosure action by the owner and holder of the subject note and mortgage.

2. On or about January 11, 2016, Defendant, 82-25 Queens Mansion LLC, a New York limited liability company, executed and delivered to Velocity Commercial Capital, LLC a certain Semi-Annual Adjustable Term Note (the "Note") whereby it bound itself in the amount of $450,000.00, together with accrued interest on the unpaid principal balance and such other amounts until paid, pursuant to the terms of the Note. A copy of the Note is attached hereto as Exhibit "A".

3. To secure payment of the Note, Defendant, 82-25 Queens Mansion LLC, a New York limited

9573-0003

Case 1:20-cv-06369-FB-TAM   Document 86-5   Filed 12/10/23   Page 4 of 74 PageID #: 1586

liability company, granted a Commercial Mortgage, Security Agreement and Assignment of Leases and Rents (the "Mortgage") against the property it owned located at 82-25 Queens Boulevard, Unit 1B, Elmhurst, New York 11373 (the "Mortgaged Premises") to Velocity Commercial Capital, LLC, a California limited liability company, in the amount of $450,000.00 on January 11, 2016. The Mortgage was recorded in the Queens County Clerk's Office on January 22, 2016 as CRFN 2016000021705 at which time the mortgage recording tax was duly paid. A copy of the Commercial Mortgage, Security Agreement and Assignment of Leases and Rents is attached hereto as part of Exhibit "B".

4. The Commercial Mortgage, Security Agreement and Assignment of Leases and Rents was assigned from Velocity Commercial Capital, LLC, a California limited liability company, to U.S. Bank National Association, as Trustee for Velocity Commercial Capital Loan Trust 2016-1 by Assignment of Commercial Mortgage, Security Agreement and Assignment of Leases and Rents dated September 7, 2016 and recorded in the Queens County Clerk's Office on September 23, 2016 as CRFN 2016000332392 (the "Assignment of Mortgage"). A copy of the Assignment of Mortgage is attached hereto as part of Exhibit "B".

5. On January 11, 2016, as further security for the indebtedness of 82-25 Queens Mansion LLC, a New York limited liability company, Defendant, Wing Fung Chau (hereinafter "Guarantor") executed an Unlimited Guaranty in favor of Velocity Commercial Capital, LLC, a California limited liability company (the "Guaranty"). The Guaranty provides that in the event 82-25 Queens Mansion LLC, a New York limited liability company, defaults on the Note and Mortgage, the Guarantor will become personally responsible for all sums due and owing. A copy of the Guaranty is attached hereto as part of Exhibit "B".

6. As further security for the indebtedness of 82-25 Queens Mansion LLC, a New York limited liability company, a UCC-1 Financing Statement in favor of Velocity Commercial Capital, LLC, was filed with the New York State Department of State, Uniform Commercial Code Division, on February

9573-0003

Case 1:20-cv-06369-FB-TAM  Document 86-5  Filed 12/10/23  Page 5 of 74 PageID #: 1587

9, 2016 as Filing Number 201602090063528 (the "UCC Financing Statement"). A copy the UCC Financing Statement is attached hereto as part of Exhibit "B".

7.  On June 8, 2016, a UCC-3 Financing Statement Amendment was filed with the New York State Department of State, Uniform Commercial Code Division as Filing Number 201606088227746, assigning the UCC Financing Statement from Velocity Commercial Capital, LLC to U.S. Bank National Association, as Trustee for Velocity Commercial Capital Loan Trust 2016-1 (the "UCC Amendment"). A copy of the UCC Amendment is attached hereto as part of Exhibit "B".

8.  On February 8, 2021, a UCC-3 Financing Statement Amendment was filed with the New York State Department of State, Uniform Commercial Code Division as Filing Number 202102088060694, continuing the effectiveness of the Financing Statement (the "UCC Continuation"). A copy of the UCC Continuation is attached hereto as part of Exhibit "B".

9.  On August 10, 2015, 82-25 Queens Mansion LLC (as owner of the Mortgaged Premises) entered into a Standard Form of Store Lease in favor of Simply Milan, Inc., through which the Mortgaged Premises was leased to Simply Milan, Inc. for a period of ten (10) years (the "Lease"). The Lease is unrecorded and any rights of Simply Milan, Inc. to possession or occupancy of the Mortgaged Premises are inferior to Plaintiff's mortgage interest and subject to extinguishment through this action. A copy of the Lease is attached hereto as Exhibit "C".

10. The tax map designation of the Mortgaged Premises is known as or part of Block: 1542 Lot: 1102. The full legal description of the Mortgaged Premises is attached hereto as Exhibit "D".

9573-0003

Case 1:20-cv-06369-FB-TAM   Document 86-5   Filed 12/10/23   Page 6 of 74 PageID #: 1588

11. Defendant, 82-25 Queens Mansion LLC, a New York limited liability company, has failed to comply with the terms of the Note and/or Mortgage by failing to pay the monthly payment amount due on September 1, 2020 and each subsequent payment that has come due thereafter, together with any other amounts for taxes, assessments, water rates, escrow, insurance premiums and/or any other charges that have come due and are payable under the terms of the Note and Mortgage since the date of default set forth above.

12. The requisite contractual notice, if applicable, was sent by Plaintiff's servicer in accordance with the terms of the Mortgage notifying the borrowers of the default. Despite the written demands, the default has not been cured. As a result, Plaintiff hereby elects and demands that the entire principal sum due on the Note, along with all unpaid interest, advances, fees and costs are accelerated and are now due and payable.

13. As of the date of default, the principal balance due and owing pursuant to the terms of the Note and/or Mortgage is $432,245.42, together with accrued interest, taxes, assessments, water rates, maintenance, late fees, insurance premiums, escrow advances, reasonable attorneys' fees, and any other charges that are validly due and owing pursuant to the terms of the Note and/or Mortgage, to be calculated and established at the time Plaintiff applies for Judgment of Foreclosure or Sale.

14. In order to protect its security, Plaintiff (directly and/or through its servicer or agent) has made advances, or may be obligated during the pendency of this action to make advances, for the payment of taxes, insurance premiums and other necessary charges affecting the Mortgaged Premises. Any such sums advanced under the terms of the Note, together with interest (to the extent allowed), are to be added to the sum otherwise due on and be deemed secured by the Mortgage.

15. All Defendants herein may have, or claim to have, some interest in, or lien upon the Mortgaged Premises or some part thereof, which interest or lien, if any, has accrued subsequent and/or subject to the lien of Plaintiff's Mortgage.

9573-0003

Case 1:20-cv-06369-FB-TAM   Document 86-5   Filed 12/10/23   Page 7 of 74 PageID #: 1589

16. The Defendants identified more fully in Exhibit "E" are made parties solely for the reasons set forth in said Exhibit.

17. Defendants, John Doe #1-6 and Jane Doe #1-6, are unknown occupants, if any exist, of the Mortgaged Premises being foreclosed or may be any persons or entities of any kind otherwise claiming a lien or interest in or against the Mortgaged Premises.

18. The mortgage is for a commercial loan, and therefore, neither RPAPL §1304 or RPAPL §1306 is applicable to the instant action and Plaintiff was not required to comply with the restrictions imposed by said statutes.

19. CPLR §3012-b is not applicable because the loan, which is the subject of this action, is a commercial loan, not a home loan.

20. Where applicable, Plaintiff has complied with the Banking Law §§595.

21. In the event this action proceeds to a judgment in foreclosure and sale of the Mortgaged Premises, Plaintiff requests that the Mortgaged Premises be sold subject to any statement of facts an inspection of the Mortgaged Premises would disclose or an accurate survey would show; covenants, restrictions, easements and public utility agreements of record, if any; building and zoning ordinances and possible violations of same; any rights of tenants or persons in possession of the Mortgaged Premises; any equity/right of redemption of the United States of America within 120 days of the sale; and, any prior mortgages and liens.

22. If the Mortgage secures more than one property, Plaintiff requests the judgment in foreclosure provide for the sale of the properties in a particular order to the extent necessary to satisfy the amounts due as determined by this Court.

23. Pursuant to the terms of the Mortgage, Plaintiff is entitled to recover attorneys' fees and costs incurred in connection with this action.

9573-0003

24. All Exhibits attached hereto are expressly incorporated and made part of the Complaint with the same force and effect as if they were set forth herein.

25. There are no other pending proceedings to enforce the referenced Note and Mortgage. To the extent there are any prior proceedings, it is the intention of the Plaintiff that any such action be discontinued and the instant action be the only pending action.

WHEREFORE, Plaintiff, U.S. Bank National Association, as Trustee for Velocity Commercial Capital Loan Trust 2016-1, demands judgment:

1. Adjudging and decreeing that any advances Plaintiff or its servicer or agent made or will make pursuant to the terms of the Note and/or Mortgage for the payment of taxes, insurance premiums and other necessary charges affecting the Mortgaged Premises, together with interest (to the extent allowed), are valid liens against the Mortgaged Premises.

2. Fixing the amounts due the Plaintiff for all amounts due under the Note and/or Mortgage, including, but not limited to principal, interest, costs, late charges, expenses of sale, allowances and disbursements, reasonable attorney's fees (to the extent allowed under the Note and/or Mortgage) and all other monies advanced and paid which are secured by the Mortgage;

3. That the Defendants and all parties claiming by, through or under them and every other person or entity whose right, title, conveyance or encumbrance is subsequent to or subsequently recorded, or whose lien is being challenged by being a Defendant in this action, be barred and foreclosed of and from all right, claim, lien, interest or equity of redemption in and to said Mortgaged Premises;

4. That said Mortgaged Premises, or such part thereof as may be necessary to raise the amounts due herein, be decreed to be sold according to law subject to any statement of facts an inspection of the Mortgaged Premises would disclose or an accurate survey of the Mortgaged Premises would show; as further discussed in the Complaint above;

9573-0003

5.   That out of the monies arising from the sale of the Mortgaged Premises, the Plaintiff may be paid the amounts due on the Note and Mortgage, plus all other amounts provided for and allowed under the judgment, including attorneys' fees and costs to be incurred in connection with this action, together with any sums expended as aforesaid, with interest as allowed by law upon any advances from the dates of the respective advance payments, to the extent allowed;

6.   That 82-25 Queens Mansion LLC, a New York limited liability company and Wing Fung Chau may be adjudged to pay any deficiency that may remain after applying all of said monies so applicable thereto, unless the debt has been listed and discharged in a bankruptcy proceeding with respect to said Defendant;

7.   That either or any of the parties to this action may become a purchaser upon such sale;

8.   That this Court, if requested, forthwith appoint a receiver of rents and profits of said Mortgaged Premises with the usual powers and duties;

9.   In the event Plaintiff possesses any other liens against the Mortgaged Premises, they shall not be merged with the same/instant matter. Plaintiff specifically reserves its right to share in any surplus monies arising from the sale of the Mortgaged Premises by virtue of its position as a judgment or other lien creditor, excluding the mortgage being foreclosed herein.

10. That the Plaintiff be granted such other and further relief as may be just, equitable and proper.

Date: February 12, 2021    By: _____

Richard P. Haber, Esq.
McCalla Raymer Leibert Pierce, LLC
420 Lexington Avenue, Suite 840
New York, New York 10170
Phone: 347-286-7409
Fax: 347-286-7414
Attorneys for Plaintiff,
U.S. Bank National Association, as Trustee
for Velocity Commercial Capital Loan Trust 2016-1

9573-0003

Case 1:20-cv-06369-FB-TAM   Document 86-5   Filed 12/10/23   Page 10 of 74 PageID #: 1592

# EXHIBIT A

Case 1:20-cv-06369-FB-TAM   Document 86-5   Filed 12/10/23   Page 11 of 74 PageID #: 1593



Loan No. ████████

## SEMI-ANNUAL ADJUSTABLE TERM NOTE

**January 11, 2016**

**$450,000.00**

For value received, the undersigned **82-25 Queens Mansion LLC, a New York limited liability company** (the "Borrower"), promises to pay to the order of VELOCITY COMMERCIAL CAPITAL, LLC (together with its successors and assigns, the "Lender"), the principal amount of **Four Hundred Fifty Thousand Dollars and Zero Cents ($450,000.00)** on or before **February 1, 2046** (the "Maturity Date"), as set forth below, together with interest from the date hereof on the unpaid principal balance from time to time outstanding until paid in full. The Borrower shall pay consecutive monthly installments of principal and interest, as follows: **$3,377.54** commencing on **March 1, 2016**, and the same amount (except the last installment which shall be the unpaid balance) on the 1st day of each month thereafter. The aggregate principal balance outstanding shall initially bear interest thereon at a fixed rate equal to **Eight and Twenty-Four Hundredths Percent (8.240%)** per annum. The interest rate on the aggregate principal balance shall change on **February 1, 2019** (the "Special Change Date") to a fixed rate equal to **Four Percent (4.000%)** above the Wall Street Journal Prime Rate (as hereinafter defined) as of 30 days prior to such Special Change Date, except that in no case shall the interest rate on the Special Change Date be greater than Two Percent (2%) above the initial rate. The interest rate on the aggregate principal balance shall change again on **August 1, 2019** on the 1st day of each month every sixth month thereafter (each a "Change Date") to a fixed rate equal to **Four Percent (4.000%)** above the Wall Street Journal Prime Rate as of 30 days prior to such Change Date. On the Special Change Date and each Change Date each monthly installment due and payable until the next Change Date shall be recalculated (increased or reduced) to reflect the adjusted interest rate, the outstanding principal balance at such time and the remaining term of the **360** month amortization period commencing on the date of this Note in accordance with the Lender's calculation in the Lender's sole discretion.

The calculation of the payment amount is based on a **360** month amortization period.

Notwithstanding anything to the contrary in this Note, the interest rate on this Note is limited by a floor and a ceiling as follows: (i) the maximum interest rate (i.e. ceiling) is **14.240%** per annum and (ii) the minimum interest rate (i.e. floor) is **8.240%** per annum. In addition, on each Change Date the interest rate on this Note shall be changed (increased or reduced) by no more than **1.000%** per annum.

Wall Street Journal Prime Rate means the rate published from time to time by the Wall Street Journal as the Prime Rate on corporate loans posted by at least 70% of the 10 largest U.S. banks, or, in the event the Wall Street Journal ceases publication of the Prime Rate, the base, reference or other rate then designated by the Lender, in its sole discretion, for general commercial loan reference purposes, it being understood that such rate is a reference rate, not necessarily the lowest, established from time to time, which serves as the basis upon which effective interest rates are calculated for loans making reference thereto.

The effective interest rate applicable to the Borrower's loans evidenced hereby shall be rounded to the nearest One-Eighth Percent (0.125%).

Principal and interest shall be payable at the Lender's main office or at such other place as the Lender may designate in writing in immediately available funds in lawful money of the United States of America without set-off, deduction or counterclaim. Interest shall be calculated monthly on the basis of a 360-day year based on twelve (12) thirty (30) day months except that interest due and payable for a period of less than a full month shall be calculated by multiplying the actual number of days elapsed in such period by a daily rate based on said 360-day year.

Case 1:20-cv-06369-FB-TAM   Document 86-5   Filed 12/10/23   Page 12 of 74 PageID #: 1594

This Note may be prepaid in whole or in part upon thirty (30) days prior written notice to the Lender. In the event of any prepayment of this Note at any time through February 1, 2019 (the "Prepayment Charge Expiration Date") whether by voluntary prepayment, acceleration or otherwise, the Borrower shall, at the option of the Lender, pay a "Prepayment Premium" equal to **5%** of the principal amount so prepaid. No Prepayment Premium will be due Lender if (a) prior to the Prepayment Charge Expiration Date, a prepayment amount received plus all other prepayment amounts received in the most recent 12 months is not greater than 20% of the Principal Amount of the Note or (b) a prepayment is made in whole or in part after the Prepayment Charge Expiration Date. For all purposes including the accrual of interest, any prepayment received by Lender on any day other than the last calendar day of the month shall be deemed to have been received on the last calendar day of the month.

At the option of the Lender, this Note shall become immediately due and payable without notice or demand upon the occurrence at any time of any of the following events of default (each, an "Event of Default"): (1) default of any liability, obligation, covenant or undertaking of the Borrower, any endorser or any guarantor hereof to the Lender, hereunder or otherwise, including, without limitation, failure to pay in full and when due any installment of principal or interest or default of the Borrower, any endorser or any guarantor hereof under any other loan document delivered by the Borrower, any endorser or any guarantor, or in connection with the loan evidenced by this Note or any other agreement by the Borrower, any endorser or any guarantor with the Lender; (2) failure of the Borrower, any endorser or any guarantor hereof to maintain aggregate collateral security value satisfactory to the Lender; (3) default of any material liability, obligation or undertaking of the Borrower, any endorser or any guarantor hereof to any other party; (4) if any statement, representation or warranty heretofore, now or hereafter made by the Borrower, any endorser or any guarantor hereof in connection with the loan evidenced by this Note or in any supporting financial statement of the Borrower, any endorser or any guarantor hereof shall be determined by the Lender to have been false or misleading in any material respect when made; (5) if the Borrower, any endorser or any guarantor hereof is a corporation, trust, partnership or limited liability company, the liquidation, termination or dissolution of any such organization, or the merger or consolidation of such organization into another entity, or its ceasing to carry on actively its present business or the appointment of a receiver for its property; (6) the death of the Borrower, any endorser or any guarantor hereof and, if the Borrower, any endorser or any guarantor hereof is a partnership or limited liability company, the death of any partner or member; (7) the institution by or against the Borrower, any endorser or any guarantor hereof of any proceedings under the Bankruptcy Code 11 USC §101 *et seq.* or any other law in which the Borrower, any endorser or any guarantor hereof is alleged to be insolvent or unable to pay its debts as they mature, or the making by the Borrower, any endorser or any guarantor hereof of an assignment for the benefit of creditors or the granting by the Borrower, any endorser or any guarantor hereof of a trust mortgage for the benefit of creditors; (8) the service upon the Lender of a writ in which the Lender is named as trustee of the Borrower, any endorser or any guarantor hereof; (9) a judgment or judgments for the payment of money shall be rendered against the Borrower, any endorser or any guarantor hereof, and any such judgment shall remain unsatisfied and in effect for any period of thirty (30) consecutive days without a stay of execution; (10) any levy, lien (including mechanics lien) except as permitted under any of the other loan documents between the Lender and the Borrower, seizure, attachment, execution or similar process shall be issued or levied on any of the property of the Borrower, any endorser or any guarantor hereof; (11) the termination or revocation of any guaranty hereof; or (12) the occurrence of such a change in the condition or affairs (financial or otherwise) of the Borrower, any endorser or any guarantor hereof, or the occurrence of any other event or circumstance, such that the Lender, in its sole discretion, deems that it is insecure or that the prospects for timely or full payment or performance of any obligation of the Borrower, any endorser or any guarantor hereof to the Lender has been or may be impaired.

Any payments received by the Lender on account of this Note shall, at the Lender's option, be applied first, to any costs, expenses or charges then owed to the Lender by the Borrower; second, to accrued and unpaid interest; third, to the unpaid principal balance hereof; and the balance to escrows, if any. Notwithstanding the foregoing, any payments received after the occurrence and during the continuance of an Event of Default shall be applied in such manner as the Lender may determine. The Borrower hereby authorizes the Lender to charge any deposit account which the Borrower may maintain with the Lender for any payment required hereunder without prior notice to the Borrower.

2

If pursuant to the terms of this Note, the Borrower is at any time obligated to pay interest on the principal balance at a rate in excess of the maximum interest rate permitted by applicable law for the loan evidenced by this Note, the applicable interest rate shall be immediately reduced to such maximum rate and all previous payments in excess of the maximum rate shall be deemed to have been payments in reduction of principal and not on account of the interest due hereunder.

**The Borrower represents to the Lender that the proceeds of this Note will not be used for personal, family or household purposes or for the purpose of purchasing or carrying margin stock or margin securities within the meaning of Regulations U and X of the Board of Governors of the Federal Reserve System, 12 C.F.R. Parts 221 and 224.**

The Borrower and each endorser and guarantor hereof grant to the Lender a continuing lien on and security interest in any and all deposits or other sums at any time credited by or due from the Lender to the Borrower and/or each endorser or guarantor hereof and any cash, securities, instruments or other property of the Borrower and each endorser and guarantor hereof in the possession of the Lender, whether for safekeeping or otherwise, or in transit to or from the Lender (regardless of the reason the Lender had received the same or whether the Lender has conditionally released the same) as security for the full and punctual payment and performance of all of the liabilities and obligations of the Borrower and/or any endorser or guarantor hereof to the Lender and such deposits and other sums may be applied or set off against such liabilities and obligations of the Borrower or any endorser or guarantor hereof to the Lender at any time, whether or not such are then due, whether or not demand has been made and whether or not other collateral is then available to the Lender.

No delay or omission on the part of the Lender in exercising any right hereunder shall operate as a waiver of such right or of any other right of the Lender, nor shall any delay, omission or waiver on any one occasion be deemed a bar to or waiver of the same or any other right on any future occasion. The Borrower and every endorser or guarantor of this Note, regardless of the time, order or place of signing, waive presentment, demand, protest, notice of intent to accelerate, notice of acceleration and all other notices of every kind in connection with the delivery, acceptance, performance or enforcement of this Note and assent to any extension or postponement of the time of payment or any other indulgence, to any substitution, exchange or release of collateral, and to the addition or release of any other party or person primarily or secondarily liable and waives all recourse to suretyship and guarantor defenses generally, including any defense based on impairment of collateral. To the maximum extent permitted by law, the Borrower and each endorser and guarantor of this Note waive and terminate any homestead rights and/or exemptions respecting any premises under the provisions of any applicable homestead laws, including without limitation, Section 5206 of the Civil Practice Law and Rules of New York.

The Borrower and each endorser and guarantor of this Note shall indemnify, defend and hold the Lender and its directors, officers, employees, agents and attorneys (each an "Indemnitee") harmless against any claim brought or threatened against any Indemnitee by the Borrower, by any endorser or guarantor, or by any other person (as well as from attorneys' reasonable fees and expenses in connection therewith) on account of the Lender's relationship with the Borrower or any endorser or guarantor hereof (each of which may be defended, compromised, settled or pursued by the Lender with counsel of the Lender's selection, but at the expense of the Borrower and any endorser and/or guarantor), except for any claim arising out of the gross negligence or willful misconduct of the Lender.

The Borrower and each endorser and guarantor of this Note agree to pay, upon demand, costs of collection of all amounts under this Note including, without limitation, principal and interest, or in connection with the enforcement of, or realization on, any security for this Note, including, without limitation, to the extent permitted by applicable law, reasonable attorneys' fees and expenses. Upon the occurrence and during the continuance of an Event of Default, interest shall accrue at a rate per annum equal to the aggregate of 4.0% plus the rate provided for herein. If any payment due under this Note, or under any other agreement executed and delivered in connection with this Note, including, without limitation, any amounts required to be paid into escrow accounts in connection with any mortgage securing this Note is unpaid for 10 days or more, the Borrower shall pay, in addition to any other sums

3

Case 1:20-cv-06369-FB-TAM   Document 86-5   Filed 12/10/23   Page 14 of 74 PageID #: 1596

due under this Note (and without limiting the Lender's other remedies on account thereof), a late charge equal to 5.0% of such unpaid amount, including, without limitation, any amounts required to be paid into escrow accounts in connection with any mortgage securing this Note (which amount shall be subject to and limited so as to not be in violation of the provisions of Section 254-b of New York Real Property Law, if applicable).

This Note shall be binding upon the Borrower and each endorser and guarantor hereof and upon their respective heirs, successors, assigns and legal representatives, and shall inure to the benefit of the Lender and its successors, endorsees and assigns.

The liabilities of the Borrower and each Borrower, if more than one, and any endorser or guarantor of this Note are joint and several; provided, however, the release by the Lender of the Borrower or any one or more endorsers or guarantors shall not release any other person obligated on account of this Note. Any and all present and future debts of the Borrower to any endorser or guarantor of this Note are subordinated to the full payment and performance of all present and future debts and obligations of the Borrower to the Lender. Each reference in this Note to the Borrower and each Borrower, if more than one, and endorser or guarantor of this Note, is to such person individually and also to all such persons jointly. No person obligated on account of this Note may seek contribution from any other person also obligated, unless and until all liabilities, obligations and indebtedness to the Lender of the person from whom contribution is sought have been irrevocably satisfied in full. The release or compromise by the Lender of any collateral shall not release any person obligated on account of this Note.

The Borrower and each endorser and guarantor hereof each authorizes the Lender to complete this Note if delivered incomplete in any respect. A photographic or other reproduction of this Note may be made by the Lender, and any such reproduction shall be admissible in evidence with the same effect as the original itself in any judicial or administrative proceeding, whether or not the original is in existence.

The Borrower will from time to time execute and deliver to the Lender such documents, and take or cause to be taken, all such other further action, as the Lender may request in order to effect and confirm or vest more securely in the Lender all rights contemplated by this Note or any other loan documents related thereto (including, without limitation, to correct clerical errors) or to vest more fully in or assure to the Lender the security interest in any collateral securing this Note or to comply with applicable statute or law.

This Note shall be governed by the laws of the State of New York.

Any notices under or pursuant to this Note shall be deemed duly received and effective if delivered in hand to any officer or agent of the Borrower or Lender, or if mailed by registered or certified mail, return receipt requested, addressed to the Borrower or Lender at the address set forth in this Note or as any party may from time to time designate by written notice to the other party.

The Borrower and each endorser and guarantor of this Note each irrevocably submits to the nonexclusive jurisdiction of any Federal or state court sitting in New York, over any suit, action or proceeding arising out of or relating to this Note. Each of the Borrower and each endorser and guarantor irrevocably waives, to the fullest extent it may effectively do so under applicable law, any objection it may now or hereafter have to the laying of the venue of any such suit, action or proceeding brought in any such court and any claim that the same has been brought in an inconvenient forum. Each of the Borrower and each endorser and guarantor hereby consents to any and all process which may be served in any such suit, action or proceeding, (i) by mailing a copy thereof by registered and certified mail, postage prepaid, return receipt requested, to the Borrower's, endorser's or guarantor's address shown below or as notified to the Lender and (ii) by serving the same upon the Borrower(s), endorser(s) or guarantor(s) in any other manner otherwise permitted by law, and agrees that such service shall in every respect be deemed effective service upon the Borrower or such endorser or guarantor.

**THE BORROWER, EACH ENDORSER AND GUARANTOR AND THE LENDER EACH**

4

Case 1:20-cv-06369-FB-TAM Document 86-5 Filed 12/10/23 Page 15 of 74 PageID #: 1597

HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY, AND AFTER AN OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL, (A) WAIVES ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING IN CONNECTION WITH THIS NOTE, ANY OF THE OBLIGATIONS OF THE BORROWER, EACH ENDORSER AND GUARANTOR TO THE LENDER, AND ALL MATTERS CONTEMPLATED HEREBY AND DOCUMENTS EXECUTED IN CONNECTION HEREWITH AND (B) AGREES NOT TO SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CAN NOT BE, OR HAS NOT BEEN, WAIVED. THE BORROWER, EACH ENDORSER AND GUARANTOR AND THE LENDER EACH CERTIFIES THAT NEITHER THE LENDER NOR ANY OF ITS REPRESENTATIVES, AGENTS OR COUNSEL HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE LENDER WOULD NOT IN THE EVENT OF ANY SUCH PROCEEDING SEEK TO ENFORCE THIS WAIVER OF RIGHT TO TRIAL BY JURY.

Executed as of **January 11, 2016**.

Borrower:

82-25 Queens Mansion LLC

By: _____
    Wing Fung Chau, Operating Manager

3237 214th PL
Bayside, New York
11361

5

Allonge to $450,000.00 Promissory Note dated January 11, 2016

executed by 82-25 Queens Mansion LLC, a New York Limited Liability Company, as Borrower

in favor of Velocity Commercial Capital, LLC, a California limited liability company, as Lender

PAY TO THE ORDER OF U.S. Bank National Association, as Trustee for Velocity Commercial Capital Loan Trust 2016-1, WITHOUT RECOURSE

Dated as of April 29, 2016

**VELOCITY COMMERCIAL CAPITAL, LLC**,
**a California limited liability company**

By: _____

Name: Jeff Taylor

Title: Executive Vice President

Loan Number: ███████████

Case 1:20-cv-06369-FB-TAM   Document 86-5   Filed 12/10/23   Page 17 of 74 PageID #: 1599

# EXHIBIT B



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

2016011400476001001EF4DC

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 20 |
|---|---|

Document ID: 2016011400476001
Document Type: MORTGAGE
Document Page Count: 19

Document Date: 01-11-2016
Preparation Date: 01-14-2016

**PRESENTER:**
CAMBRIDGE ABSTRACT LIMITED
3548 EAST TREMONT AVE. 2B
BRONX, NY 10465

**RETURN TO:**
CAMBRIDGE ABSTRACT LIMITED
3548 EAST TREMONT AVE. 2B
BRONX, NY 10465

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| QUEENS | 1542 | 1102  Entire Lot | 1B | 82-25 QUEENS BOULEVARD |

Property Type: OTHER

**CROSS REFERENCE DATA**

CRFN_____ or DocumentID_____ or _____ Year____ Reel____ Page____ or File Number_____

**PARTIES**

**MORTGAGOR/BORROWER:**
8225 QUEENS MANSION LLC
86-31 WHITNEY AVE, 1ST FL
ELMHURST, NY 11377

**MORTGAGEE/LENDER:**
VELOCITY COMMERCIAL CAPITAL LLC
1015 VIRGINIA DR, STE 200
FORT WASHINGTON, PA 19034

**FEES AND TAXES**

| Mortgage : | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 450,000.00 | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 450,000.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 2,250.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 4,500.00 | $ | 0.00 |
| Spec (Additional): | $ | 1,125.00 | | |
| TASF: | $ | 0.00 | **RECORDED OR FILED IN THE OFFICE** | |
| MTA: | $ | 1,350.00 | **OF THE CITY REGISTER OF THE** | |
| NYCTA: | $ | 0.00 | **CITY OF NEW YORK** | |
| Additional MRT: | $ | 0.00 | Recorded/Filed   01-22-2016 11:40 | |
| TOTAL: | $ | 9,225.00 | City Register File No.(CRFN): | |
| Recording Fee: | $ | 132.00 | **2016000021705** | |
| Affidavit Fee: | $ | 0.00 | | |

*Annette M Hill*

*City Register Official Signature*

## COMMERCIAL MORTGAGE, SECURITY AGREEMENT AND ASSIGNMENT OF LEASES AND RENTS

This COMMERCIAL MORTGAGE, SECURITY AGREEMENT AND ASSIGNMENT OF LEASES AND RENTS (this "Mortgage") is entered into as of January 11, 2016, between 82-25 Queens Mansion LLC, a New York limited liability company, with an address of 3237 214th Pl., Bayside, New York 11361 (the "Mortgagor") and VELOCITY COMMERCIAL CAPITAL, LLC, a California Limited Liability Company, with an address of 30699 Russell Ranch Rd., Suite 295, Westlake Village, CA 91362 (the "Lender").

The real property which is the subject matter of this Mortgage consists of the following condominium unit(s): 82-25 Queens Boulevard 1B, Elmhurst, New York 11373 (the "Address(es)").

### 1.    MORTGAGE, OBLIGATIONS AND FUTURE ADVANCES

1.1    Mortgage. For valuable consideration paid and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Mortgagor hereby irrevocably and unconditionally mortgages, grants, bargains, transfers, sells, conveys, sets over and assigns to the Lender and its successors and assigns forever, all of Mortgagor's right, title and interest in and to the "Property" described below, to secure the prompt payment and performance of the Obligations (as hereinafter defined).

A principal indebtedness of up to $450,000.00 is evidenced by the Loan Documents (as hereinafter defined) and secured by this Mortgage as of the date of this Mortgage, but this Mortgage shall nevertheless secure payment and performance of all Obligations.

1.2    Security Interest in Property. As continuing security for the Obligations the Mortgagor hereby pledges, assigns and grants to the Lender, and its successors and assigns, a security interest in any of the Property (as hereinafter defined) constituting personal property or fixtures. This Mortgage is and shall be deemed to be a security agreement and financing statement pursuant to the terms of the Uniform Commercial Code of New York (the "Uniform Commercial Code") as to any and all personal property and fixtures and as to all such property the Lender shall have the rights and remedies of a secured party under the Uniform Commercial Code in addition to its rights hereunder. This Mortgage constitutes a financing statement filed as a fixture filing under Section 9-502(c) of the Uniform Commercial Code covering any Property which now is or later may become a fixture.

1.3    Collateral Assignment of Leases and Rents. The Mortgagor hereby irrevocably and unconditionally assigns to the Lender, and its successors and assigns, as collateral security for the Obligations all of the Mortgagor's rights and benefits under any and all Leases (as hereinafter defined) and any and all rents and other amounts now or hereafter owing with respect to the Leases or the use or occupancy of the Property. This collateral assignment shall be absolute and effective immediately, but the Mortgagor shall have a license, revocable by the Lender, to continue to collect rents owing under the Leases until an Event of Default (as hereinafter defined) occurs and the Lender exercises its rights and remedies to collect such rents as set forth herein. In addition the Lender shall have all of the rights against lessees of the Property set forth in Section 291-f of the Real Property Law of New York,

FILED: QUEENS COUNTY CLERK 02/12/2021 03:50 PM        INDEX NO. 703462/2021

NYSCEF DOC. NO. 1        Case 1:20-cv-06369-FB-TAM    Document 86-5    Filed 12/10/23    Page 20 of 74 PageID #: 1602        RECEIVED NYSCEF: 02/12/2021

**1.4    Conditions to Grant.**  The Lender shall have and hold the above granted Property unto and to the use and benefit of the Lender, and its successors and assigns, forever; provided, however, the conveyances, grants and assignments contained in this Mortgage are upon the express condition that, if Mortgagor shall irrevocably pay and perform the Obligations in full, including, without limitation, all principal, interest and premium thereon and other charges, if applicable, in accordance with the terms and conditions in the Loan Documents (as hereinafter defined) and this Mortgage, shall pay and perform all other Obligations as set forth in this Mortgage and shall abide by and comply with each and every covenant and condition set forth herein and in the Loan Documents, the conveyances, grants and assignments contained in this Mortgage shall be appropriately released and discharged.

**1.5    Property.**  The term "Property", as used in this Mortgage, shall mean the Unit(s), as more particularly described in Exhibit A attached hereto, together with: (i) all right, title and interest now or hereafter existing, belonging or pertaining thereto; (ii) the following categories of assets as defined in the Uniform Commercial Code: goods (including inventory, equipment and any accessions thereto), instruments (including promissory notes), documents, accounts (including health-care-insurance receivables), chattel paper (whether tangible or electronic), deposit accounts, letter-of-credit rights (whether or not the letter of credit is evidenced by a writing), commercial tort claims, securities and all other investment property, general intangibles (including payment intangibles and software), supporting obligations and any and all proceeds of any thereof, whether now owned or hereafter acquired, that are located on or used in connection with, or that arise in whole or in part out of the Mortgagor's use of or business conducted on or respecting, the Property and any substitutions, replacements, accessions and proceeds of any of the foregoing; (iii) all judgments, awards of damages and settlements hereafter made as a result or in lieu of any Taking, as hereinafter defined, (iv) all of the rights and benefits of the Mortgagor under any present or future leases and agreements relating to the Property, including, without limitation, rents, issues and profits, or the use or occupancy thereof, together with any extensions and renewals thereof, specifically excluding all duties or obligations of the Mortgagor of any kind arising thereunder (the "Leases"); and (v) all tenements, hereditaments, appurtenances, estates and rights of Mortgagor and all contracts, permits and licenses respecting the use, operation or maintenance of the Property.

**1.6    Obligations.**  The term "Obligation(s)," as used in this Mortgage, shall mean all amounts due and owing to the Lender and all obligations respecting  that certain Semi-Annual Adjustable Term Note, dated **January 11, 2016,** by 82-25 Queens Mansion LLC in favor of the Lender in the original principal amount of **$450,000.00** (the "Note"; and collectively, along with all other agreements, documents, certificates and instruments delivered in connection therewith, the "Loan Documents"), and any substitutions, modifications, extensions or amendments to any of the Loan Documents as well as, without limitation, all loans, advances, indebtedness, notes, liabilities and amounts, liquidated or unliquidated, now or hereafter owing by the Mortgagor to the Lender at any time, of each and every kind, nature and description, whether arising under this Mortgage or otherwise, and whether secured or unsecured, direct or indirect (that is, whether the same are due directly by the Mortgagor to the Lender; or are due indirectly by the Mortgagor to the Lender as endorser, guarantor or other surety, or as obligor of obligations due third persons which have been endorsed or assigned to the Lender, or otherwise), absolute or contingent, due or to become due, now existing or hereafter contracted, including, without limitation, payment of all amounts outstanding when due pursuant to the terms of any of the Loan Documents. Said term shall also include all interest and other charges chargeable to the Mortgagor or due from the Mortgagor to the Lender from time to time and all advances, costs and expenses referred to in this Mortgage, including without limitation the costs and expenses (including reasonable attorney's fees) of enforcement of the Lender's rights hereunder or pursuant to any document or instrument executed in connection herewith.

**1.7    Cross-Collateral and Future Advances.**  It is the express intention of the Mortgagor that this Mortgage secure payment and performance of all of the Obligations, whether now existing or hereinafter incurred by reason of future advances by the Lender or otherwise, and regardless of whether such

2

Obligations are or were contemplated by the parties at the time of the granting of this Mortgage. Notice of the continuing grant of this Mortgage shall not be required to be stated on the face of any document evidencing any of the Obligations, nor shall such documents be required to otherwise specify that they are secured hereby.

**1.8    Maximum Principal Amount Secured.**  Notwithstanding anything to the contrary contained in this Mortgage, the maximum amount of principal indebtedness secured by this Mortgage or which under any contingency may be secured by this Mortgage is the amount of $450,000.00.

**1.9    Trust Fund.**  Pursuant to Section 13 of the New York Lien Law, Mortgagor shall receive the advances secured hereby and shall hold the right to receive the advances as a trust fund to be applied first for the purpose of paying the cost of any improvement on the Property and shall apply the advances first to the payment of the cost of any such improvement on the Property before using any part of the total of the same for any other purpose.

## 2.    REPRESENTATIONS, WARRANTIES, COVENANTS

**2.1    Representations and Warranties.**  The Mortgagor represents and warrants that:

(a)    This Mortgage has been duly executed and delivered by the Mortgagor and is the legal, valid and binding obligation of the Mortgagor enforceable in accordance with its terms, except as limited by bankruptcy, insolvency, reorganization, moratorium or other laws affecting the enforcement of creditors' rights generally;

(b)    The Mortgagor is the sole legal owner of the Property, holding good and marketable fee simple title to the Property, subject to no liens, encumbrances, leases, security interests or rights of others, other than as set forth in detail in Exhibit B hereto (the "Permitted Encumbrances");

(c)    The Mortgagor is the sole legal owner of the entire lessor's interest in Leases, if any, with full power and authority to encumber the Property in the manner set forth herein, and the Mortgagor has not executed any other assignment of Leases or any of the rights or rents arising thereunder;

(d)    As of the date hereof, there are no Hazardous Substances (as hereinafter defined) in, on or under the Property, except as disclosed in writing to and acknowledged by the Lender; and

(e)    Each Obligation is a commercial obligation and does not represent a loan used for personal, family or household purposes and is not a consumer transaction.

**2.2    Recording: Further Assurances.**  The Mortgagor covenants that it shall, at its sole cost and expense and upon the request of the Lender, cause this Mortgage, and each amendment, modification or supplement hereto, to be recorded and filed in such manner and in such places, and shall at all times comply with all such statutes and regulations as may be required by law in order to establish, preserve and protect the interest of the Lender in the Property and the rights of the Lender under this Mortgage. Mortgagor will from time to time execute and deliver to the Lender such documents, and take or cause to be taken, all such other or further action, as the Lender may request in order to effect and confirm or vest more securely in the Lender all rights contemplated by this Mortgage (including, without limitation, to correct clerical errors) or to vest more fully in, or assure to the Lender the security interest in, the Property or to comply with applicable statute or law.  To the extent permitted by applicable law, Mortgagor authorizes the Lender to file financing statements, continuation statements or amendments, and any such

3.

Case 1:20-cv-06369-FB-TAM   Document 86-5   Filed 12/10/23   Page 22 of 74 PageID #: 1604

financing statements, continuation statements or amendments may be filed at any time in any jurisdiction. The Lender may at any time and from time to time file financing statements, continuation statements and amendments thereto that describe the Property as defined in this Mortgage and which contain any other information required by Article 9 of the Uniform Commercial Code for the sufficiency or filing office acceptance of any financing statement, continuation statement or amendment, including whether Mortgagor is an organization, the type of organization and any organization identification number issued to Mortgagor; Mortgagor also authorizes the Lender to file financing statements describing any agricultural liens or other statutory liens held by the Lender. Mortgagor agrees to furnish any such information to the Lender promptly upon request. In addition, Mortgagor shall at any time and from time to time, take such steps as the Lender may reasonably request for the Lender (i) to obtain an acknowledgment, in form and substance satisfactory to the Lender, of any bailee having possession of any of the Property that the bailee holds such Property for the Lender, and (ii) otherwise to insure the continued perfection and priority of the Lender's security interest in any of the Property and the preservation of its rights therein. Mortgagor hereby constitutes the Lender its attorney-in-fact to execute and file all filings required or so requested for the foregoing purposes, all acts of such attorney being hereby ratified and confirmed; and such power, being coupled with an interest, shall be irrevocable until this Mortgage terminates in accordance with its terms, all Obligations are paid in full and the Property is released.

2.3     Restrictions on the Mortgagor.  The Mortgagor covenants that it will not, nor will it permit any other person to, directly or indirectly, without the prior written approval of the Lender in each instance:

(a)     Sell, convey, assign, transfer, mortgage, pledge, hypothecate, lease or dispose of all or any part of any legal or beneficial interest in the Mortgagor or the Property or any part thereof or permit any of the foregoing, except as expressly permitted by the terms of this Mortgage;

(b)     Permit the use, generation, treatment, storage, release or disposition of any oil or other material or substance constituting hazardous waste or hazardous materials or substances under any applicable Federal or state law, regulation or rule ("Hazardous Substances"); or

(c)     Permit to be created or suffer to exist any mortgage, lien, security interest, attachment or other encumbrance or charge on the Property or any part thereof or interest therein (except for the Permitted Encumbrances), including, without limitation, (i) any lien arising under any Federal, state or local statute, rule, regulation or law pertaining to the release or cleanup of Hazardous Substances and (ii) any mechanics' or materialmen's lien.  The Mortgagor further agrees to give the Lender prompt written notice of the imposition, or notice, of any lien referred to in this Section and to take any action necessary to secure the prompt discharge or release of the same.  The Mortgagor agrees to defend its title to the Property and the Lender's interest therein against the claims of all persons and, unless the Lender requests otherwise, to appear in and diligently contest, at the Mortgagor's sole cost and expense, any action or proceeding that purports to affect the Mortgagor's title to the Property or the priority or validity of this Mortgage or the Lender's interest hereunder.

2.4     Operation of Property.  The Mortgagor covenants and agrees as follows:

(a)     The Mortgagor will not permit the Property to be used for any unlawful or improper purpose, will at all times comply with all Federal, state and local laws, ordinances and regulations, and the provisions of any Lease, easement or other agreement affecting all or any part of the Property, and will obtain and maintain all governmental or other approvals relating to the Mortgagor, the Property or the use thereof, including without limitation, any applicable zoning or building codes or regulations and any laws or regulations relating to the handling, storage, release or cleanup of Hazardous Substances, and will give prompt written notice to the Lender

4

of (i) any violation of any such law, ordinance or regulation by the Mortgagor or relating to the Property, (ii) receipt of notice from any Federal, state or local authority alleging any such violation and (iii) the presence or release on the Property of any Hazardous Substances;

(b)    The Mortgagor will at all times keep the Property insured for such losses or damage, in such amounts and by such companies as may be required by law and which the Lender may require, provided that, in any case, the Mortgagor shall maintain: (i) physical hazard insurance on an "all risks" basis in an amount not less than 100% of the full replacement cost of the Property; (ii) flood insurance if and as required by applicable Federal law and as otherwise required by the Lender; (iii) comprehensive commercial general liability insurance; (iv) rent loss and business interruption insurance; and (v) such other insurance as the Lender may require from time to time, including builder's risk insurance in the case of construction loans. All policies regarding such insurance shall be issued by companies licensed to do business in the state where the policy is issued and also in the state where the Property is located, be otherwise acceptable to the Lender, provide deductible amounts acceptable to the Lender, name the Lender as mortgagee, loss payee and additional insured, and provide that no cancellation or material modification of such policies shall occur without at least Thirty (30) days prior written notice to the Lender.   Such policies shall include (i) a mortgage endorsement determined by the Lender in good faith to be equivalent to the "standard" mortgage endorsement so that the insurance, as to the interest of the Lender, shall not be invalidated by any act or neglect of the Mortgagor or the owner of the Property, any foreclosure or other proceedings or notice of sale relating to the Property, any change in the title to or ownership of the Property, or the occupation or use of the Property for purposes more hazardous than are permitted at the date of inception of such insurance policies; (ii) a replacement cost endorsement; (iii) an agreed amount endorsement; (iv) a contingent liability from operation endorsement; and (v) such other endorsements as the Lender may request. The Mortgagor will furnish to the Lender upon request such original policies, certificates of insurance or other evidence of the foregoing as are acceptable to the Lender.  The terms of all insurance policies shall be such that no coinsurance provisions apply, or if a policy does contain a coinsurance provision, the Mortgagor shall insure the Property in an amount sufficient to prevent the application of the coinsurance provisions.  In addition, Mortgagor shall comply with all provisions of Section 291-g of the Real Property Law of New York, to the extent applicable;

(c)    Mortgagor will not pursuant to Section 291-f of the Real Property Law of New York enter into or modify the Leases in any material respect without the prior written consent of the Lender, execute any assignment of the Leases except in favor of the Lender, or accept any rentals under any Lease for more than one month in advance and will at all times perform and fulfill every term and condition of the Leases;

(d)    Mortgagor will at all times (i) maintain complete and accurate records and books regarding the Property in accordance with generally accepted accounting principles and (ii) permit the Lender and the Lender's agents, employees and representatives, at such reasonable times as the Lender may request, to enter and inspect the Property and such books and records; and

(e)    Mortgagor will at all times keep the Property in good and first-rate repair and condition (damage from casualty not excepted) and will not commit or permit any strip, waste, impairment, deterioration or alteration of the Property or any part thereof.

2.5    **Payments**.  The Mortgagor covenants to pay when due: all Federal, state, municipal, real property and other taxes, betterment and improvement assessments and other governmental levies, water rates, sewer charges, insurance premiums and other charges on the Property, this Mortgage or any Obligation

5

secured hereby that could, if unpaid, result in a lien on the Property or on any interest therein. If and when requested by the Lender, the Mortgagor shall deposit from time to time with the Lender sums determined by the Lender to be sufficient to pay when due the amounts referred to in this Section. The Mortgagor shall have the right to contest any notice, lien, encumbrance, claim, tax, charge, betterment assessment or premium filed or asserted against or relating to the Property; provided that it contests the same diligently and in good faith and by proper proceedings and, at the Lender's request, provides the Lender with adequate cash security, in the Lender's reasonable judgment, against the enforcement thereof. The Mortgagor shall furnish to the Lender the receipted real estate tax bills or other evidence of payment of real estate taxes for the Property within thirty (30) days prior to the date from which interest or penalty would accrue for nonpayment thereof. The Mortgagor shall also furnish to the Lender evidence of all other payments referred to above within fifteen (15) days after written request therefor by the Lender. If Mortgagor shall fail to pay such sums, the Lender may, but shall not be obligated to, advance such sums. Any sums so advanced by the Lender shall be added to the Obligations, shall bear interest at the highest rate specified in any note evidencing the Obligations, and shall be secured by the lien of this Mortgage.

2.6     Notices; Notice of Default. The Mortgagor will deliver to the Lender, promptly upon receipt of the same, copies of all notices or other documents it receives that affect the Property or its use, or claim that the Mortgagor is in default in the performance or observance of any of the terms hereof or that the Mortgagor or any tenant is in default of any terms of the Leases. The Mortgagor further agrees to deliver to the Lender written notice promptly upon the occurrence of any Event of Default hereunder or event that with the giving of notice or lapse of time, or both, would constitute an Event of Default hereunder.

2.7     Takings. In case of any condemnation or expropriation for public use of, or any damage by reason of the action of any public or governmental entity or authority to, all or any part of the Property (a "Taking"), or the commencement of any proceedings or negotiations that might result in a Taking, the Mortgagor shall immediately give written notice to the Lender, describing the nature and extent thereof. The Lender may, at its option, appear in any proceeding for a Taking or any negotiations relating to a Taking and the Mortgagor shall immediately give to the Lender copies of all notices, pleadings, determinations and other papers relating thereto. The Mortgagor shall in good faith and with due diligence and by proper proceedings file and prosecute its claims for any award or payment on account of any Taking. The Mortgagor shall not settle any such claim without the Lender's prior written consent. The Mortgagor shall hold any amounts received with respect to such awards or claims, by settlement, judicial decree or otherwise, in trust for the Lender and immediately pay the same to the Lender. The Mortgagor authorizes any award or settlement due in connection with a Taking to be paid directly to the Lender in amounts not exceeding the Obligations. The Lender may apply such amounts to the Obligations in such order as the Lender may determine.

2.8     Insurance Proceeds. The proceeds of any insurance resulting from any loss with respect to the Property shall be paid to the Lender and, at the option of the Lender, be applied to the Obligations in such order as the Lender may determine; provided, however, that if the Lender shall require repair of the Property, the Lender may release all or any portion of such proceeds to the Mortgagor for such purpose. Any insurance proceeds paid to the Mortgagor shall be held in trust for the Lender and promptly paid to it.

**3.     CERTAIN RIGHTS OF THE LENDER**

3.1     Legal Proceedings. The Lender shall have the right, but not the duty, to intervene or otherwise participate in any legal or equitable proceeding that, in the Lender's reasonable judgment, might affect the Property or any of the rights created or secured by this Mortgage. The Lender shall have such right whether or not there shall have occurred an Event of Default hereunder.

6

Case 1:20-cv-06369-FB-TAM Document 86-5 Filed 12/10/23 Page 25 of 74 PageID #: 1607

**3.2** <u>Appraisals/Assessments</u>. The Lender shall have the right, at the Mortgagor's sole cost and expense, to obtain appraisals, environmental site assessments or other inspections of the portions of the Property that are real estate at such times as the Lender deems necessary or as may be required by applicable law, or its prevailing credit or underwriting policies.

**3.3** <u>Financial Statements</u>. The Lender shall have the right, at the Mortgagor's sole cost and expense, to require delivery of financial statements in form and substance acceptable to the Lender from the Mortgagor or any guarantor of any of the Obligations and the Mortgagor hereby agrees to deliver such financial statements and/or cause any such guarantor to so deliver any such financial statement when required by the Lender.

**3.4** <u>Leases and Rent Roll</u>. The Mortgagor shall deliver to the Lender (i) during each calendar year and at such other times as the Lender shall request a rent roll for the Property, in form acceptable to the Lender, listing all tenants and occupants and describing all of the Leases; and (ii) at such times as the Lender shall request executed copies of all the Leases.

## 4. DEFAULTS AND REMEDIES

**4.1** <u>Events of Default</u>. "Event of Default" shall mean the occurrence of any one or more of the following events:

(a) default of any liability, obligation, covenant or undertaking of the Mortgagor or any guarantor of the Obligations to the Lender, hereunder or otherwise, including, without limitation, failure to pay in full and when due any installment of principal or interest or default of the Mortgagor or any guarantor of the Obligations under any other Loan Document or any other agreement with the Lender;

(b) failure by the Mortgagor or any guarantor of the Obligations to perform, observe or comply with any of the covenants, agreements, terms or conditions set forth in this Mortgage or the Loan Documents;

(c) the (i) occurrence of any material loss, theft, damage or destruction of, or (ii) issuance or making of any levy, seizure, attachment, execution or similar process on a material portion of the Property;

(d) failure of the Mortgagor or any guarantor of the Obligations to maintain aggregate collateral security value satisfactory to the Lender;

(e) default of any material liability, obligation or undertaking of the Mortgagor or any guarantor of the Obligations to any other party;

(f) if any statement, representation or warranty heretofore, now or hereafter made by the Mortgagor or any guarantor of the Obligations in connection with this Mortgage or in any supporting financial statement of the Mortgagor or any guarantor of the Obligations shall be determined by the Lender to have been false or misleading in any material respect when made;

(g) if the Mortgagor or any guarantor of the Obligations is a corporation, trust, partnership or limited liability company, the liquidation, termination or dissolution of any such organization, or the merger or consolidation of such organization into another entity, or its ceasing to carry on actively its present business or the appointment of a receiver for its property;

7

(h)    the death of the Mortgagor or any guarantor of the Obligations and, if the Mortgagor or any guarantor of the Obligations is a partnership or limited liability company, the death of any partner or member;

(i)    the institution by or against the Mortgagor or any guarantor of the Obligations of any proceedings under the Bankruptcy Code 11 USC §101 *et seq.* or any other law in which the Mortgagor or any guarantor of the Obligations is alleged to be insolvent or unable to pay its debts as they mature, or the making by the Mortgagor or any guarantor of the Obligations of an assignment for the benefit of creditors or the granting by the Mortgagor or any guarantor of the Obligations of a trust mortgage for the benefit of creditors;

(j)    the service upon the Lender of a writ in which the Lender is named as trustee of the Mortgagor or any guarantor of the Obligations;

(k)    a judgment or judgments for the payment of money shall be rendered against the Mortgagor or any guarantor of the Obligations, and any such judgment shall remain unsatisfied and in effect for any period of thirty (30) consecutive days without a stay of execution;

(l)    any levy, lien (including mechanics lien), seizure, attachment, execution or similar process shall be issued or levied on any of the property of the Mortgagor or any guarantor of the Obligations;

(m)    the termination or revocation of any guaranty of the Obligations; or

(n)    the occurrence of such a change in the condition or affairs (financial or otherwise) of the Mortgagor or any guarantor of the Obligations, or the occurrence of any other event or circumstance, such that the Lender, in its sole discretion, deems that it is insecure or that the prospects for timely or full payment or performance of any obligation of the Mortgagor or any guarantor of the Obligations to the Lender has been or may be impaired.

4.2    <u>Remedies.</u> On the occurrence of any Event of Default the Lender may, at any time thereafter, at its option and, to the extent permitted by applicable law, without notice, exercise any or all of the following remedies:

(a)    Declare the Obligations due and payable, and the Obligations shall thereupon become immediately due and payable, without presentment, protest, demand or notice of any kind, all of which are hereby expressly waived by the Mortgagor except for Obligations due and payable on demand, which shall be due and payable on demand whether or not an event of default has occurred hereunder;

(b)    Enter, take possession of, manage and operate the Property (including all personal property and all records and documents pertaining thereto) and any part thereof and exclude the Mortgagor therefrom, take all actions it deems necessary or proper to preserve the Property and operate the Property as a mortgagee in possession with all the powers as could be exercised by a receiver or as otherwise provided herein or by applicable law; provided, however, the entry by the Lender upon the Property for any reason shall not cause the Lender to be a mortgagee in possession, except upon the express written declaration of the Lender;

(c)    With or without taking possession, receive and collect all rents, income, issues and profits ("Rents") from the Property (including all real estate and personal property and whether past due or thereafter accruing), including as may arise under the Leases, and the Mortgagor

<div align="center">8</div>

appoints the Lender as its true and lawful attorney with the power for the Lender in its own name and capacity to demand and collect Rents and take any action that the Mortgagor is authorized to take under the Leases. The Lender shall (after payment of all costs and expenses incurred) apply any Rents received by it to the Obligations in such order as the Lender determines, or in accordance with any applicable statute, and the Mortgagor agrees that exercise of such rights and disposition of such funds shall not be deemed to cure any default or constitute a waiver of any foreclosure once commenced nor preclude the later commencement of foreclosure for breach thereof. The Lender shall be liable to account only for such Rents actually received by the Lender. Lessees under the Leases are hereby authorized and directed, following notice from the Lender, to pay all amounts due the Mortgagor under the Leases to the Lender, whereupon such lessees shall be relieved of any and all duty and obligation to the Mortgagor with respect to such payments so made;

(d)   Sell the Property or any part thereof or interest therein pursuant to exercise of its power of sale pursuant to Article 14 of the New York Real Property Actions and Proceedings Law (to the extent applicable) or otherwise at public auction on terms and conditions as the Lender may determine, or otherwise foreclose this Mortgage in any manner permitted by law, and upon such sale the Mortgagor shall execute and deliver such instruments as the Lender may request in order to convey and transfer all of the Mortgagor's interest in the Property, and the same shall operate to divest all rights, title and interest of the Mortgagor in and to the Property. In the event this Mortgage shall include more than one parcel of property or subdivision (each hereinafter called a "portion"), the Lender shall, in its sole and exclusive discretion, be empowered to (a) foreclose upon any such portion without impairing its right to foreclose subsequently upon any other portion or the entirety of the Property from time to time thereafter, and (b) determine in what order the portions are to be presented for sale. A deficiency judgment may be obtained after all or any portion of the Property has been sold, with such judgment taking into account the value of all of the parcels previously sold, and the period of time allowable for such judgment shall be deemed to run from the date of the last sale. In addition, the Lender may in its discretion subordinate this Mortgage to one or more Leases for the sole purpose of preserving any such Lease in the event of a foreclosure;

(e)   Cause one or more environmental assessments to be taken, arrange for the cleanup of any Hazardous Substances or otherwise cure the Mortgagor's failure to comply with any statute, regulation or ordinance relating to the presence or cleanup of Hazardous Substances, and the Mortgagor shall provide the Lender or its agents with access to the Property for such purposes; provided that the exercise of any of such remedies shall not be deemed to have relieved the Mortgagor from any responsibility therefor or given the Lender "control" over the Property or cause the Lender to be considered to be a mortgagee in possession, "owner" or "operator" of the Property for purposes of any applicable law, rule or regulation pertaining to Hazardous Substances; and

(f)   Take such other actions or proceedings as the Lender deems necessary or advisable to protect its interest in the Property and ensure payment and performance of the Obligations, including, without limitation, appointment of a receiver without prior notice (and the Mortgagor hereby waives any right to object to such appointment) and exercise of any of the Lender's remedies provided herein or in any other document evidencing, securing or relating to any of the Obligations or available to a secured party under the Uniform Commercial Code or under other applicable law.

In addition, the Lender shall have all other remedies provided by applicable law, including, without limitation, the right to pursue an action by summary proceeding pursuant to Article 7 of the Real Property

9

Case 1:20-cv-06369-FB-TAM   Document 86-5   Filed 12/10/23   Page 28 of 74 PageID #: 1610

Action and Proceedings Law of the State of New York, or a judicial sale of the Property or any portion thereof by deed, assignment or otherwise.

The Mortgagor agrees and acknowledges that the acceptance by the Lender of any payments from either the Mortgagor or any guarantor after the occurrence of any Event of Default, the exercise by the Lender of any remedy set forth herein or the commencement, discontinuance or abandonment of foreclosure proceedings against the Property shall not waive the Lender's subsequent or concurrent right to foreclose or operate as a bar or estoppel to the exercise of any other rights or remedies of the Lender. The Mortgagor agrees and acknowledges that the Lender, by making payments or incurring costs described herein, shall be subrogated to any right of the Mortgagor to seek reimbursement from any third parties, including, without limitation, any predecessor in interest to the Mortgagor's title or other party who may be responsible under any law, regulation or ordinance relating to the presence or cleanup of Hazardous Substances.

.4.3    Advances. If the Mortgagor fails to pay or perform any of its obligations respecting the Property, the Lender may in its sole discretion do so without waiving or releasing Mortgagor from any such obligation. Any such payments may include, but are not limited to, payments for taxes, assessments and other governmental levies, water rates, insurance premiums, maintenance, repairs or improvements constituting part of the Property. Any amounts paid by the Lender hereunder shall be, until reimbursed by the Mortgagor, part of the Obligations and secured by this Mortgage, and shall be due and payable to the Lender, on demand, together with interest thereon to the extent permitted by applicable law, at the highest rate permitted under any of the notes evidencing the Obligations.

4.4    Cumulative Rights and Remedies. All of the foregoing rights, remedies and options (including without limitation the right to enter and take possession of the Property, the right to manage and operate the same, and the right to collect Rents, in each case whether by a receiver or otherwise) are cumulative and in addition to any rights the Lender might otherwise have, whether at law or by agreement, and may be exercised separately or concurrently and none of which shall be exclusive of any other. The Mortgagor further agrees that the Lender may exercise any or all of its rights or remedies set forth herein without having to pay the Mortgagor any sums for use or occupancy of the Property.

4.5    Mortgagor's Waiver of Certain Rights. To the extent permitted by applicable law, the Mortgagor hereby waives the benefit of all present and future laws (i) providing for any appraisal before sale of all or any portion of the Property or (ii) in any way extending the time for the enforcement of the collection of the Obligations or creating or extending a period of redemption from any sale made hereunder.

## 5.    MISCELLANEOUS

5.1    Costs and Expenses. To the extent permitted by applicable law, the Mortgagor shall pay to the Lender, on demand, all reasonable expenses (including attorneys' fees and expenses and reasonable consulting, accounting, appraisal, brokerage and similar professional fees and charges) incurred by the Lender in connection with the Lender's interpretation, recordation of this Mortgage, exercise, preservation or enforcement of any of its rights, remedies and options set forth in this Mortgage and in connection with any litigation, proceeding or dispute whether arising hereunder or otherwise relating to the Obligations, together with interest thereon to the extent permitted by applicable law, until paid in full by the Mortgagor at the highest rate set forth in any of the notes evidencing the Obligations. Any amounts owed by the Mortgagor hereunder shall be, until paid, part of the Obligations and secured by this Mortgage, and the Lender shall be entitled, to the extent permitted by law, to receive and retain such amounts in any action for a deficiency against or redemption by the Mortgagor, or any accounting for the proceeds of a foreclosure sale or of insurance proceeds.

10

5.2     Indemnification Regarding Leases.  The Mortgagor hereby agrees to defend, and does hereby indemnify and hold the Lender and each of its directors, officers, employees, agents and attorneys (each an "Indemnitee") harmless from all losses, damages, claims, costs or expenses (including attorneys' fees and expenses) resulting from the assignment of the Leases and from all demands that may be asserted against such Indemnitees arising from any undertakings on the part of the Lender to perform any obligations under the Leases.  It is understood that the assignment of the Leases shall not operate to place responsibility for the control or management of the Property upon the Lender or any Indemnitee or make them liable for performance of any of the obligations of the Mortgagor under Leases, respecting any condition of the Property or any other agreement or arrangement, written or oral, or applicable law.

5.3     Indemnification Regarding Hazardous Substances.  The Mortgagor hereby agrees to defend, and does hereby indemnify and hold harmless each Indemnitee from and against any and all losses, damages, claims, costs or expenses, including, without limitation, litigation costs and attorneys' fees and expenses and fees or expenses of any environmental engineering or cleanup firm incurred by such Indemnitee and arising out of or in connection with the Property or resulting from the application of any current or future law, regulation or ordinance relating to the presence or cleanup of Hazardous Substances on or affecting the Property.  The Mortgagor agrees its obligations hereunder shall be continuous and shall survive termination or discharge of this Mortgage and/or the repayment of all debts to the Lender including repayment of all Obligations.

5.4     Indemnitee's Expenses.  If any Indemnitee is made a party defendant to any litigation or any claim is threatened or brought against such Indemnitee concerning this Mortgage or the Property or any part thereof or therein or concerning the construction, maintenance, operation or the occupancy or use thereof by the Mortgagor or other person or entity, then the Mortgagor shall indemnify, defend and hold each Indemnitee harmless from and against all liability by reason of said litigation or claims, including attorneys' fees and expenses incurred by such Indemnitee in connection with any such litigation or claim, whether or not any such litigation or claim is prosecuted to judgment. The within indemnification shall survive payment of the Obligations, and/or any termination, release or discharge executed by the Lender in favor of the Mortgagor.

5.5     Waivers.  The Mortgagor waives notice of nonpayment, demand, presentment, protest or notice of protest of the Obligations and all other notices, consents to any renewals or extensions of time of payment thereof, and generally waives any and all suretyship defenses and defenses in the nature thereof.  No delay or omission of the Lender in exercising or enforcing any of its rights, powers, privileges, remedies, immunities or discretion (all of which are hereinafter collectively referred to as "the Lender's rights and remedies") hereunder shall constitute a waiver thereof; and no waiver by the Lender of any default of the Mortgagor hereunder or or of any demand shall operate as a waiver of any other default hereunder or of any other demand.  No term or provision hereof shall be waived, altered or modified except with the prior written consent of the Lender, which consent makes explicit reference to this Mortgage.  Except as provided in the preceding sentence, no other agreement or transaction, of whatsoever nature, entered into between the Lender and the Mortgagor at any time (whether before, during or after the effective date or term of this Mortgage) shall be construed as a waiver, modification or limitation of any of the Lender's rights and remedies under this Mortgage (nor shall anything in this Mortgage be construed as a waiver, modification or limitation of any of the Lender's rights and remedies under any such other agreement or transaction) but all the Lender's rights and remedies not only under the provisions of this Mortgage but also under any such other agreement or transaction shall be cumulative and not alternative or exclusive, and may be exercised by the Lender at such time or times and in such order of preference as the Lender in its sole discretion may determine.

5.6     Waiver of Homestead.  To the maximum extent permitted under applicable law, the Mortgagor hereby waives and terminates any homestead rights and/or exemptions respecting the Property under the provisions of any applicable homestead laws, including without limitation, Section 5206 of the Civil

11

Practice Law and Rules of New York.

5.7    Statutory Construction.    The clauses and covenants contained in this Mortgage that are construed by Section 254 of the Real Property Law of New York shall be construed as provided in those sections.    The additional clauses and covenants contained in this Mortgage shall afford rights supplemental to and not exclusive of the rights conferred by the clauses and covenants construed by Section 254 and shall not impair, modify, alter or defeat such rights, notwithstanding that such additional clauses and covenants may relate to the same subject matter or provide for different or additional rights in the same or similar contingencies as the clauses and covenants construed by Section 254. The rights of the Lender arising under the clauses and covenants contained in this Mortgage shall be separate, distinct and cumulative and none of them shall be in exclusion of the others. No act of Lender shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision, anything herein or otherwise to the contrary notwithstanding. In the event of any inconsistencies between the provisions of Section 254 and the provisions of this Mortgage, the provisions of this Mortgage shall prevail.

5.8    Joint and Several.    If there is more than one Mortgagor, each of them shall be jointly and severally liable for payment and/or performance of all obligations secured by this Mortgage and the term "Mortgagor" shall include each as well as all of them.

5.9    Severability.    If any provision of this Mortgage or portion of such provision or the application thereof to any person or circumstance shall to any extent be held invalid or unenforceable, the remainder of this Mortgage (or the remainder of such provision) and the application thereof to other persons or circumstances shall not be affected thereby.

5.10    Complete Agreement.    This Mortgage and the other Loan Documents constitute the entire agreement and understanding between and among the parties hereto relating to the subject matter hereof, and supersedes all prior proposals, negotiations, agreements and understandings among the parties hereto with respect to such subject matter.

5.11    Binding Effect of Agreement:    This Mortgage shall run with the land and be binding upon and inure to the benefit of the respective heirs, executors, administrators, legal representatives, successors and assigns of the parties hereto, and shall remain in full force and effect (and the Lender shall be entitled to rely thereon) until all Obligations are fully and indefeasibly paid. The Lender may transfer and assign this Mortgage and deliver any collateral to the assignee, who shall thereupon have all of the rights of the Lender; and the Lender shall then be relieved and discharged of any responsibility or liability with respect to this Mortgage and such collateral.  Except as expressly provided herein or in the other Loan Documents, nothing, expressed or implied, is intended to confer upon any party, other than the parties hereto, any rights, remedies, obligations or liabilities under or by reason of this Mortgage or the other Loan Documents.

5.12    Notices.    Any notices under or pursuant to this Mortgage shall be deemed duly received and effective if delivered in hand to any officer or agent of the Mortgagor or Lender, or if mailed by registered or certified mail, return receipt requested, addressed to the Mortgagor or Lender at the address set forth in this Mortgage or as any party may from time to time designate by written notice to the other party.

5.13    Governing Law.    This Mortgage shall be governed by the laws of the State of New York.

5.14    Reproductions.    This Mortgage and all documents which have been or may be hereinafter furnished by the Mortgagor to the Lender may be reproduced by the Lender by any photographic, photostatic, microfilm, xerographic or similar process, and any such reproduction shall be admissible in

12

FILED: QUEENS COUNTY CLERK 02/12/2021 03:50 PM          INDEX NO. 703462/2021

NYSCEF DOC. NO. 1          Case 1:20-cv-06369-FB-TAM   Document 86-5   Filed 12/10/23   Page 31 of 74 PageID #: 1613          RECEIVED NYSCEF: 02/12/2021

evidence as the original itself in any judicial or administrative proceeding (whether or not the original is in existence and whether or not such reproduction was made in the regular course of business).

5.15    Jurisdiction and Venue.  The Mortgagor irrevocably submits to the nonexclusive jurisdiction of any Federal or state court sitting in New York, over any suit, action or proceeding arising out of or relating to this Mortgage.  The Mortgagor irrevocably waives, to the fullest extent it may effectively do so under applicable law, any objection it may now or hereafter have to the laying of the venue of any such suit, action or proceeding brought in any such court and any claim that the same has been brought in an inconvenient forum.  The Mortgagor hereby consents to process being served in any such suit, action or proceeding (i) by the mailing of a copy thereof by registered or certified mail, postage prepaid, return receipt requested, to the Mortgagor's address set forth herein or such other address as has been provided in writing to the Lender and (ii) in any other manner permitted by law, and agrees that such service shall in every respect be deemed effective service upon the Mortgagor.

5.16    JURY WAIVER.  THE MORTGAGOR AND THE LENDER EACH HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY, AND AFTER AN OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL, (A) WAIVE ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING IN CONNECTION WITH THIS MORTGAGE, THE OBLIGATIONS, ALL MATTERS CONTEMPLATED HEREBY AND DOCUMENTS EXECUTED IN CONNECTION HEREWITH AND (B) AGREE NOT TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CAN NOT BE, OR HAS NOT BEEN WAIVED.  THE MORTGAGOR CERTIFIES THAT NEITHER THE LENDER NOR ANY OF ITS REPRESENTATIVES, AGENTS OR COUNSEL HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE LENDER WOULD NOT IN THE EVENT OF ANY SUCH PROCEEDING SEEK TO ENFORCE THIS WAIVER OF RIGHT TO TRIAL BY JURY.

5.17    Type of Property.  Mortgagor represents and warrants to the Mortgagee that the Property is improved by a one-to-two family dwelling.

EXECUTED as of the date first above written.

Witness:

Mortgagor:
82-25 Queens Mansion LLC

By: _____
Wing Fung Chau, Operating Manager

13

STATE OF NEW YORK

COUNTY OF _QUEENS_____     :  SS.

On the _11_ day of _JANUARY_____ in the year 20_16_, before me, the undersigned, a Notary Public in
and for said State, personally appeared, Wing Fung Chau, personally known to me or proved to me on the
basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and
acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the
instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

NOTARY PUBLIC

TYPE OR PRINT NAME

Mandeep Kaur
Notary Public, State of New York
No. 02KA6076000
Qualified in Queens County
Commission Expires 06/17/16

14

Commercial Mortgage 1                    © 2016 Medici, a division of Wolters Kluwer Financial Services

**EXHIBIT "A"**

**Property Description**

See Legal Description attached hereto and made a part hereof.

15

Case 1:20-cv-06369-FB-TAM   Document 86-5   Filed 12/10/23   Page 34 of 74 PageID #: 1616

EXHIBIT "B"

**Permitted Encumbrances**

None

16

Commercial Mortgage 1                              © 2016 Medici, a division of Wolters Kluwer Financial Services

## CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER, dated as of **January 11, 2016**, is incorporated into and shall be deemed to amend and supplement that certain Commercial Mortgage, Security Agreement and Assignment of Leases and Rents, of even date herewith (the "Mortgage"), by **82-25 Queens Mansion LLC**, a New York limited liability company, with an address of **3237 214th Pl., Bayside, New York 11361** (the "Mortgagor") in favor of VELOCITY COMMERCIAL CAPITAL, LLC (the "Lender") to secure the Obligations (as defined in the Mortgage).

The real property which is the subject matter of the Mortgage consists of the following condominium unit(s): **82-25 Queens Boulevard 1B, Elmhurst, New York 11373** (the "Unit(s)"). Such real property includes an undivided interest in the Unit(s) and all rights appurtenant thereto under the Condominium Act, RPL Section 339-d, including, without limitation, an undivided interest in the common elements of the condominium project (the "Condominium Project") in which such real property is included and formed pursuant to a Declaration of record. The real property also includes all of the Mortgagor's interest in the association of unit owners of the Condominium Project and all of the Mortgagor's right, title and interest in any property or proceeds of such association.

In addition to all of the covenants and agreements in the Mortgage, the Mortgagor and the Lender further covenant and agree as follows:

1. <u>Condominium Obligations</u>. Mortgagor shall perform all of Mortgagor's obligations under the Condominium Project's Constituent Documents. The "Constituent Documents" are (i) the Declaration and any other document which creates the Condominium Project; (ii) the bylaws, rules and regulations of the association of unit owners of the Condominium Project; and (iii) any other equivalent documents. Mortgagor hereby agrees to pay when due all dues and assessments imposed respecting the Unit(s) pursuant to the Constituent Documents.

2. <u>Insurance</u>. So long as the association of unit owners respecting the Condominium Project maintains insurance respecting the Unit(s) and the common elements of the Condominium Project in compliance with the requirements in the Mortgage the Mortgagor's obligations in the Mortgage to keep the Unit(s) insured shall be satisfied; provided that the Mortgagor will nevertheless comply with all obligations in the Mortgage to furnish to the Lender evidence of such insurance. In addition, Mortgagor shall comply with all provisions of Section 291-g of the Real Property Law of New York, to the extent applicable.

3. <u>Insurance and Condemnation Proceeds</u>. In addition to the Lender's rights provided in the Mortgage regarding the proceeds of insurance or any taking of all or any part of the property covered by the Mortgage, the Mortgagor hereby assigns to the Lender all of its right, title and interest in such proceeds, to the extent such proceeds are attributable to the common elements in the Condominium Project.

4. <u>Lender's Prior Consent</u>. Mortgagor shall not, except after notice to Lender and with Lender's prior written consent, agree to or vote for (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is not for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the association of unit owners of the Condominium Project; or (iv) any action that would have the effect of rendering the insurance coverage on the Unit(s) or the Condominium Project unacceptable to Lender.

5. <u>Remedies</u>. In addition to all of its remedies and rights pursuant to the Mortgage, if the Mortgagor fails to pay any condominium dues and assessment when due, the Lender may at its option pay such

Case 1:20-cv-06369-FB-TAM Document 86-5 Filed 12/10/23 Page 36 of 74 PageID #: 1618

amounts, which such amounts shall be added to the Obligations and until repaid to the Lender shall bear interest from the date of disbursement by the Lender at the same rate as the Obligations.

Executed as of the date written above.

Witness:

Mortgagor:

82-25 Queens Mansion LLC

By: _____
Wing Fung Chau, Operating Manager

2

Commercial Mortgage 1

© 2016 Medici, a division of Wolters Kluwer Financial Services

## *Westcor Land Title Insurance Company*

### SCHEDULE A
### DESCRIPTION OF PREMISES

Title No.    2015-06-0001316
Policy No.   LP-36-NY1105-4564855

The unit known as Unit 1B (Hereinafter the "Unit") in the premises known as and by QUEENS MANSION CONDOMINIUM and located at 82-25 Queens Boulevard, Elmhurst, Queens County, City and State of New York, designated and described as Unit 1B in the Declaration establishing a plan for condominium ownership of the Building and the Land on which it is erected (Hereinafter the "Property") made by 82-25 Queens Mansion LLC under the Condominium Act of the State of New York (Article 9-B of the Real Property Law of the State of New York), dated September 4, 2014, recorded in the Office of the City Register of the City of New York on the 1st day of October, 2014 in CRFN No.: 2014000323486 (Hereinafter the "Declaration"), and also designated as Tax Lot 1102 in Block 1542 on the Tax Map of the Real Property Assessment Department of the State of New York, County of Queens.

TOGETHER with a(n) 6.8780% undivided interest for Unit 1B in the common elements of the Property (Hereinafter the "Common Elements").

AS TO BASE LOT 40:

ALL that certain plot, piece or parcel of land, with all the buildings and improvements thereon, situate, lying and being in the Borough and County of Queens, City and State of New York, bounded and described as follows:

BEGINNING at a point on the northerly side of Queens Boulevard, distant 222.67 feet westerly from the corner formed by the intersection of the northerly side of Queens Boulevard and the westerly side of Van Loon Place, now known as Van Loon Street;

RUNNING thence N 81 degrees 8 minutes 21 seconds W, 101.21 feet to the southerly side of 51st Avenue;

THENCE parallel with Queens Boulevard, 80.97 feet to the southerly side of 51st Avenue;

THENCE S 81 degrees 8 minutes 21 seconds E, 101.21 feet to the northerly side of Queens Boulevard;

THENCE along the northerly side of Queens Boulevard, 80.97 feet to the point or place of BEGINNING.

SAID premises being known as and by the street address 82-25 Queens Boulevard, Elmhurst, New York and is situated in Block 1542 Base Lot 40.

Sec:          Block: 1542          Lot: 1102

**SCHEDULE A**
A.L.T.A 2006 LOAN POLICY



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument.The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

2016092101166001001E88C2

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 2 |
|---|---|

Document ID: 2016092101166001    Document Date: 09-07-2016    Preparation Date: 09-21-2016
Document Type: ASSIGNMENT, MORTGAGE
Document Page Count: 1

**PRESENTER:**
VELOCITY COMMERCIAL CAPITAL, LLC
30699 RUSSELL RANCH RD
WESTLAKE VILLAGE, CA 91362
SUPPORT@SIMPLIFILE.COM

**RETURN TO:**
VELOCITY COMMERCIAL CAPITAL, LLC, A CALIFORNIA LIM
30699 RUSSELL RANCH RD
WESTLAKE VILLAGE, CA 91362
SUPPORT@SIMPLIFILE.COM

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| QUEENS | 1542 | 1102 | Entire Lot | 82-25 QUEENS BOULEVARD |

Property Type: OTHER

**CROSS REFERENCE DATA**
CRFN: 2016000021705

**PARTIES**

**ASSIGNOR/OLD LENDER:**
VELOCITY COMMERCIAL CAPITAL, LLC, A CALIFORNIA LIM
30699 RUSSELL RANCH RD
WESTLAKE VILLAGE, CA 91362

**ASSIGNEE/NEW LENDER:**
U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR VEL
190 SOUTH LASALLE STREET
CHICAGO, IL 60603

**FEES AND TAXES**

| Mortgage : | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 0.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 0.00 | | | |
| Recording Fee: | $ | 42.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**
Recorded/Filed    09-23-2016 10:46
City Register File No.(CRFN):
2016000332392

*City Register Official Signature*

Record & Return To:
Velocity Commercial Capital, LLC
30699 Russell Ranch Road, Suite 295
Westlake Village, CA 91362
(818) 532-3736

Loan #:
Deal Name: VCC 2016-1 Securitization
Queens, NY

Assignment of Commercial Mortgage, Security Agreement and Assignment of Leases and Rents

FOR VALUE RECEIVED, the receipt and sufficiency of which is hereby acknowledged, the undersigned, Velocity Commercial Capital, LLC, a California limited liability company, 30699 Russell Ranch Road, Suite 295, Westlake Village, CA, 91362, herein ("Assignor"), does hereby grant, sell, assign, transfer and convey, without recourse unto U.S. Bank National Association, as Trustee for Velocity Commercial Capital Loan Trust 2016-1, 190 South LaSalle Street, MK-IL-SL7R, Chicago, IL 60603 herein ("Assignee") that certain COMMERCIAL MORTGAGE, SECURITY AGREEMENT AND ASSIGNMENT OF LEASES AND RENTS referenced below:

Borrower: 82-25 Queens Mansion LLC, a New York Limited Liability Company
Original Lender: Velocity Commercial Capital, LLC, a California limited liability company
Dated: 01/11/2016    Recorded: 01/22/2016    2016000021705   in Queens, NY
Loan Amount: $450,000.00
Block: 1542    Lot: 1102
Property: 82-25 Queens Boulevard 1B, Elmhurst, NY 11373

Together with the note(s) and obligations therein described or referred to, the money due and to become due thereon, with interest, and all rights accrued or to accrue under said document referenced above.

TO HAVE AND TO HOLD the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the document above-described.

IN WITNESS WHEREOF, Assignor has caused this Assignment to be executed and delivered, effective 09/07/2016

This assignment is not subject to the requirements of Section 275 or Section 255 of the Real Property Law because it is an assignment within the secondary mortgage market.

Velocity Commercial Capital, LLC, a California limited liability company

By: 
Name: Ryan Wise

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.
State of California
County of Los Angeles
On 09/07/2016 before me, Taylor Robinson, Notary Public, personally appeared Ryan Wise, who proved to me on the basis of satisfactory evidence to be the person(s) whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public: Taylor Robinson
My Comm. Expires: 01/16/2019

TAYLOR ROBINSON
Commission # 2097393
Notary Public - California
Los Angeles County
My Comm. Expires Jan 16, 2019

RECORDED AT THE REQUEST OF:
Velocity Commercial Capital, LLC

Record & Return To:
Velocity Commercial Capital, LLC
30700 Russell Ranch Road, Suite 295
Westlake Village, CA 91363
(818) 532-3737

Case 1:20-cv-06369-FB-TAM Document 86-5 Filed 12/10/23 Page 40 of 74 PageID #: 1622



**UNLIMITED GUARANTY**

TO:     VELOCITY COMMERCIAL CAPITAL, LLC, a California Limited Liability Company (the "Lender")

RE:     **82-25 Queens Mansion LLC, a New York limited liability company** (the "Borrower")

To induce the Lender to make or continue to make loans, advances, or grant other financial accommodations to the Borrower, in consideration thereof and for loans, advances or financial accommodations heretofore or hereafter granted by the Lender to or for the account of the Borrower, the undersigned **Wing Fung Chau** (the "Guarantor") absolutely, unconditionally and irrevocably guarantees the full and punctual payment to the Lender of all sums which may be presently due and owing and of all sums which shall in the future become due and owing to the Lender from the Borrower, whether direct or indirect, whether as a borrower, guarantor, surety or otherwise, including, without limitation, interest, attorneys' fees and other amounts accruing after the filing of a petition in bankruptcy by or against Borrower, notwithstanding the discharge of Borrower from such obligations, together with all costs and expenses incurred by the Lender in connection with such obligations, this Unlimited Guaranty (this "Guaranty") and the enforcement thereof, and also guarantees the due performance by the Borrower of all its obligations under all other present and future contracts and agreements with the Lender. This is a guaranty of payment and not collection.

Guarantor also agrees:

(1)     to indemnify and hold the Lender and its directors, officers, employees, agents and attorneys harmless from and against all claims, obligations, demands and liabilities, by whomsoever asserted, and against all losses in any way suffered, incurred or paid as a result of or in any way arising out of or following or consequential to transactions with the Borrower, except for any claim arising out of the gross negligence or willful misconduct of the Lender;

(2)     that this Guaranty shall not be impaired by any modification, supplement, extension, renewal or amendment of any contract or agreement to which the parties thereto may hereafter agree, nor by any modification, increase, release or other alteration of any of the obligations hereby guaranteed or of any security therefor, nor by any agreements or arrangements whatsoever with the Borrower or anyone else, all of which may be done without notice to or consent by the Guarantor;

(3)     that the liability of the Guarantor hereunder is direct and unconditional and due immediately upon default of the Borrower without demand or notice and without requiring the Lender first to resort to any other right, remedy or security;

(4)     that Guarantor shall have no right of subrogation, reimbursement or indemnity whatsoever until the Lender is indefeasibly paid in full, nor any right of recourse to security for the debts and obligations of the Borrower to the Lender;

(5)     that the liability of the Guarantor is unlimited and shall be joint and several with the liabilities of any other guarantors;

(6)     that if the Borrower or the Guarantor or any other guarantor should at any time become insolvent or make a general assignment, or if a petition in bankruptcy or any insolvency or reorganization proceedings shall be filed or commenced by, against or in respect of the Borrower or the Guarantor, or any other guarantor of the obligations guaranteed hereby, any and all obligations of the Guarantor shall be immediately due and payable without notice;

Case 1:20-cv-06369-FB-TAM   Document 86-5   Filed 12/10/23   Page 41 of 74 PageID #: 1623

(7)     that the Lender's books and records showing the account between the Lender and the Borrower shall be admissible in any action or proceeding, shall be binding upon the Guarantor for the purpose of establishing the items therein set forth and shall constitute conclusive proof thereof;

(8)     that this Guaranty is, as to the Guarantor, a continuing Guaranty that shall remain effective under successive transactions until the obligations guaranteed hereby are irrevocably paid in full;

(9)     that the death of Guarantor shall not effect the termination of this Guaranty as to Guarantor providing, that in any event within Sixty (60) days after the death of the Guarantor, Borrower or any surviving guarantor shall provide to the Lender evidence that the estate of the Guarantor confirms its obligations to the Lender under this Guaranty;

(10)    that termination, release or limitation of any guaranty of the obligations guaranteed hereby by any other guarantor shall not affect the continuing liability hereunder of the Guarantor;

(11)    that nothing shall discharge or satisfy the liability of the Guarantor hereunder except the full indefeasible payment and performance of all of the Borrower's debts and obligations to the Lender with interest and costs of collection;

(12)    that this Guaranty shall not be affected by the illegality, invalidity or unenforceability of the obligations guaranteed, by any fraudulent, illegal or improper act by the Borrower, the legal incapacity or any other defense of the Borrower, the Guarantor or any other person obligated to the Lender consequential to transactions with the Borrower nor by the invalidation, by operation of law or otherwise, of all or any part of the obligations guaranteed hereby, including but not limited to any interest accruable on the obligations guaranteed hereby during the pendency of any bankruptcy or receivership proceeding of the Borrower;

(13)    that any and all present and future debts and obligations of the Borrower to Guarantor are hereby waived and postponed in favor of and subordinated to the full indefeasible payment and performance of all present and future debts and obligations of the Borrower to the Lender;

(14)    that the Guarantor hereby grants to the Lender a continuing lien and security interest in all deposits or other sums at any time credited by or due from the Lender to the Guarantor and any property of the Guarantor at any time in the possession of the Lender whether for safekeeping or otherwise, or in transit to or from the Lender (regardless of the reason the Lender had received the same or whether the Lender has conditionally released the same) as security for the full and punctual payment and performance of all of the obligations guaranteed hereby, and such deposits and other sums may be applied or set off against such obligations at any time, whether or not such are then due, whether or not demand has been made and whether or not other collateral is then available to the Lender;

(15)    that if at any time payment of all or any part of the obligations guaranteed hereunder is rescinded or otherwise must be restored by the Lender to the Borrower or to the creditors of the Borrower or any representative of the Borrower or representative of the Borrower's creditors as a voidable preference or fraudulent transfer or conveyance upon the insolvency, bankruptcy or reorganization of the Borrower or the Guarantor, or to the creditors of the Guarantor or any representative of the Guarantor or representative of the creditors of Guarantor upon the insolvency, bankruptcy or reorganization of the Guarantor or otherwise, this Guaranty shall continue to be effective or be reinstated, as the case may be, as though such payments had not been made, and shall survive as an obligation of the Guarantor, and shall not be discharged or satisfied by said payment or payments, notwithstanding the return of the original of this Guaranty to the Guarantor or to the Borrower, or any other apparent termination of Guarantor's obligations hereunder;

2

Case 1:20-cv-06369-FB-TAM   Document 86-5   Filed 12/10/23   Page 42 of 74 PageID #: 1624

(16) that any rights and remedies available to the Lender under this Guaranty are cumulative, and not exclusive of any rights and remedies otherwise available to the Lender at law or in equity;

(17) that the Lender's delay or omission in exercising any of the Lender's rights and remedies shall not constitute a waiver of these rights and remedies, nor shall the Lender's waiver of any right or remedy operate as a waiver of any other right or remedy available to the Lender. The Lender's waiver of any right or remedy on any one occasion shall not be considered a waiver of same on any subsequent occasion, nor shall this be considered to be a continuing waiver;

(18) that this Guaranty incorporates all discussions and negotiations between the Lender and the Guarantor concerning the guaranty and indemnification provided by the undersigned hereby, and that no such discussions or negotiations shall limit, modify, or otherwise affect the provisions hereof, there are no preconditions to the effectiveness of this Guaranty and that no provision hereof may be altered, amended, waived, canceled or modified, except by a written instrument executed and acknowledged by the Lender's duly authorized officer; and

(19) that this Guaranty and all documents which have been or may be hereinafter furnished by the Guarantor to the Lender may be reproduced by the Lender by any photographic, photostatic, microfilm, xerographic or similar process, and that any such reproduction shall be admissible in evidence as the original itself in any judicial or administrative proceeding (whether or not the original is in existence and whether or not such reproduction was made in the regular course of business).

Guarantor waives: notice of acceptance hereof, presentment and protest of any instrument and notice thereof, notice of default and all other notices to which the Guarantor might otherwise be entitled; and any and all defenses, including without limitation, any and all defenses which the Borrower or any other party may have to the fullest extent permitted by law, any defense to this Guaranty based on impairment of collateral or on suretyship defenses of every type; any right to exoneration or marshaling. To the maximum extent permitted by law, Guarantor waives and terminates any homestead rights and/or exemptions respecting any premises under the provisions of any applicable homestead law, including without limitation, Section 5206 of the Civil Practice Law and Rules of New York. To the extent that it lawfully may, Guarantor hereby further agrees not to invoke any law relating to the marshaling of collateral which might cause delay in or impede the enforcement of the Lender's rights under this Guaranty or otherwise respecting the guaranteed obligations, and to the extent that it lawfully may do so, the Guarantor hereby irrevocably waives the benefits of all such laws. Except as otherwise provided by applicable law, the Lender shall have no duty as to the collection or protection of any collateral, if any, securing the guaranteed obligations beyond the safe custody thereof.

Guarantor will from time to time execute and deliver to the Lender, and take or cause to be taken, all such other further action as the Lender may request in order to effect and confirm or vest more securely in the Lender all the rights contemplated in this Guaranty (including, without limitation, to correct clerical errors) or respecting any of the obligations guaranteed hereby or to comply with applicable statute or law.

This Guaranty shall be governed by the laws of the State of New York, shall be binding upon the heirs, executors, administrators, successors and assigns of the Guarantor and shall inure to the benefit of the Lender's successors and assigns.

If any provision of this Guaranty is found to be invalid, illegal or unenforceable, the validity of the remainder of the Guaranty shall not be affected.

Guarantor irrevocably submits to the nonexclusive jurisdiction of any Federal or state court sitting in New York, over any suit, action or proceeding arising out of or relating to this Guaranty. Guarantor irrevocably waives, to the fullest extent it may effectively do so under applicable law, any objection it may now or hereafter have to the laying of the venue of any such suit, action or proceeding brought in any such court and any claim that the same has been brought in an inconvenient forum. Guarantor hereby

3

Case 1:20-cv-06369-FB-TAM   Document 86-5   Filed 12/10/23   Page 43 of 74 PageID #: 1625

consents to any and all process which may be served in any such suit, action or proceeding, (i) by mailing a copy thereof by registered and certified mail, postage prepaid, return receipt requested, to the Guarantor's address shown below or as notified to the Lender and (ii) by serving the same upon the Guarantor in any other manner otherwise permitted by law, and agrees that such service shall in every respect be deemed effective service upon the Guarantor.

**GUARANTOR AND LENDER EACH HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY, AND AFTER AN OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL, (A) WAIVE ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING IN CONNECTION WITH THIS GUARANTY, THE OBLIGATIONS GUARANTEED HEREBY, ALL MATTERS CONTEMPLATED HEREBY AND DOCUMENTS EXECUTED IN CONNECTION HEREWITH AND (B) AGREE NOT TO SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CAN NOT BE, OR HAS NOT BEEN WAIVED. GUARANTOR CERTIFIES THAT NEITHER THE LENDER NOR ANY OF ITS REPRESENTATIVES, AGENTS OR COUNSEL HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE LENDER WOULD NOT IN THE EVENT OF ANY SUCH PROCEEDING SEEK TO ENFORCE THIS WAIVER OF RIGHT TO TRIAL BY JURY.**

Executed and dated **January 11, 2016**.

Guarantor:

Wing Fung Chau, individually

Address:     **3237 214th Place**
             **Bayside, New York**
             **11361**

4

© 2016 Medici, a division of Wolters Kluwer Financial Services

STATE OF NEW YORK
DEPARTMENT OF STATE
ONE COMMERCE PLAZA, 99 WASHINGTON AVENUE
ALBANY, NY 12231-0001

ANDREW M. CUOMO                                              ROSSANA ROSADO
GOVERNOR                                              ACTING SECRETARY OF STATE

### FILING ACKNOWLEDGMENT
February 16, 2016

VELOCITY COMMERCIAL CAPITAL, LLC
PO BOX 7089
WESTLAKE VILLAGE CA 91359-7089

Attached is the acknowledgment copy of your recently submitted filing. This filing consists of a total of 3 pages; however, only the first page of the filed document is returned as part of this acknowledgment. This document has been filed with the New York State Department of State, Uniform Commercial Code Division.

The Financing Statement has been assigned Filing Number: 201602090063528, Filing Date: 02/09/2016 and is currently reflected in our automated database as follows:

*Debtor's Name & Address*

82-25 QUEENS MANSION LLC
86-31 WHITNEY AVE 1ST FL
ELMHURST NY 11377

*Secured Party's Name & Address*

VELOCITY COMMERCIAL CAPITAL, LLC
PO BOX 7089
WESTLAKE VILLAGE CA 91359-7089

This filing will lapse on 02/09/2021, unless continued. We encourage filers to take full advantage of the six-month window of opportunity in which to file a Financing Statement Amendment (Continuation). Submission of your documents at the onset of the six-month window will allow ample time to rectify potential filing errors and help to assure timely recording of your filing.

If you have any concerns regarding the way this document is recorded, please contact one of our Customer Service Representatives at (518) 473-2492, or respond in writing to the UCC Data Processing Unit at the address indicated above.

Sincerely,

Uniform Commercial Code Division                            REF #: 101633
Data Processing Unit

IOI633          2016 FEB -9 A 9: 01

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

| A. NAME & PHONE OF CONTACT AT FILER [optional] |
|---|

B. SEND ACKNOWLEDGMENT TO:   (Name and Address)

> Velocity Commercial Capital, LLC
> PO Box 7089
> Westlake Village, CA  91359-7089
> Attn: Post-Closing Dept.

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME |
|---|
| 82-25 Queens Mansion LLC |

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 3237 214th PL | Bayside | NY | 11361 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| Not Applicable | | LLC | New York | ☐ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME |
|---|
| |

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| Not Applicable | | | | ☐ NONE |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME |
|---|
| Velocity Commercial Capital, LLC |

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| PO Box 7089 | Westlake Village | CA | 91359-7089 | USA |

4. This FINANCING STATEMENT covers the following collateral:

**ALL ASSETS OF THE DEBTOR, INCLUDING, WITHOUT LIMITATION, ALL OF THE COLLATERAL DESCRIBED ON EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.**

Property Address: 82-25 Queens Boulevard 1B, Elmhurst, New York 11373

| 5. ALTERNATIVE DESIGNATION [if applicable]: | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.     Attach Addendum [if applicable] | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]     [optional] | | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |

8. OPTIONAL FILER REFERENCE DATA

To be filed with:  New York Secretary of State

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

# FILING NUMBER:  201602090063528

## *Westcor Land Title Insurance Company*

### SCHEDULE A
### DESCRIPTION OF PREMISES

**Title No.**     2015-06-0001316
**Policy No.**    LP-36-NY1105-4564855

The unit known as Unit 1B (Hereinafter the "Unit") in the premises known as and by QUEENS MANSION CONDOMINIUM and located at 82-25 Queens Boulevard, Elmhurst, Queens County, City and State of New York, designated and described as Unit 1B in the Declaration establishing a plan for condominium ownership of the Building and the Land on which it is erected (Hereinafter the "Property") made by 82-25 Queens Mansion LLC under the Condominium Act of the State of New York (Article 9-B of the Real Property Law of the State of New York), dated September 4, 2014, recorded in the Office of the City Register of the City of New York on the 1st day of October, 2014 in CRFN No.: 2014000323486 (Hereinafter the "Declaration"), and also designated as Tax Lot 1102 in Block 1542 on the Tax Map of the Real Property Assessment Department of the State of New York, County of Queens.

TOGETHER with a(n) 6.8780% undivided interest for Unit 1B in the common elements of the Property (Hereinafter the "Common Elements").

AS TO BASE LOT 40:

ALL that certain plot, piece or parcel of land, with all the buildings and improvements thereon, situate, lying and being in the Borough and County of Queens, City and State of New York, bounded and described as follows:

BEGINNING at a point on the northerly side of Queens Boulevard, distant 222.67 feet westerly from the corner formed by the intersection of the northerly side of Queens Boulevard and the westerly side of Van Loon Place, now known as Van Loon Street;

RUNNING thence N 81 degrees 8 minutes 21 seconds W, 101.21 feet to the southerly side of 51st Avenue;

THENCE parallel with Queens Boulevard, 80.97 feet to the southerly side of 51st Avenue;

THENCE S 81 degrees 8 minutes 21 seconds E, 101.21 feet to the northerly side of Queens Boulevard;

THENCE along the northerly side of Queens Boulevard, 80.97 feet to the point or place of BEGINNING.

SAID premises being known as and by the street address 82-25 Queens Boulevard, Elmhurst, New York and is situated in Block 1542 Base Lot 40.

Sec:          Block: 1542          Lot: 1102

**SCHEDULE A**
**A.L.T.A 2006 LOAN POLICY**

**421744**        **2016 Jun 08 PM12:24**

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

   30699 Russell Ranch Rd
   Westlake Village, CA 91362, USA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE # **201602090063528 Filedate: 09-FEB-16**

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☒ **ASSIGNMENT** (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c and also give name of assignor in item 9.

5. **AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

☐ CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c.　　☐ DELETE name: Give record name to be deleted in item 6a or 6b.　　☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable).

6. CURRENT RECORD INFORMATION:

6a. ORGANIZATION'S NAME **Velocity Commercial Capital, LLC**

OR

| 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

7. CHANGED (NEW) OR ADDED INFORMATION:

7a. ORGANIZATION'S NAME **U.S. Bank National Association, as Trustee for Velocity Commercial Capital Loan Trust 2016-1**

OR

| 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 7c. MAILING ADDRESS **190 South Lasalle Street** | CITY **Chicago** | STATE **IL** | POSTAL CODE **60603** | COUNTRY **USA** |
|---|---|---|---|---|

| 7d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any | ☐ NONE |
|---|---|---|---|---|---|

8. **AMENDMENT (COLLATERAL CHANGE):** check only one box.
Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Secured Party, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

9a. ORGANIZATION'S NAME **VELOCITY COMMERCIAL CAPITAL, LLC**

OR

| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

10. OPTIONAL FILER REFERENCE DATA **3145004522**

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 05/22/02)

**Filing Number 201606088227746**

**0405807**    **2021 Feb 08 PM01:00**

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

30699 Russell Ranch Road, Suite 295
Westlake Villave, CA 91362, USA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE # 201602090063528 Filedate: 09-FEB-16 | 1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☒ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☐ ASSIGNMENT (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c and also give name of assignor in item 9.

5. AMENDMENT (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

☐ CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c.    ☐ DELETE name: Give record name to be deleted in item 6a or 6b.    ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable).

6. CURRENT RECORD INFORMATION:

| 6a. ORGANIZATION'S NAME  U.S. Bank National Association, as Trustee for Velocity Commercial Capital Loan Trust 2016-1 | | | |
|---|---|---|---|
| OR 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

7. CHANGED (NEW) OR ADDED INFORMATION:

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 7d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any | ☐ NONE |
|---|---|---|---|---|---|

8. AMENDMENT (COLLATERAL CHANGE): check only one box.
Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| 9a. ORGANIZATION'S NAME  U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR VELOCITY COMMERCIAL CAPITAL LOAN TRUST 2016-1 | | | |
|---|---|---|---|
| OR 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 05/22/02)

**Filing Number 202102088060694**

FILED: QUEENS COUNTY CLERK 02/12/2021 03:50 PM
NYSCEF DOC. NO. 1
RECEIVED NYSCEF: 02/12/2021

# EXHIBIT C

2/94-A

## STANDARD FORM OF STORE LEASE
### The Real Estate Board of New York, Inc.

Agreement of Lease made as of this _____ 1B day of August 2015, between 82-25 Queens Mansion LLC a limited liability company organized and existing under the laws of the State of New York, having an address at 86-22 Broadway, 2nd Floor, Elmhurst, NY 11373,

party of the first part, hereinafter referred to as OWNER, and Simply Milan, Inc., a domestic corporation organized and existing under the laws of the State of New York with an office address of 85-20 88th Street, 2nd Floor, Woodhaven, NY 11421

party of the second part, hereinafter referred to as TENANT,

**Witnesseth:** Owner hereby leases to Tenant and Tenant hereby hires from Owner in the building known as 82-25 Queens Boulevard, Unit 1A & 1B, Elmhurst, NY 11373, in the Borough of Queens, City of New York, for the term of:

### TEN (10) YEARS
See Rider annexed hereto and made a part hereof for Rent Schedules

which Tenant agrees to pay in lawful money of the United States which shall be legal tender in payment of all debts and dues, public and private, at the time of payment, in equal monthly installments in advance on the first day of each month during said term, at the office of Owner or such other place as Owner may designate, without any set off or deduction whatsoever, except that Tenant shall pay the first monthly installment(s) on the execution hereof (unless this lease be a renewal). In the event that, at the commencement of the term of this lease, or thereafter, Tenant shall be in default in the payment of rent to Owner pursuant to the terms of another lease with Owner or with Owner's predecessor in interest, Owner may at Owner's option and without notice to Tenant add the amount of such arrears to any monthly installment of rent payable hereunder and the same shall be payable to Owner as additional rent.

The parties hereto, for themselves, their heirs, distributees, executors, administrators, legal representatives, successors and assigns, hereby covenant as follows:

**Rent:** 1. Tenant shall pay the rent as above and as hereinafter provided.

**Occupancy:** 2. Tenant shall use and occupy demised premises for use for Furniture and Home Accessory Store ONLY and for no other purpose. Tenant shall at all times conduct its business in a high grade and reputable manner, shall not violate Article 37 hereof, and shall keep show windows and signs in a neat and clean condition.

**Alterations:** 3. Tenant shall make no changes in or to the demised premises of any nature without Owner's prior written consent. Subject to the prior written consent of Owner, and to the provisions of this Article, Tenant, at Tenant's expense, may make alterations, installations, additions or improvements which are non-structural and which do not affect utility services or plumbing and electrical lines, in or to the interior of the demised premises by using contractors or mechanics first approved in each instance by Owner. Tenant shall, before making any alterations, additions, installations or improvements, at its expense, obtain all permits, approvals and certificates required by any governmental or quasi-governmental bodies and (upon completion) certificates of final approval thereof and shall deliver promptly duplicates of all such permits, approvals and certificates to Owner and Tenant agrees to carry and will cause Tenant's contractors and sub-contractors to carry such workmen's compensation, general liability, personal and property damage insurance as Owner may require, if any mechanic's lien is filed against the demised premises, or the building of which the same forms a part, for work claimed to have been done for, or materials furnished to, Tenant, whether or not done pursuant to this article, the same shall be discharged by Tenant within 30 days thereafter, at Tenant's expense, by payment or filing the bond required by law. All fixtures and all paneling, partitions, railings and like installations, installed in the premises at any time, either by Tenant or by Owner on Tenant's behalf, shall, upon installation, become the property of Owner and shall remain upon and be surrendered with the demised premises unless Owner, by notice to Tenant no later than twenty days prior to the date fixed as the termination of this lease, elects to relinquish Owner's rights thereto and to have them removed by Tenant, in which event, the same shall be removed from the premises by Tenant prior to the expiration of this lease, at Tenant's expense. Nothing in this Article shall be construed to give Owner title to or to prevent Tenant's removal of trade fixtures, moveable office furniture and equipment, but upon removal of any such from the premises or upon removal of other installation as may be required by Owner, Tenant shall immediately and at its expense, repair and restore the premises to the condition existing prior to installation and repair any damage to the demised premises or the building due to such removal. All property permitted or required to be removed by Tenant at the end of the term remaining in the premises after Tenant's removal shall be deemed abandoned and may, at the election of Owner, either be retained as Owner's property or may be removed from the premises by Owner at Tenant's expense.

**Repairs:** 4. Tenant shall maintain and repair the Demised Premises, both exterior and interior, except that if Owner allows Tenant to erect on the outside of the building a sign or signs, or a hoist, lift or sidewalk elevator for the exclusive use of Tenant, Tenant shall maintain such exterior installations in good appearance and shall cause the same to be repaired in a good and workmanlike manner and shall make all repairs thereto necessary to keep same in good order and condition, at Tenant's own cost and expense, and shall cause the same to be covered by the insurance provided for hereafter in Article 8. Tenant shall, throughout the term of this lease, take good care of the demised premises and the fixtures and appurtenances therein, and the sidewalks adjacent thereto, and at its sole cost and expense, make all non-structural repairs thereto as and when needed to preserve them in good working order and condition, reasonable wear and tear, obsolescence and damage from the elements, fire or other casualty, excepted. If the demised premises be or become infested with vermin, Tenant shall at Tenant's expense, cause the same to be exterminated from time to time to the satisfaction of Owner. Except as specifically provided in Article 9 or elsewhere in this lease, there shall be no allowance to the Tenant for the diminution of rental value and no liability on the part of Owner by reason of inconvenience, annoyance or injury to business arising from Owner, Tenant or others making or failing to make any repairs, alterations, additions or improvements in or to any portion of the building including the erection or operation of any crane, derrick or sidewalk shed, or in or to the demised premises or the fixtures, appurtenances or equipment thereof. It is specifically agreed that Tenant shall not be entitled to any set off or reduction of rent by reason of any failure of Owner to comply with the covenants of this or any other article of this lease. Tenant's sole remedy at law in such instance will be by way of an action for damages for breach of contract. The provisions of this Article 4 with respect to the making of repairs shall not apply in the case of fire or other casualty which are dealt with in Article 9 hereof.

**Window Cleaning:** 5. Tenant will not clean nor require, permit, suffer or allow any window in the demised premises to be cleaned from the outside in violation of Section 202 of the New York State Labor Law or any other applicable law or of the Rules of the Board of Standards and Appeals, or of any other Board or body having or asserting jurisdiction.

**Requirements of Law, Fire Insurance:** 6. Prior to the commencement of the lease term, if Tenant is then in possession, and at all times thereafter, Tenant, at Tenant's sole cost and expense, shall promptly comply with all present and future laws, orders and regulations of all state, federal, municipal and local governments, departments, commissions and boards and any direction of any public officer pursuant to law, and all orders, rules and regulations of the New York Board of Fire Underwriters or the Insurance Services Office, or any similar body which shall impose any violation, order or duty upon Owner or Tenant with respect to the demised premises, and with respect to the portion of the sidewalk adjacent to the premises, if the premises are on the street level, whether or not arising out of Tenant's use or manner of use thereof, or with respect to the building if arising out of Tenant's use or manner of use of the premises or the building (including the use permitted under the lease). Except as provided in Article 29 hereof, nothing herein shall require Tenant to make structural repairs or alterations unless Tenant has by its manner of use of the demised premises or method of operation therein, violated any such laws, ordinances, orders, rules, regulations or requirements with respect thereto. Tenant shall not do

or permit any act or thing to be done in or to the demised premises which is contrary to law, or which will invalidate or be in conflict with public liability, fire or other policies of insurance at any time carried by or for the benefit of Owner. Tenant shall pay all costs, expenses, fines, penalties or damages, which may be imposed upon Owner by reason of Tenant's failure to comply with the provisions of this article. If the fire insurance rate shall, at the beginning of the lease or at any time thereafter, be higher than it otherwise would be, then Tenant shall reimburse Owner, as additional rent hereunder, for that portion of all fire insurance premiums thereafter paid by Owner which shall have been charged because of such failure by Tenant, to comply with the terms of this article. In any action or proceeding wherein Owner and Tenant are parties, a schedule or "make-up" of rate for the building or demised premises issued by a body making fire insurance rates applicable to said premises shall be conclusive evidence of the facts therein stated and of the several items and charges in the fire insurance rate then applicable to said premises.

**Subordination:** 7. This lease is subject and subordinate to all ground or underlying leases and to all mortgages which may now or hereafter affect such leases or the real property of which demised premises are a part and to all renewals, modifications, consolidations, replacements and extensions of any such underlying leases and mortgages. This clause shall be self-operative and no further instrument of subordination shall be required by any ground or underlying lessor or by any mortgagee, affecting any lease or the real property of which the demised premises are a part. In confirmation of such subordination, Tenant shall from time to time execute promptly any certificate that Owner may request.

**Tenant's Liability:** 8. Owner or its agents shall not be liable for any damage to property of Tenant or of others

Insurance . . . . . . . . entrusted to employees of the building nor for loss
Property Loss . . . . . . . of, or damage to any property of Tenant by theft
Damage . . . . . . . . . or other, while, nor for any injury or damage to
Indemnity . . . . . . . . . persons or property resulting from any cause of
whatsoever nature, unless caused by or due to the negligence of Owner, its agents, servants or employees. Owner or its agent will not be liable for any such damage caused by other tenants or persons in, upon or about said building or caused by operations in construction of any private, public or quasi public work. Tenant agrees, at Tenant's sole cost and expense, to maintain general public liability insurance in standard form in favor of Owner and Tenant against claims for bodily injury or death or property damage occurring in or upon the demised premises. Effective from the date Tenant enters into possession and during the term of this lease. Such insurance shall be in an amount and with carriers acceptable to the Owner. Such policy or policies shall be delivered to the Owner. On Tenant's default in obtaining or delivering any such policy or policies or failure to pay the charges therefore, Owner may secure or pay the charges for any such policy or policies and charge the Tenant as additional rent therefore. Tenant shall indemnify and save harmless Owner against and from all liabilities, obligations, damages, penalties, claims, costs and expenses for which Owner shall not be reimbursed by insurance, including reasonable attorneys fees, paid, suffered or incurred as a result of any breach by Tenant, Tenant's agents, contractors, employees, invitees, or licensees, of any covenant on condition of this lease, or the carelessness, negligence or improper conduct of the Tenant, Tenant's agents, contractors, employees, invitees or licensees. Tenant's liability under this lease extends to the acts and omissions of any subtenant, and any agent, contractor, employee, invitee or licensee of any subtenant. In case any action or proceeding is brought against Owner by reason of any such claim, Tenant, upon written notice from Owner, will, at Tenant's expense, resist or defend such action or proceeding by counsel approved by Owner in writing, such approval not to be unreasonably withheld.

Destruction . . . . . 9. (a) If the demised premises or any part thereof
Fire . . . . . . . . . . . shall be damaged by fire or other casualty, and
Other . . . . . . . . . Tenant shall give immediate notice thereof to
Casualty . . . . . . . Owner and this lease shall continue in full force and effect except as hereinafter set forth. (b) If the demised premises are partially damaged or rendered partially unusable by fire or other casualty, the damages shall be repaired by and at the expense of Owner and the rent and other items of additional rent, until such repair shall be substantially completed, shall be apportioned from the day following the casualty according to the part of the premises which is usable. (c) If the demised premises are totally damaged or rendered wholly unusable by fire or other casualty, then the rent and other items of additional rent as hereinafter expressly provided shall be proportionately paid up to the time of the casualty and thereafter shall cease until the date when the premises shall have been repaired and restored by Owner (or sooner reoccupied in part by Tenant then rent shall be apportioned as provided in subsection (b) above), subject to Owner's right to elect not to restore the same as hereinafter provided. (d) If the demised premises are rendered wholly unusable or (whether or not the demised premises are damaged in whole or in part) if the building shall be so damaged that Owner shall decide to demolish it or to rebuild it, then, in any of such events, Owner may elect to terminate this lease by written notice to Tenant given within 90 days after such fire or casualty or 30 days after adjustment of the insurance claim for such fire or casualty, whichever is sooner, specifying a date for the expiration of the lease, which date shall not be more than 60 days after the giving of such notice, and upon the date specified in such notice the term of this lease shall expire as fully and completely as if such date were the date set forth above for the termination of this lease and Tenant shall forthwith quit, surrender and vacate the premises without prejudice however, to Owner's rights and remedies against Tenant under the lease provisions in effect prior to such termination, and any rent owing shall be paid up to such date and any payments of rent made by Tenant which were on account of any period subsequent to such date shall be returned to Tenant. Unless Owner shall serve a termination notice as provided for herein, Owner shall make the repairs and restorations under the conditions of (b) and (c) hereof, with all reasonable expedition subject to delays due to adjustment of insurance claims, labor troubles and causes beyond Owner's control. After any casualty, Tenant shall cooperate with Owner's restoration by removing from the premises as promptly as reasonably possible, all of Tenant's salvageable inventory and movable equipment, furniture, and other property. Tenant's liability for rent shall resume Thirty (30) days after written notice from Owner that the premises are substantially ready for Tenant's occupancy. (e) Nothing contained hereinabove shall relieve Tenant from liability that may exist as a result of damage from fire or other casualty. Notwithstanding the foregoing, including Owner's obligation to restore under subparagraph (b) above, each party shall look first to any insurance in its favor before making any claim against the other party for recovery for loss or damage resulting from fire or other casualty, and to the extent that such insurance is in force and collectible and to the extent permitted by law, Owner and Tenant each hereby releases and waives all right of recovery with respect to subparagraphs (b), (d) and (e) above, against the other or any one claiming through or under each of them by way of subrogation or otherwise. The release and waiver herein referred to shall be deemed to include any loss or damage to the demised premises and/or to any personal property, equipment, trade fixtures, goods and merchandise located therein. The foregoing release and waiver shall be in force only if both releasors' insurance policies contain a clause providing that such a release or waiver shall not invalidate the insurance. Tenant acknowledges that Owner will not carry insurance on Tenant's furniture and/or furnishings or any fixtures or equipment, improvements, or appurtenances removable by Tenant and agrees that Owner will not be obligated to repair any damage thereto or replace the same. (f) Tenant hereby waives the provisions of Section 227 of the Real Property Law and agrees that the provisions of this article shall govern and control in lieu thereof.

Eminent . . . . . . 10. If the whole or any part of the demised premises
Domain . . . . . . . shall be acquired or condemned by Eminent Domain for any public or quasi public use or purpose, then and in that event, the term of this lease shall cease and terminate from the date of title vesting in such proceeding and Tenant shall have no claim for the value of any unexpired term of said lease. Tenant shall have the right to make an independent claim to the condemning authority for the value of Tenant's moving expenses and personal property, trade fixtures and equipment, provided Tenant is entitled pursuant to the terms of the lease to remove such property, trade fixtures and equipment at the end of the term and provided further such claim does not reduce Owner's award.

Assignment, . . . . . 11. Tenant, for itself, its heirs, distributees, execu-
Mortgage, . . . . . . administrators, legal representatives,
Etc. . . . . . . . . . . successors and assigns expressly covenants that it shall not assign, mortgage or encumber this agreement, nor underlet, or suffer or permit the demised premises or any part thereof to be used by others, without the prior written consent of Owner in each instance. Transfer of the majority of the stock of a corporate tenant or the majority partnership interest of a partnership tenant shall be deemed an assignment. If this lease be assigned, or if the demised premises or any part thereof be underlet or occupied by anybody other than Tenant, Owner may, after default by Tenant, collect rent from the assignee, undertenant, or occupant, and apply the net amount collected to the rent herein reserved, but no such assignment, underletting, occupancy or collection shall be deemed a waiver of the covenant, or the acceptance of the assignee, undertenant or occupant as tenant, or a release of Tenant from the further performance by Tenant of covenants on the part of Tenant herein contained. The consent by Owner to an assignment or underletting shall not in any wise be construed to relieve Tenant from obtaining the express consent in writing of Owner to any further assignment or underletting.

Electric Current . . 12. Electricity is to be procured by Tenant as per the rider attached hereto and made a part hereof. Tenant covenants and agrees that at all times its use of electric current shall not exceed the capacity of existing feeders to the building or the risers or wiring installation and Tenant may not use any electrical equipment which, in Owner's opinion, reasonably exercised, will overload such installations or interfere with the use thereof by other tenants of the building. The change at any time of the character of electric service shall in no wise make Owner liable or responsible to Tenant, for any loss, damage or expense which Tenant may sustain.

Access to . . . . . . 13. Owner or Owner's agents shall have the right
Premises . . . . . . . (but shall not be obligated) to enter the demised premises in any emergency at any time, and, at other reasonable times, to examine the same and to make such repairs, replacements and improvements as Owner may deem necessary and reasonably desirable to any portion of the building or which Owner may elect to perform, in the premises, following Tenant's failure to make repairs or perform any work which Tenant is obligated to perform under this lease, or for the purpose of complying with laws, regulations and other directions of governmental authorities. Tenant shall permit Owner to use and maintain and replace pipes and conduits in and through the demised premises and to erect new pipes and conduits therein, provided they are concealed within the walls, floors or ceiling, wherever practicable. Owner may, during the progress of any work in the demised premises, take all necessary materials and equipment into said premises without the same constituting an eviction nor shall the Tenant be entitled to any abatement of rent while such work is in progress nor to any damages by reason of loss or interruption of business or otherwise. Landlord shall endeavor to perform any such work so as not to unreasonably interfere with Tenant. Throughout the term hereof Owner shall have the right to enter the demised premises at reasonable hours for the purpose of showing the same to prospective purchasers or mortgagees of the building, and during the last six months of the term for the purpose of showing the same to prospective tenants and may, during said six months period, place upon the demised premises the usual notice "To Let" and "For Sale" which notices Tenant shall permit to remain thereon without molestation. If Tenant is not present to open and permit an entry into the demised premises, Owner or Owner's agents may enter the same whenever such entry may be necessary or permissible by master key or forcibly and provided reasonable care is exercised to safeguard Tenant's property, such entry shall not render Owner or its agents liable there for, nor in any event shall the obligations of Tenant hereunder be affected. If during the last month of term Tenant shall have removed all or substantially all of Tenant's property there from, Owner may immediately enter, alter, renovate or redecorate the demised premises without limitation or abatement of rent, or incurring liability to Tenant for any compensation and such act shall have no effect on this lease or, Tenant's obligations hereunder. Owner shall have the right at any time, without the same constituting an eviction and without incurring liability to Tenant there for to change the arrangement and/or location of public entrances, passageways, doors, doorways, corridors, elevators, stairs, toilets, or other public parts of the building and to change the name, number or designation by which the building may be known. For non-emergency access, Landlord will provide reasonable notice and entry will be at a reasonable time.

Vault, . . . . . . . . 14. No vaults, vault space or area, whether or not
Vault Space, . . . . . . enclosed or covered, not within the property line of
Area . . . . . . . . . the building is leased hereunder, anything contained in or indicated on any sketch, blue print or plan, or anything contained elsewhere in this lease to the contrary notwithstanding. Owner makes no representation as to the location of the property line of the

**FILED: QUEENS COUNTY CLERK 02/12/2021 03:50 PM**
INDEX NO. 703462/2021

NYSCEF DOC. NO. 1    Case 1:20-cv-06369-FB-TAM  Document 80-5  Filed 12/10/23  Page 52 of 74 PageID #: 1634
RECEIVED NYSCEF: 02/12/2021

building. All vaults and vault space and all such areas not within the property line of the building, which Tenant may be permitted to use and or occupy, is to be used and/or occupied under a revocable license, and if any such license be revoked, or if the amount of such space or area be diminished or required by any federal, state or municipal authority or public utility, Owner shall not be subject to any liability nor shall Tenant be entitled to any compensation or diminution or abatement of rent, nor shall such revocation, diminution or requisition be deemed constructive or actual eviction. Any tax, fee or charge of municipal authorities for such vault or area shall be paid by Tenant.

**Occupancy:** 15. Tenant will not at any time use or occupy the demised premises in violation of Articles 2 or 37 hereof, or of the certificate of occupancy issued for the building of which the demised premises are a part. Tenant has inspected the premises and accepts them as is, subject to the riders annexed hereto with respect to Owner's work, if any. In any event, Owner makes no representation as to the condition of the premises and Tenant agrees to accept the same subject to violations whether or not of record.

**Bankruptcy:** 16. (a) Anything elsewhere in this lease to the contrary notwithstanding, this lease may be cancelled by Landlord by the sending of a written notice to Tenant within a reasonable time after the happening of any one or more of the following events: (1) the commencement of a case in bankruptcy or under the laws of any state naming Tenant as the debtor; or (2) the making by Tenant of an assignment or any other arrangement for the benefit of creditors under any state statute. Neither Tenant nor any person claiming through or under Tenant, or by reason of any statute or order of court, shall thereafter be entitled to possession of the premises demised but shall forthwith quit and surrender the premises, if this lease shall be assigned in accordance with its terms, the provisions of this Article 16 shall be applicable only to the party then owning Tenant's interest in this lease.

(b) It is stipulated and agreed that in the event of the termination of this lease pursuant to (a) hereof, Owner shall forthwith, notwithstanding any other provisions of this lease to the contrary, be entitled to recover from Tenant as and for liquidated damages an amount equal to the difference between the rent reserved hereunder for the unexpired portion of the term demised and the fair and reasonable rental value of the demised premises for the same period. In the computation of such damages the difference between any installment of rent becoming due hereunder after the date of termination and the fair and reasonable rental value of the demised premises for the period for which such installment was payable shall be discounted to the date of termination at the rate of four percent (4%) per annum. If such premises or any part thereof be re-let by the Owner for the unexpired term of said lease, or any part thereof, before presentation of proof of such liquidated damages to any court, commission or tribunal, the amount of rent reserved upon such re-letting shall be deemed to be the fair and reasonable rental value for the part of the whole of the premises so re-let during the term of the re-letting. Nothing herein contained shall limit or prejudice the right of the Owner to prove for and obtain as liquidated damages by reason of such termination, an amount equal to the maximum allowed by any statute or rule of law in effect at the time when, and governing the proceedings in which, such damages are to be proved, whether or not such amount be greater, equal to, or less than the amount of the difference referred to above.

**Default:** 17. (1) If Tenant defaults in fulfilling any of the covenants of this lease other than the covenants for the payment of rent or additional rent, or if the demised premises become vacant or deserted, or if any execution or attachment shall be issued against Tenant or any of Tenant's property whereupon the demised premises shall be taken or occupied by someone other than Tenant; or if this lease be rejected under Section 365 of Title II of the U.S. Code (Bankruptcy Code); or if Tenant shall fail to move into or take possession of the premises within thirty (30) days after the commencement of the term of this lease, of which fact Owner shall be the sole judge, then, in any one or more of such events, upon Owner serving a written fifteen (15) days notice upon Tenant specifying the nature of said default and upon the expiration of said fifteen (15) days, if Tenant shall have failed to comply with or remedy such default, or if the said default or omission complained of shall be of a nature that the same cannot be completely cured or remedied within said fifteen (15) day period, and if Tenant shall not have diligently commenced during such default within such fifteen (15) day period, and shall not thereafter with reasonable diligence and in good faith proceed to remedy or cure such default, then Owner may serve a written five (5) days notice of cancellation of this lease upon Tenant, and upon the expiration of said five (5) days, this lease and the term there under shall end and expire as fully and completely as if the expiration of such five (5) day period were the day herein definitely fixed for the end and expiration of this lease and the term thereof and Tenant shall then quit and surrender the demised premises to Owner but Tenant shall remain liable as hereinafter provided.

(2) If the notice provided for in (1) hereof shall have been given, and the term shall expire as aforesaid; or if Tenant shall make default in the payment of the rent reserved herein or any item of additional rent herein mentioned or any part of either or in making any other payment herein required; then and in any of such events Owner may without notice, re-enter the demised premises either by force or otherwise, and dispossess Tenant by summary proceedings or otherwise, and the legal representative of Tenant or other occupant of demised premises and remove their effects and hold the premises as if this lease had not been made, and Tenant hereby waives the service of notice of intention to re-enter or to institute legal proceedings to that end.

**Remedies of** 18. In case of any such default, re-entry, expiration
**Owner and** and/or dispossess by summary proceedings or
**Waiver of** other wise, (a) the rent, and additional rent,
**Redemption:** shall become due thereupon and be paid up to the time of such re-entry, dispossess and/or judgment.

(b) Owner may re-let the premises or any part or parts thereof, either in the name of Owner or otherwise, for a term or terms, which may at Owner's option be less than or exceed the period which would otherwise have constituted the balance of the term of this lease and may grant concessions or free rent or charge a higher rental than that of this lease, and/or (c) Tenant or the legal representatives of Tenant shall also pay Owner as liquidated damages for the failure of Tenant to observe and perform said Tenant's covenants herein contained, any deficiency between the rent hereby reserved and/or covenanted to be paid and the net amount, if any, of the rents collected on account of the subsequent

lease or leases of the demised premises for each month of the period which would otherwise have constituted the balance of the term of this lease. The failure of Owner to re-let the premises or any part or parts thereof shall not release or affect Tenant's liability for damages. In computing such liquidated damages there shall be added to the said deficiency such expenses as Owner may incur in connection with re-letting, such as legal expenses, reasonable attorneys' fees, brokerage, advertising and for keeping the demised premises in good order or for preparing the same for re-letting. Any such liquidated as damages shall paid in monthly installments by Tenant on the rent day specified in this lease and any suit brought to collect the amount of the deficiency for any month shall not prejudice in any way the rights of Owner to collect the deficiency for any subsequent month by a similar proceeding. Owner, in putting the demised premises in good order or preparing the same for re-rental may, at Owner's option, make such alterations, repairs, replacements, and/or decorations in the demised premises as Owner, in Owner's sole judgment, considers advisable and necessary for the purpose of re-letting the demised premises, and the making of such alterations, repairs, replacements, and/or decorations shall not operate or be construed to release Tenant from liability. Owner shall in no event be liable in any way whatsoever for failure to re-let the demised premises, or in the event that the demised premises are re-let, for failure to collect the rent thereof under such re-letting, and in no event shall Tenant be entitled to receive any excess, if any, of such net rent collected over the sums payable by Tenant to Owner hereunder. In the event of a breach or threatened breach by Tenant of any of the covenants or provisions hereof, Owner shall have the right of injunction and the right to invoke any remedy allowed at law or in equity as if re-entry, summary proceedings and other remedies were not herein provided for. Mention in this lease of any particular remedy, shall not preclude Owner from any other remedy, in law or in equity. Tenant hereby expressly waives any and all rights of redemption granted by or under any present or future laws.

**Fees and** 19. If Tenant shall default in the observance or
**Expenses:** performance of any term or covenant on Tenant's part to be observed or performed under or by virtue of any of the terms or provisions in any article of this lease, after notice if required and upon expiration of any applicable grace period if any, (except in an emergency), then, unless otherwise provided elsewhere in this lease, Owner may immediately or at any time thereafter and without notice perform the obligation of Tenant there under, and if Owner, in connection therewith or in connection with any default by Tenant in the covenant to pay rent hereunder, makes any expenditures or incurs any obligations for the payment of money, including but not limited to reasonable attorney's fees, in instituting, prosecuting or defending any actions or proceeding and prevails in any such action or proceeding, such sums so paid or obligations incurred with interest and costs shall be deemed to be additional rent hereunder and shall be paid by Tenant to Owner within ten (10) days of rendition of any bill or statement to Tenant there for, and if Tenant's lease term shall have expired at the time of making of such expenditures or incurring of such obligations, such sums shall be recoverable by Owner as damages.

**No Repre-** 20. Neither Owner nor Owner's agent have made
**sentations** any representations or promises with respect to the
**Owner:** physical condition of the building, the land upon which it is erected or the demised premises, the rents, leases, expenses of operation, or any other matter or thing affecting or related to the premises except as herein expressly set forth and no rights, easements or licenses are acquired by Tenant by implication or otherwise except as expressly set forth in the provisions of this lease. Tenant has inspected the building and the demised premises and is thoroughly acquainted with their condition, and agrees to take the same "as is and acknowledges that the taking of possession of the demised premises by Tenant shall be conclusive evidence that the said premises and the building of which the same form a part were in good and satisfactory condition at the time such possession was so taken, except as to latent defects. All understandings and agreements heretofore made between the parties hereto are merged in this contract, which alone fully and completely expresses the agreement between Owner and Tenant and any executory agreement hereafter made shall be ineffective to change, modify, discharge or effect an abandonment of it in whole or in part, unless such executory agreement is in writing and signed by the party against whom enforcement of the change, modification, discharge or abandonment is sought.

**End of** 21. Upon the expiration or other termination of the
**Term:** term of this lease, Tenant shall quit and surrender to Owner the demised premises, broom clean, in good order and condition, ordinary wear excepted, and Tenant shall remove all its property from the demised premises. Tenant's obligation to observe or perform this covenant shall survive the expiration or other termination of this lease. If the last day of the term of this lease or any renewal thereof, falls on Sunday, this lease shall expire at noon on the preceding Saturday unless it be a legal holiday in which case it shall expire at noon on the preceding business day.

**Quiet** 22. Owner covenants and agrees with Tenant that
**Enjoyment:** upon Tenant paying the rent and additional rent and observing and performing all the terms, covenants and conditions, on Tenant's part to be observed and performed, Tenant may peaceably and quietly enjoy the premises hereby demised, subject, nevertheless, to the terms and conditions of this lease including, but not limited to, Article 33 hereof and to the ground leases, underlying leases and mortgages hereinbefore mentioned.

**Failure to** 23. If Owner is unable to give possession of the
**Give** demised premises on the date of the commencement
**Possession:** of the term hereof, because of the holding-over or retention of possession of any tenant, undertenant or occupants, or if the premises are located in a building being constructed, because such building has not been sufficiently completed to make the premises ready for occupancy or because of the fact that a certificate of occupancy has not been procured or for any other reason, Owner shall not be subject to any liability for failure to give possession on said date and the validity of the lease shall not be impaired under such circumstances, nor shall the same be construed in any wise to extend the term of this lease, but the rent payable hereunder shall be abated (provided Tenant is not responsible for the inability to obtain possession or complete construction) until after Owner shall have given Tenant written notice that the Owner is able to deliver possession in the condition required by this lease. If permission is given to Tenant to enter into the possession of the demised premises or to occupy premises other than the demised premises prior to the date specified as the commencement of the term of this lease, Tenant covenants and agrees that such possession and/or occupancy shall be deemed to be under all the terms, covenants, conditions and provisions of this lease except the obligation to pay the fixed annual rent set forth in page

one of this lease. The provisions of this article are intended to constitute "an express provision to the contrary" within the meaning of Section 223-a of the New York Real Property Law.

**No Waiver:** 24. The failure of Owner to seek redress for violation of, or to insist upon the strict performance of any covenant or condition of this lease or of any of the Rules or Regulations set forth or hereafter adopted by Owner, shall not prevent a subsequent act which would have originally constituted a violation from having all the force and effect of an original violation. The receipt by Owner of rent and/or additional rent with knowledge of the breach of any covenant of this lease shall not be deemed a waiver of such breach and no provision of this lease shall be deemed to have been waived by Owner unless such waiver be in writing signed by Owner. No payment by Tenant or receipt by Owner of a lesser amount than the monthly rent herein stipulated shall be deemed to be other than on account of the earliest stipulated rent, nor shall any endorsement or statement of any check or any letter accompanying any check or payment as rent be deemed an accord and satisfaction, and Owner may accept such check or payment without prejudice to Owner's right to recover the balance of such rent or pursue any other remedy in this lease provided. No act or thing done by Owner or Owner's agents during the term hereby demised shall be deemed in acceptance of a surrender of said premises and no agreement to accept such surrender shall be valid unless in writing signed by Owner. No employee of Owner or Owner's Agent shall have any power to accept the keys of said premises prior to the termination of the lease and the delivery of keys to any such agent or employee shall not operate as a termination of the lease or a surrender of the premises.

**Waiver of Trial by Jury:** 25. It is mutually agreed by and between Owner and Tenant that the respective parties hereto shall and they hereby do waive trial by jury in any action, proceeding or counterclaim brought by either of the parties hereto against the other (except for personal injury or property damage) on any matters whatsoever arising out of or in any way connected with this lease, the relationship of Owner and Tenant, Tenant's use of or occupancy of said premises, and any emergency statutory or any other statutory remedy. It is further mutually agreed that in the event Owner commences any proceeding or action for possession including a summary proceeding for possession of the premises, Tenant will not interpose any counterclaim of whatever nature or description in any such proceeding, including a counterclaim under Article 4 except for statutory mandatory counterclaims.

**Inability to Perform:** 26. This lease and the obligation of Tenant to pay rent hereunder and perform all of the other covenants and agreements hereunder on part of Tenant to be performed shall in no wise be affected, impaired or excused because Owner is unable to fulfill any of its obligations under this lease or to supply or is delayed in supplying any service expressly or impliedly to be supplied or is unable to make, or is delayed in making any repairs, additions, alterations or decorations or is unable to supply or is delayed in supplying any equipment, fixtures or other materials if Owner is prevented or delayed from so doing by reason of strike or labor troubles, government preemption or restrictions or by reason of any rule, order or regulation of any department or subdivision thereof of any government agency or by reason of the conditions of which have been or are affected, either directly or indirectly, by war or other emergency, or when, in the judgment of Owner, temporary interruption of such services is necessary by reason of accident, mechanical breakdown, or to make repairs, alterations or improvements.

**Bills and Notices:** 27. Except as otherwise in this lease provided, a bill, statement, notice or communication which Owner may desire or be required to give to Tenant, shall be deemed sufficiently given or rendered if, in writing, delivered to Tenant personally or sent by registered or certified mail addressed to Tenant at the building of which the demised premises form a part or at the last known residence address or business address of Tenant or left at any of the aforesaid premises addressed to Tenant, and the time of the rendition of such bill or statement and of the giving of such notice or communication shall be deemed to be the time when the same is delivered to Tenant, mailed, or left at the premises as herein provided. Any notice by Tenant to Owner must be served by registered or certified mail addressed to Owner at the address first hereinabove given or at such other address as Owner shall designate by written notice.

**Water Charges:** 28. Tenant to pay for water/sewer usage in accordance with the rider which is attached hereto and forms a part hereof.

**Sprinklers:** 29. Anything elsewhere in this lease to the contrary notwithstanding, if the New York Board of Fire Underwriters or the Insurance Services Office or any bureau, department or official of the federal, state or city government require or recommend the installation of a sprinkler system or that any changes, modifications, alterations, or additional sprinkler heads or other equipment be made or supplied in an existing sprinkler system by reason of Tenant's business, or the location of partitions, trade fixtures, or other contents of the demised premises, or for any other reason, or if any such sprinkler system installations, changes, modifications, alterations, additional sprinkler heads or other such equipment, become necessary to prevent the imposition of a penalty or charge against the full allowance for a sprinkler system in the fire insurance rate set by any said Exchange or by any fire insurance company, Tenant shall, at Tenant's expense, promptly make such sprinkler system installations, changes, modifications, alterations, and supply additional sprinkler heads or other equipment as required whether the work involved shall be structural or non-structural in nature. Tenant shall pay to Owner as additional rent the sum of any costs incurred by owner.

**Elevators, Cleaning:** 30. Tenant shall at Tenant's expense, keep demised premises clean and in order, to the satisfaction of Owner, and if demised premises are situated on the street floor, Tenant shall, at Tenant's own expense, make all repairs and replacements to the sidewalks and curbs adjacent thereto, and keep said sidewalks and curbs free from snow, ice, dirt and rubbish. Tenant shall pay to Owner the cost of removal of any of Tenant's refuse and rubbish from the building. Bills for the same shall be rendered by Owner to Tenant at such times as Owner may elect and shall be due and payable when rendered, and the amount of such bills shall be deemed to be, and be paid as, additional rent. Tenant shall, however, have the option of independently contracting for the removal of such rubbish and refuse in the event that Tenant does not wish to have same done by employees of Owner. Under such circumstances, however, the removal of such refuse and rubbish by others shall be subject to such rules and regulations as, in the judgment of Owner, are necessary for the proper operation of the building.

**Security:** 31. Tenant has deposited with Owner the sum of $18,000.00 as security for the faithful performance and observance by Tenant of the terms, provisions and conditions of this lease; it is agreed that in the event Tenant defaults in respect of any of the terms, provisions and conditions of this lease, including, but not limited to, the payment of rent and additional rent, Owner may use, apply or retain the whole or any part of the security so deposited to the extent required for the payment of any rent and additional rent or any other sum as to which Tenant is in default or for any sum which Owner may expend or may be required to expend by reason of Tenant's default in respect of any of the terms, covenants and conditions of this lease, including but not limited to, any damages or deficiency in the re-letting of the premises, whether such damages or deficiency accrued before or after summary proceedings or other re-entry by Owner. In the event that Tenant shall fully and faithfully comply with all of the terms, provisions, covenants and conditions of this lease, the security shall be returned to Tenant after the date fixed as the end of the Lease and after delivery of entire possession of the demised premises to Owner. In the event of a sale of the land and building or leasing of the building, of which the demised premises form a part, Owner shall have the right to transfer the security to the vendee or lessee and Owner shall thereupon be released by Tenant from all liability for the return of such security, and Tenant agrees to look to the new Owner solely for the return of said security; and it is agreed that the provisions hereof shall apply to every transfer or assignment made of the security to a new Owner. Tenant further covenants that it will not assign or encumber or attempt to assign or encumber the monies deposited herein as security and that neither Owner nor its successors or assigns shall be bound by any such assignment, encumbrance, attempted assignment or attempted encumbrance.

**Captions:** 32. The Captions are inserted only as a matter of convenience and for reference and in no way define, limit or describe the scope of this lease nor the intent of any provision thereof.

**Definitions:** 33. The term "Owner" as used in this lease means only the Owner, or the mortgagee in possession, for the time being of the land and building (or the Owner of a lease of the building or of the land and building) of which the demised premises form a part, so that in the event of any sale or sales of said land and building or of said lease, or in the event of a lease of said building, or of the land and building, the said Owner shall be and hereby is entirely freed and relieved of all covenants and obligations of Owner hereunder, and it shall be deemed and construed without further agreement between the parties or their successors in interest, or between the parties and the purchaser, at any such sale, or the said lessee of the building, or of the land and building, that the purchaser or the lessee of the building has assumed and agreed to carry out any and all covenants and obligations of Owner hereunder. The words "reenter" and "re-entry" as used in this lease are not restricted to their technical legal meaning. The term "business days" as used in this lease shall exclude Saturdays, Sundays and all days designated as holidays by the applicable building service union employees service contract or by the applicable Operating Engineers contract with respect to HVAC service. Wherever it is expressly provided in this lease that consent shall not be unreasonably withheld, such consent shall not be unreasonably delayed.

**Adjacent Excavation-Shoring:** 34. If an excavation shall be made upon land adjacent to the demised premises, or shall be authorized to be made, Tenant shall afford to the person causing or authorized to cause such excavation, license to enter upon the demised premises for the purpose of doing such work as said person shall deem necessary to preserve the wall or the building of which demised premises form a part from injury or damage and to support the same by proper foundations without any claim for damages or indemnity against Owner, or diminution or abatement of rent.

**Rules and Regulations:** 35. Tenant and Tenant's servants, employees, agents, visitors, and licensees shall observe faithfully, and comply strictly with the Rules and Regulations and such other and further reasonable Rules and Regulations as Owner or Owner's agents may from time to time adopt. Notice of any additional rules or regulations shall be given in such manner as Owner may elect. In case Tenant disputes the reasonableness of any additional Rule or Regulation hereafter made or adopted by Owner or Owner's agents, the

parties hereto agree to submit the question of the reasonableness of such Rule or Regulation for decision to the New York office of the American Arbitration Association, whose determination shall be final and conclusive upon the parties hereto. The right to dispute the reasonableness of any additional Rule or Regulation upon Tenant's part shall be deemed waived unless the same shall be asserted by service of a notice, in writing upon Owner within fifteen (15) days after the giving of notice thereof. Nothing in this lease contained shall be construed to impose upon Owner any duty or obligation to enforce the Rules and Regulations or terms, covenants or conditions in any other lease, as against any other tenant and Owner shall not be liable to Tenant for violation of the same by any other tenant, its servants, employees, agents, visitors or licensees.

**Glass:** 36. Tenant shall replace, at the expense of Tenant, any and all plate and other glass damaged or broken from any cause whatsoever in and about the demised premises. Owner may insure and keep insured, at Tenant's expense, all plate and other glass in the demised premises for and in the name of Owner. Bills for the premiums therefore shall be rendered by Owner to Tenant at such times as Owner may elect, and shall be due from and payable by Tenant when rendered and the amount thereof shall be deemed to be, and be paid as additional rent.

**Pornographic Uses Prohibited:** 37. Tenant agrees that the value of the demised premises and the reputation of the Owner will be seriously injured if the premises are used for any obscene or pornographic purposes or any sort of commercial sex establishment. Tenant agrees that Tenant will not bring or permit any obscene or pornographic material on the premises, and shall not permit or conduct any obscene, nude, or semi-nude live performances on the premises, nor permit use of the premises for nude modeling, rap sessions, or as a so called rubber goods shops, or as a sex club of any sort, or as a "massage parlor." Tenant agrees further that Tenant will

not permit any of these uses by any sub lessee or assignee of the premises. This Article shall directly bind any successors in interest to the Tenant. Tenant agrees that if at any time Tenant violates any of the provisions of this Article, such violation shall be deemed a breach of a substantial obligation of the terms of this lease and objectionable conduct. Pornographic material is defined for purposes of this Article as any written or pictorial matter with lewd or prurient sexual appeal or any object or instrument that are primarily concerned with lewd or prurient sexual activity. Obscene material is defined here as it is in Penal law Sec.235.00.

**Estoppel Certificate:** 38. Tenant, at any time, and from time to time, upon at least 10 days prior notice by Owner, shall execute, acknowledge and deliver to Owner, and/or to any other person, firm or corporation specified by Owner, a statement certifying that this lease is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications), stating the dates which the rent and additional rent have been paid, and stating whether or not there exists any defaults by Owner under this lease, and, if so, specifying each such default.

**Successors and Assigns:** 39. The covenants, conditions and agreements contained in this lease shall bind and inure to the benefit of Owner and Tenant and their respective heirs, distributees, executors, administrators, successors, and except as otherwise provided in this lease, their assigns. Tenant shall look only to Owner's estate and interest in the land and building for the satisfaction of Tenant's remedies for the collection of a judgment (or other judicial process) against Owner in the event of any default by Owner hereunder, and no other property or assets of such Owner (or any partner, member, officer or director thereof, disclosed or undisclosed), shall be subject to levy, execution or other enforcement procedure for the satisfaction of Tenant's remedies under or with respect to this lease, the relationship of Owner and Tenant hereunder, or Tenant's use and occupancy of the demised premises.

IN Witness Whereof, Owner and Tenant have respectively signed and sealed this lease as of the day and year first above written.

Witness for Owner:    Owner: 83-25 Queens Mandin LLC

........................

Tenant: Simply Milan, Inc.

Name: XIAO MEI LI
Title: PRESIDENT

## ACKNOWLEDGMENTS

**CORPORATE OWNER**
STATE OF NEW YORK,  ss.:
County of

On this ......... day of ........ ,20 ....
before me personally came
to me known, who being by me duly sworn, did depose and say that he resides in
that he is the .................... of
the corporation described in and which executed the foregoing instrument, as OWNER; that he knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of said corporation, and that he signed his name thereto by like order.

........................

**INDIVIDUAL OWNER**
STATE OF NEW YORK,  ss.:
County of
On this ......... day of ........ ,20 ....
before me personally came
to be known and known to me to be the individual described in and who, as OWNER, executed the foregoing instrument and acknowledged to me that he executed the same

........................

**CORPORATE TENANT**
STATE OF NEW YORK,  ss.:
County of

On this ......... day of ........ ,20 ....
before me personally came
to ME known, who being by me duly sworn, did depose and say that he resides in
that he is the .................... of
the corporation described in and which executed the foregoing instrument, as TENANT; that he knows the seal of said corporation, the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of said corporation, and that he signed his name thereto by like order.

........................

**INDIVIDUAL TENANT**
STATE OF NEW YORK,  ss.:
County of
On this ......... day of ........ ,20 ....
before me personally came
to be known and known to me to be the individual described in and who, as TENANT, executed the foregoing instrument and acknowledged to me that he executed the same

........................

Case 1:20-cv-06369-FB-TAM   Document 86-5   Filed 12/10/23   Page 55 of 74 PageID #: 1637

GUARANTY

Guarantor's Residence

The undersigned Guarantor guarantees to Owner, Owner's successors and assigns, the full performance and observance of all the agreements to be performed and observed by Tenant in the attached Lease, including the "Rules and Regulations" as therein provided, without requiring any notice to Guarantor of nonpayment, or nonperformance, or proof, or notice or demand, to hold the undersigned responsibly under this guaranty, all of which the undersigned hereby expressly waives and expressly agrees that the legality of this agreement and the agreements of the Guarantor under this agreement shall not be ended, or changed by reason of the claims to Owner against Tenant of any of the rights or remedies given to Owner as agreed in the attached Lease. The Guarantor further agrees that this guaranty shall remain and continue in full force and effect as to any renewal, change or extension of the Lease. As a further inducement to Owner to make the Lease Owner and Guarantor agree that in any action or proceeding brought by either Owner or the Guarantor against the other on any matters concerning the Lease or of this guaranty that Owner and the undersigned shall and do waive trial by jury.

Business Address

Firm Name

STATE OF NEW YORK )  ss.:
COUNTY OF        )

Dated..............................................19.........

Guarantor ..................................................

Witness ...................................................

On this ........ day of ........ 19 ....... before me personally came ....................... to me known and known to me to be the individual described in, and who executed the foregoing Guaranty and acknowledged to me that he executed the same.

............................... Notary

## IMPORTANT · PLEASE READ

### RULES AND REGULATIONS ATTACHED TO AND MADE A PART OF THIS LEASE IN ACCORDANCE WITH ARTICLE 35.

1. The sidewalks, entrances, driveways, passages, courts, elevators, vestibules, stairways, corridors or halls shall not be obstructed or encumbered by any Tenant or used for any purpose other than for ingress to and egress from the demised premises and for delivery of merchandise and equipment in a prompt and efficient manner using elevators and passageways designated for such delivery by Owner. There shall not be used in any space, or in the public halls [of the building], either by any tenant or by jobbers, or others in the delivery or receipt of merchandise, any hand trucks except those equipped with rubber tires and safeguards.

2. If the premises are situated on the ground floor of the building, Tenant thereof shall further, at Tenant's expense, keep the sidewalks and curb in front of said premises clean and free from ice, snow, etc.

3. The water and wash closets and plumbing fixtures shall not be used for any purposes other than those for which they were designed or constructed.

4. Tenant shall not use, keep or permit to be used or kept any foul or noxious gas or substance in the demised premises, or permit or suffer the demised premises to be occupied or used in a manner offensive or objectionable to Owner or other occupants of the building by reason of noise, odors and/or vibrations or interfere in any way with other Tenants or those having business therein.

5. No sign, advertisement, notice or other lettering shall be exhibited, inscribed, painted or affixed by any Tenant on any part of the outside of the demised premises or the building or on the inside of the demised premises if the same is visible from the outside of the premises without the prior written consent of Owner, except that the name of Tenant may appear on the entrance door of the premises. In the event of the violation of the foregoing by any Tenant, Owner may remove same without any liability and may charge the expense incurred by such removal to Tenant or Tenants violating this rule. Signs on interior doors and directory tablet shall be inscribed, painted or affixed for each Tenant by Owner at the expense of such Tenant, and shall be of a size, color and style acceptable to Owner.

6. No Tenant shall mark, paint, drill into, or in any way deface any part of the building of which they form a part. No boring, cutting or stringing of wires shall be permitted, except with the prior written consent of Owner, and as Owner may direct. No Tenant shall lay linoleum or other similar floor covering, so that the same shall come in direct contact with the floor of the demised premises, and, if linoleum or other similar floor covering is desired to be used an interlining of builder's deadening felt shall

be first affixed to the floor, by a paste or other material, soluble in water, the use of cement or other similar adhesive material being expressly prohibited.

7. Freight, furniture, business equipment, merchandise and bulky matter of any description shall be delivered to and removed from the premises only on the freight elevators and through the service entrances and corridors, and only during hours and in a manner approved by Owner. Owner reserves the right to inspect all freight to be brought into the building and to exclude from the building all freight which violates any of these Rules and Regulations or the lease of which these Rules and Regulations are a part.

8. Owner reserves the right to exclude from the building between the hours of 6 P.M. and 8 A.M. and at all hours on Sundays, and holidays all persons who do not present a pass to the building signed by Owner. Owner will furnish passes to persons for whom any Tenant requests same in writing. Each Tenant shall be responsible for all persons for whom he requests such pass and shall be liable to Owner for all acts of such person.

9. Owner shall have the right to prohibit any advertising by any Tenant which, in Owner's opinion, tends to impair the reputation of Owner or its desirability as a building for stores or offices, and upon written notice from Owner, Tenant shall refrain from or discontinue such advertising.

10. Tenant shall not bring or permit to be brought or kept in or on the demised premises, any inflammable, combustible, or explosive, or hazardous fluid, material, chemical or substance, or cause or permit any odors of cooking or other processes, or any unusual or other objectionable odors to permeate in or emanate from the demised premises.

11. Tenant shall not place a load on any floor of the demised premises exceeding the floor load per square foot area which it was designed to carry and which is allowed by law. Owner reserves the right to prescribe the weight and position of all safes, business machines and mechanical equipment. Such installations shall be placed and maintained by Tenant at Tenant's expense in setting conditions in Owner's judgment to absorb and prevent vibration, noise and annoyance.

12. Refuse and Trash - Tenant covenants and agrees, at his sole cost and expense, to comply with all Present and future laws, orders and regulations of all state, federal, municipal and local governments, departments, commissions and boards regarding the collection, sorting, separation and recycling of waste products, garbage, refuse and trash. Tenant shall pay all costs expenses, fines, penalties or damages that may be imposed on Owner or, Tenant by reason of Tenant's failure to comply with the provisions of this Building Rule 12 and, at Tenant's sole cost and expense, shall indemnify, defend and hold Owner harmless (including reasonable legal fees and expenses) from and against any actions, claims and suits arising from such. Non-compliance, utilizing counsel reasonably satisfactory to Owner

6

Case 1:20-cv-06369-FB-TAM Document 86-5 Filed 12/10/23 Page 56 of 74 PageID #: 1638

RIDER TO LEASE DATED AS OF AUGUST _10_, 2015, FOR THE PREMISES LOCATED AT 82-25 QUEENS BOULEVARD, UNIT 1A & 1B, NY 11373, BY AND BETWEEN 8225 QUEENS MANSION LLC, AS LANDLORD, AND SIMPLY MILAN, INC., AS TENANT.

## 41. RENT

A. All payments other than Fixed Rent to be made by Tenant pursuant to this Lease shall be deemed additional rent and, in the event of any non-payment thereof, Landlord shall have all rights and remedies provided for herein or by law for non-payment of rent.

B. All payments of Fixed Rent and additional rent to be made by Tenant pursuant to this lease shall be made by checks drawn upon a New York City bank which is a member of the New York Clearing House Association or any successor thereof.

During the term hereof, Tenant shall pay fixed monthly rental as follows:

From August 10, 2015 to July 31, 2017 .............................................$9,000.00/Month
From August 1, 2017 to July 31, 2019 .............................................$9,450.00/Month
From August 1, 2019 to July 31, 2021 .............................................$9,922.50/Month
From August 1, 2021 to July 31, 2023 .............................................$10,418.63/Month
From August 1, 2023 to July 31, 2025 .............................................$10,939.55/Month

C. Notwithstanding the above rent schedule, the parties acknowledge that tenant has taken possession as of the date of this lease ("Lease Commencement Date") and shall not pay rent upon execution of the Lease in exchange for accepting the premises "as is" and for performing certain tenant improvements at the premises as set forth more fully below. Tenant shall be given TWO months of rent concession of the fixed monthly rental for the period of August 10th, 2015 to October 9th, 2015. Tenant shall commence paying rent on October 10th, 2015 (the "Rent Commencement Date"). However, all subsequent rent shall be due on 1st of the month.

D. It is hereby mutually agreed, that notwithstanding anything to the contrary herein contained, the provisions herein contained for the payment of said Minimum Base Rent in installments are for the convenience of Tenant only, and that, upon default in payment of the Minimum Base Rent and/or Additional Rent in installments as herein allowed, and if such default shall continue for TEN (10) days after written notice thereof by Landlord to Tenant, then Landlord can proceed with summary proceeding to remove the Tenant from the Premises as pursuant to the default clause below.

E. All rental payments are due in advance on the FIRST (1st) day of each month during the term of this Lease. There shall be no per diem calculation of Base Rent, Additional Rent, or other charges under this Lease. All amounts payable by Tenant are due in their entirety on the date of billing. In addition to Base Rent, Tenant covenants to pay, from time to time as provided in this Lease, as Additional Rent, all other amounts and obligations which Tenant is required to pay under this Lease and, without prejudice to any other rights, powers or remedies of Landlord, a late payment charge equal to ten percent (10%) of the amount of any item of Base Rent or Additional Rent not received by Landlord within TEN (10) days after same is due. If payment of such item of Base Rent or Additional Rent is not received by Landlord within such TEN (10) day period, Landlord may if, on three (3) occasions during twelve (12) month period, Tenant defaults in the payment of rent and additional rent, Tenant shall be in substantial breach of this Lease and Landlord, at Landlord's sole option, may terminate this lease by giving Tenant ten (10) days notice of termination by certified and regular mail, whereupon this Lease shall immediately terminate without further notice. Landlord may, at its sole option, in addition to Landlord's other rights and remedies, commence a holdover proceeding against Tenant and/or any other occupants of the demised premises for the recovery of said premises or any part or portion thereof.

F. In the event of any failure on the part of Tenant to pay any Additional Rent, Landlord shall have all of the rights, powers and remedies provided for in this Lease, at law, in equity or otherwise, in the case of nonpayment of Base Rent. Tenant's obligations to pay Base Rent and Additional Rent shall survive the expiration of the Lease term or earlier termination of this Lease. All Base Rent and Additional Rent shall be paid to Landlord without notice, demand, counterclaim, set off, deduction or defense, and nothing shall suspend, defer, diminish, abate or reduce any rent, except as otherwise specifically provided in this Lease. Tenant shall pay a penalty of $100.00 on each occasion a bad check is presented to the Landlord in payment of Base Rent, Additional Rent, or any other charges due Landlord, and Tenant shall replace the check with cash, certified funds or a money order.

G. Landlord shall receive the net amount of Base Rent, together with all sums due as Additional Rent hereunder, free from all taxes, charges, expenses, damages, deductions or obligations of any kind or nature relating to the demised premises during the term of this Lease. Tenant hereby covenants and agrees to pay monthly to Landlord, as Additional Rent, any sales, use or other tax, excluding state and/or federal income tax, now or hereafter imposed upon rents under this Lease or the occupancy of the demised premises by the United States of America, New York State, New York City, or any political subdivision thereof or other taxing authority, notwithstanding the fact that such statute, ordinance or enactment imposing the same may impose the tax on Landlord. All installments of Base Rent, Additional Rent, and other charges due hereunder shall be made payable to Landlord and delivered to its office address. Landlord may designate such other place for payment of rent by giving Tenant not less than ten (10) days prior written notice of Landlord's new address for payment of rent.

H. Landlord shall be responsible for Real Estate Tax for the Premises.

## 42. USE

A.  Subject to the existing and/or new or amended certificate of occupancy for the building in which the demised premises is located and all applicable zoning laws and regulations and use restrictions now in or hereafter coming into effect, Tenant shall use and occupy the demised premises for the **Furniture and Home Accessory Store ONLY** and for no other purpose.  If any license(s) or permit(s) shall be required from any governmental or quasi-governmental authority for the proper and lawful conduct of such business at the demised premises, Tenant, at its sole cost and expense, shall duly procure and thereafter maintain and display all such license(s) or permit(s) and shall submit the same to Landlord for inspection upon request. Tenant shall at all times comply with the terms and conditions of each such license or permit, and shall defend and hold Landlord harmless in the event of any liability, actual or threatened, on the part of Landlord arising out of Tenant's breach of its obligations under this Article. Landlord makes no representation that the aforementioned use by Tenant complies with the existing and/or new and/or amended certificate of occupancy for the building and/or with all applicable zoning laws and regulations and use restrictions now in or hereafter coming into effect.

B.   Tenant shall not at any time use or occupy the demised premises or do or permit anything to be done in or on the demised premises in any manner (a) which violates the existing and/or new and/or amended certificate of occupancy for the building in which the demised premises is located; (b) which causes or is likely to cause injury to the demised premises or any equipment, facilities or systems therein; or (c) which constitutes a violation of the laws and regulations of any governmental or quasi-governmental authorities or the requirements of any insurance carrier(s).

## 43. COMPLIANCE WITH LAWS; NOTICES OR OCCURRENCES

Tenant shall give prompt notice to Landlord of any notice it receives with respect to the violation of any law or requirement of any governmental, quasi-governmental or public authority with respect to the demised premises or the use and occupancy thereof. Tenant shall, at Tenant's sole expense, comply with all laws and requirements of any such authorities which shall impose any violation, order, duty or directive on Landlord or the demised premises arising from or in any way attributable to (a) Tenant's use or occupancy of the demised premises; (b) the manner of conduct of Tenant's business or the use or operation of Tenant's installations, equipment or other property therein; (c) any cause or condition created or permitted, directly or indirectly, by Tenant; or (d) the breach of any of Tenant's obligations hereunder, and Tenant shall pay all of the costs, expenses, fines, penalties and damages, including, without limitation, court costs and reasonable legal fees and expenses, suffered or incurred by Landlord as a consequence of Tenant's failure to fully and promptly comply with and observe the provisions of this Article.

## 44. UTILITIES

Tenant shall make arrangements with the public utilities servicing the Building or private companies, if appropriate, for the continued furnishing of water/sewer, electricity, gas, fuel, telephone or any other utilities or services which Tenant deems necessary or desirable in connection with its use and occupancy of the Demised Premises. Tenant shall promptly pay to such companies the cost of such utilities or services and any security deposits required. If Tenant shall default in paying for any of the above, Owner may collect such costs from Tenant as Additional Rent and pay the same on Tenant's behalf, or Owner may pursue any other remedies it may have hereunder or at law or equity. All utility installations shall be Tenant's responsibility and Owner shall not be obliged to ensure that they remain in working order or are serviced by the utility supplier. The Owner shall not be liable in any way to Tenant for any failure or defect in the supply or character of electric energy, steam or other utilities furnished to the Demised Premises by reason of any requirement, act or omission of the public utility serving the Building with electricity or for any other reason not attributable to Owner. Tenant acknowledges that there is no water meter in the building and that Tenant will install a new water meter.

B.   Bills for any expense incurred by Landlord in connection with any performance by it for the account of Tenant, and bills for all costs, expenses and disbursements of every kind and nature whatsoever, including reasonable counsel fees, involved in collecting or endeavoring to collect the fixed rent or additional rent or any part thereof or enforcing or endeavoring to enforce any rights against Tenant, under or in connection with this lease, or pursuant to law, including any such cost, expense and disbursement involved in instituting and prosecuting summary proceedings, as well as bills for any property, material, labor, or services provided, furnished, or rendered, by Landlord or at its instance to Tenant, may be sent by Landlord to Tenant monthly, or immediately, at Landlord's option, and shall be due and payable in accordance with the terms of such bills.

## 45. INDEMNIFICATION BY TENANT

A.  Tenant shall indemnify, hold harmless, and defend the Landlord from and against any loss, cost, damage or liability, including, without limitation, court costs and reasonable legal fees and expenses, suffered or incurred by Landlord as a consequence of any injury or damage to person or property by virtue of Tenant's use, occupancy, management, operation, possession, and/or control of the demised premises, or any portion thereof or appurtenant thereto.  Landlord shall not, under any circumstances, be liable to Tenant for any water damage in or to the demised premises, including, but not limited to damage from broken pipes, leaking roofs, sewage backup and/or any other water damage.  In the event of any such water damage, Tenant shall solely bear the cost of such loss or shall look solely to its own insurance carrier for compensation.

B.  Tenant agrees that the liability of the Landlord under this Lease for all matters pertaining to or arising out of the tenancy and/or the use and occupancy of the demised premises by Tenant shall be strictly limited to the Landlord's estate and interest in the building in which the demised premises is located, and in no event shall Tenant make any claim against or seek to impose any personal liability upon the Landlord, its successors and/or assigns, or upon any member or manager, or any general or limited partner, or any officer, director, shareholder or trustee of Landlord, as the case may be.

## 46. CONDITION OF PREMISES

Tenant represents that it has inspected the demised premises and is thoroughly acquainted with its condition, and agrees to take the same on in its "as is" condition.  Tenant acknowledges that Landlord, it agents and/or employees have not made, do not make, and specifically negate and disclaim any representations, warranties, promises, covenants, agreements, or guarantees of any kind or character whatsoever, whether express or implied, oral or written, past, present or future,

as to, concerning, or with respect to (i) the value, nature, quality, or physical condition of the demised premises or the building in which the demised premises is located, including, without limitation, water, air, soil, and/or geological conditions; (ii) the expenses of operation and/or income to be derived from the demised premises; (iii) the certificate of occupancy, zoning laws and/or use restrictions relating to or affecting the demised premises and/or the suitability of the demised premises for any particular use or purpose; (iv) the compliance of or by the demised premises and/or its operation with any laws, rules, ordinances or regulations of any applicable governmental or quasi-governmental authorities; (v) the manner or quality of the construction of the demised premises and/or any materials incorporated into or affixed to the demised premises; (vi) the manner, quality, state of repair or lack of repair of the demised premises; or (vii) any other manner or thing affecting or related to the demised premises, and specifically, without limitation, that Landlord has not made, does not make, and specifically disclaims any representations regarding compliance with the "Americans with Disabilities Act" or with any environmental protection, pollution, hazardous materials, or land use laws, rules, regulations, orders or requirements. Tenant further acknowledges that no rights, easements or licenses have been granted to or otherwise acquired by Tenant by implication or otherwise, except as may be expressly set forth in this Lease, and that the signing of this Lease shall be conclusive evidence that the demised premises are in good and satisfactory condition.

### 47. INSURANCE

A.  **Tenant's Insurance.**  Tenant shall, at Tenant's sole cost and expense, procure and maintain a general commercial liability insurance policy with a limit of not less than one million/two million dollars ($1,000,000.00/$2,000,000.00) protecting against claims for bodily injury, death or property damage in respect of the demised premises and the conduct of operation of business therein, during the entire term of this Lease. Any insurance policy required of Tenant may be maintained by means of a policy or policies of blanket insurance covering additional items or locations, and any such policy may provide for such reasonable deductible limits as Tenant deems appropriate. Said policy shall be issued by a reputable insurance company licensed to do business in the State of New York reasonably acceptable to Landlord, in standard form, and shall name Landlord therein as an additional insured. An insurance certificate shall be delivered to Landlord on or prior to the Commencement Date, and any new or renewal policies shall be delivered to Landlord at least fifteen (15) days before expiration of the existing policies. If Tenant fails to maintain said general liability insurance after notice and the expiration of the applicable cure period, Landlord may obtain same on Tenant's behalf and charge Tenant for the cost thereof as Additional Rent. Tenant shall indemnify and hold Landlord harmless from and against all liabilities, obligations, damages, penalties, claims, costs and expenses for which Landlord shall not be reimbursed by Tenant's insurance, including court costs and reasonable attorneys' fees, suffered or incurred by Landlord as a result of any breach by Tenant, Tenant's agents, contractors, employees, invitees, or licensees, of any covenant or condition of this Lease, or the willful or negligent act or omission of Tenant, Tenant's agents, contractors, employees, invitees, or licensees. Tenant's liability under this Lease extends to the acts and omissions of any subtenant, and agent, contractor, employee, invitee or licensee of any subtenant. If any action or proceeding is brought against Landlord by reason of any such claim, Tenant, upon written notice from Landlord, shall at Tenant's sole expense, defend such action or proceeding by counsel approved by Landlord in writing. Tenant must obtain plate glass insurance also.

### 48. WINDOWS AND GLASS

Tenant covenants, at its own cost and expense, to replace the windows, plate glass, doors, and any fixtures or appurtenances composed of glass in the demised premises in case of damage. If for any reason any of such glass in the demised premises is damaged and Tenant fails to repair same within three (3) days, Landlord may repair such glass on Tenant's behalf and Tenant shall reimburse Landlord, as Additional Rent, for the cost of such repair. Upon the expiration of the term of this Lease, all such windows, plate glass, doors and any fixtures or appurtenances composed of glass shall belong to Landlord and shall be surrendered with the demised premises.

### 49. MAINTENANCE AND REPAIRS

A.  Subject to the provisions of this Article, Landlord shall be responsible only for structural repairs to the demised premises (the structure shall consist of the foundation and exterior walls of the demised premises including the roof over the portion of the building in which the demised premises is located and the sidewalk for repair only). Tenant shall, at its sole cost and expense, maintain and make all non-structural repairs and replacements to the demised premises, including but not limited to the ceilings, floors and interior walls, and the plumbing, sewage, waste disposal, electrical, air-cooling, heating and ventilation systems at or servicing the demised premises. Notwithstanding any contrary provision in this Lease, Tenant shall be solely responsible for the maintenance of the storefront and shall make all necessary repairs thereto, whether structural or non-structural, at its sole cost and expense.

B.  If Tenant damages, perforates, or alters the roof, structural walls, ceilings, floors, or any other part of the building structure with its installations, then Tenant shall be responsible for the repair and restoration of the building structure. Notwithstanding any contrary provisions set forth in this Lease, Tenant shall be solely responsible for any damage cause by Tenant, whether structural or non-structural, and Tenant shall promptly repair same at its sole cost and expense. All repairs which are the obligation of Tenant under this Lease are collectively referred to as the "Tenant's Repairs".

C.  Tenant's Repairs shall be performed in a competent, professional, and workmanlike manner in accordance with all applicable laws, codes, rules and regulations and shall be performed at Tenant's sole cost and expense. Tenant shall make Tenant's Repairs promptly and with all reasonable diligence as and when same become necessary or appropriate. Without limiting the foregoing, Tenant shall perform Tenant's Repairs promptly after written notice which may be given by Landlord to Tenant (but without creating any obligation on the part of Landlord to give any such notice). All contractors and/or subcontractors performing any of the Tenant's Repairs or other repairs required under this Lease shall be required to maintain policies of workers' compensation and employer's/contractor's liability insurance and shall name Landlord and Tenant as additional insured on all such insurance policies and evidence thereof shall be furnished to Landlord prior to the commencement of any Tenant's Repairs by any such contractors and/or subcontractors and at any other times upon demand by Landlord. All work shall be performed by licensed contractors and/or subcontractors reasonably acceptable to Landlord pursuant to plans and specifications prepared by licensed architects and/or engineers reasonably acceptable to Landlord (as applicable for the work being performed).

D.  Tenant shall be solely responsible for all vandalism, graffiti, robbery and burglary damage to the demised premises, including, but not limited to, doors, interior and exterior walls, canopies, windows, awnings, signs, roofs,

sidewalks, security gates, and all plumbing, electrical and gas installations and other utility meters or connections. Tenant shall be charged as Additional Rent for any expenses Landlord may incur as a result of any such occurrence.

      E.    Tenant shall keep the sidewalk and exterior portions of the demised premises clean and free of refuse or debris, including the area extending eighteen (18) inches (or the legally designated distance) beyond the curb in front of and surrounding the demised premises. Tenant shall at its own expense clear snow, ice and other debris from said sidewalk. Tenant shall be solely liable for any accident arising out of disrepair or neglect in the maintenance, operation and/or control of the demised premises. Tenant shall be liable for sanitation violations which result from Tenant's failure to maintain a clean and unobstructed sidewalk in front of the demised premises. Any fees, fines or special assessments not paid by Tenant for the demised premises may be paid by the Landlord at its option and charged to Tenant's as Additional Rent.

      F.    If, in an emergency, it becomes necessary to make prompt repairs, Landlord may enter the demised premises and make all necessary repairs and/or replacements. If said repairs or replacements are occasioned by the acts of the Tenant, Tenant shall reimburse Landlord, as Additional Rent, for the cost of making same within thirty (30) days after Landlord renders a bill therefore. Tenant agrees, at its sole expense, to service, maintain, repair and replace, if necessary and keep in good operating order and clean condition, the toilet and/or lavatory in the demised premises. All other provisions of the printed portion of this lease pertaining to maintenance and repair of the demised premises and in particular, Article 4, shall remain in full force and effect.

## 50. ALTERATIONS

      A.    Subject to the provisions of this Article, Landlord shall permit Tenant to make such structural and non-structural alterations, additions, installations and improvements (Alterations) in or to the demised premises as Tenant may reasonable require for the operation of its permitted business, provided that all work, labor and services done by and/or for Tenant shall conform with the rules, codes and regulations of all federal, state and local governmental and quasi-governmental authorities. Tenant shall not make any Alterations without first obtaining Landlord's prior written consent in each instance. Prior to commencing any Alterations in or to the demised premises or erecting any exterior signs, Tenant shall submit plans to Landlord for Landlord's approval. All Alterations shall be made in a professional and workmanlike manner in accordance with all applicable laws, codes, rules and regulations. If any such Alterations require any filings with, or permits and/or approvals from, the New York City Department of Buildings or any other authority, Tenant shall, prior to commencing work, submit all such applications and/or filings to the applicable agencies or authorities and obtain from such agencies or authorities all required permits and/or approvals, copies of which shall be delivered to Landlord. Tenant shall be solely responsible for obtaining and filing with the New York City Department of Buildings all sign-offs and/or letters of completion with respect to any jobs and/or applications filed by or on behalf of Tenant with respect to any Alterations and shall promptly furnish copies of same to Landlord within thirty (30) days after completion of the subject Alteration.

      B.    Notwithstanding the provisions of paragraph A of this Article, the prior written consent of Landlord shall not be required for any Alterations which are entirely interior and non-structural in nature (Non-Structural Alterations) provided such Non-Structural Alterations require no; applications, approvals or permits of any kind from the New York City Department of Buildings or any other municipal or governmental agency or authority are required and do not violate any other provisions of this Lease.

      C.    In no event shall Tenant make any Alterations which are structural in nature (Structural Alterations) without obtaining Landlord's prior written consent in each instance. Landlord shall not unreasonably withhold its consent to Interior Structural Alterations or to Structural Alterations of the storefront, provided, however, that Tenant shall not be permitted to make any Structural Alterations which, in Landlord's sole determination, impair the value or structural integrity of the building, adversely impact any adjacent tenants in the building, or adversely impact any adjacent structures.

      D.    Before making any Structural or Non-Structural Alterations, Tenant shall submit plans to Landlord for Landlord's approval obtain all permits, licenses, approvals and certificates (Permits) as may be required by any governmental or quasi-governmental agencies. Tenant shall not submit any application(s) to any governmental or quasi-governmental agencies for any such Permit(s) without first obtaining Landlord's prior written approval in each instance. Landlord shall not withhold its approval of any Permits which are solely for Non-Structural Alterations. All Structural and Non-Structural Alterations are to be performed by licensed and insured contractors and subcontractors. Tenant shall carry and cause Tenant's contractors and subcontractors to carry such workmen's compensation, general liability, personal and property damage insurance as Landlord may reasonably require. Certificates of such insurance naming Landlord as an additional insured with respect to all coverage other than workmen's compensation coverage shall be provided to Landlord prior to the commencement of any work on any Alterations, Structural or Non-Structural.

      E.    All Alterations shall be of such a nature as not to reduce or otherwise adversely affect the value of the demised premises, nor diminish the general utility or change the general character of the demised premises. At the expiration of the term of this Lease, Tenant shall, if so required by Landlord, remove from the demised premises any alteration or improvement constructed by Tenant or at Tenant's direction during the term. If so directed, Tenant shall, at its sole cost and expense, remove such alteration or improvements from the demised premises and repair any damage caused by such removal The provisions of this paragraph E shall survive the expiration or earlier termination of this Lease.

      F.    Tenant acknowledges that Landlord has made no representations or promises as to the size, amount or quality of electrical, gas, plumbing, and water/sewer; vice available in or to the demised premises, and Tenant agrees that Tenant shall do all work necessary and pay the cost for su. h w rk and for all other changes, additions or modifications, including but not limited to electrical, gas, plumbing, water/sewer or other work required in the demised premises as a result of Tenant's occupancy. Tenant shall do all work and pay for same with an; right or reimbursement or contribution from Landlord whatsoever. If Tenant performs any t  terations which involve the roof of y building, and thereby causes damage to the roof, Tenant assumes all responsibility or restoring the roof to good condition and Landlord shall in no event be responsible for any leak  r seepage from the roof.  used by such damage.

FILED: QUEENS COUNTY CLERK 02/12/2021 03:50 PM INDEX NO. 703462/2021

NYSCEF DOC. NO. 1    Case 1:20-cv-06369-FB-TAM    Document 86-5    Filed 12/10/23    Page 60 of 74 PageID #: 1642    RECEIVED NYSCEF: 02/12/2021

### 51. WASTE REMOVAL

A.    Tenant, at Tenant's sole expense, shall contract for the removal of all Tenant's garbage and refuse from the demised premises. Tenant shall take all steps necessary to prevent rats, roaches and other pests from infesting the demised premises, including hiring a licensed exterminator to remove any such pests from the demised premises and surrounding areas. If it becomes necessary for landlord to hire a service to remove pests, or if Landlord is forced to repair damage caused by pests which inhabit and/or are caused by conditions in the demised premises, Landlord may charge Tenant for the cost of the service and/or repair as Additional Rent. Tenant shall not store any refuse outside the store portion of the demised premises at any time.

B.    Tenant shall be responsible for all sanitation violations and fines levied on the demised premises and shall pay same as Additional Rent. In addition, Tenant shall pay, as Additional Rent, any health or fire code violation fines levied on the demised premises resulting from the conduct of Tenant's business at the demised premises or Tenant's failure to perform any of its obligations under this Lease. Tenant shall, at his own expense, ventilate the demised premises to prevent odors and fumes from entering or remaining on the demised premises and will prevent odors and fumes from disturbing or annoying other Tenants of the demised premises.

### 52. LICENSES AND PERMITS

Tenant shall secure and maintain, at Tenant's sole expense, all licenses and permits from federal, state and local authorities as may be necessary for the operation of its business and/or for its lawful use and occupancy of the demised premises. Tenant shall be responsible for all fines, sign fees and permits, and Tenant shall pay any fines resulting from any health, safety or fire code violations at the demised premises.

### 53. FIXTURES

Tenant shall remove all trade fixtures from the demised premises at the end of the Lease term or earlier termination of this Lease, or said fixtures shall, at Landlord's option, be deemed abandoned, and Tenant shall repair any damage to any part of the exterior or interior of the demised premises caused by the removal of fixtures. Notwithstanding any contrary provision in this Lease, all non-trade fixtures shall become the property of the Landlord at time of installation and shall not be removed by Tenant unless Landlord so directs in writing.

### 54. ADDITIONAL RENT

All payments other than Base Rent to be made by Tenant pursuant to this lease shall be deemed Additional Rent and, in the event of any non-payment thereof, Landlord shall have all rights and remedies provided for herein or by law for non-payment of Base Rent.

### 55. VACANCY AND INACTIVITY

Tenant shall notify Landlord if Tenant intends to leave the demised premises vacant or inactive. Tenant shall remain completely responsible for all obligations to the demised premises and the surrounding areas whether or not Landlord is so notified. If Landlord finds the demised premises vacant or inactive for thirty (30) or more consecutive days without notice, and other than for the purpose of making Alterations in or to the Premises, Landlord reserves the right to re-enter and take possession of the demised premises without any further proceeding and in such event, Landlord may relet the demised premises to a third party without compensation to Tenant. The re-letting of the demised premises shall not relieve Tenant of Tenant's obligation to pay rent for the balance of the Lease term except to the extent that rent is actually paid by any new tenant.

### 56. TENANT'S OBLIGATION TO SURRENDER THE PREMISES

A.    On the last day or any sooner termination of the term hereof, Tenant shall quit, surrender and deliver up the demised premises to Landlord, including the sidewalk abutting the demised premises and all pipes, plumbing, electric wires, heating and air-conditioning systems and all other appurtenances, broom clean, in good order, condition and repair, reasonable wear and tear excepted. Tenant shall, at its own cost and expense, remove from the demised premises all movable furniture, equipment and trade fixtures, and similar fixtures belonging to or installed by Tenant. Tenant shall repair any damage to any part of the interior or exterior of the demised premises or the building caused by the removal of Tenant's property. Any property not so removed shall, at Landlord's option, become the exclusive property of Landlord or be disposed of by Landlord, at Tenant's cost and expense, without further notice or demand upon Tenant. Notwithstanding any contrary provision in this Lease, all non-trade fixtures shall become the property of the Landlord at time of installation and shall not be removed by Tenant unless so directed by Landlord in writing upon the expiration or earlier termination of this Lease. Tenant's obligations under this Article shall survive the expiration or sooner termination of this Sublease.

B.    Tenant shall defend, indemnify and hold Landlord harmless from and against all liabilities, costs, suits, demands, charges and expenses of any kind or nature, including, without limitation, all attorneys' fees and disbursements, resulting from any delay by Tenant in surrendering the demised premises in accordance with the requirements of this Lease, including, without limitation, any claims made by any succeeding tenant.

C.    Tenant recognizes and agrees that the damage to Landlord resulting from any failure by Tenant to timely surrender possession of the demised premises will be substantial, will exceed the amount of the Base Rent payable hereunder, and will be difficult to accurately measure. Tenant agrees that if Tenant does not vacate the demised premises and surrender possession thereof in accordance with the requirements of this Lease for any reason on or before the Termination Date or any earlier termination date of this Lease, then Tenant shall pay to Landlord, as liquidated damages, a sum equal to 150% of the per diem Base Rent which was payable during the calendar month preceding the calendar month in which Tenant should have surrendered the demised premises for each day Tenant holds over and fails to deliver possession of the demised premises to Landlord. Nothing contained herein or in any other provision of this Lease shall constitute permission for Lessee to retain possession of the demised premises after the Termination Date or any earlier termination of this Lease. Landlord, by availing itself of the rights and privileges granted by this Article and the acceptance of the liquidated damages set forth herein, shall not be

deemed to have waived any of its rights and privileges granted in other sections of this Lease, and the rights granted in this Article shall be considered in any event as in addition to, and not in exclusion of, such other rights, remedies and privileges. The provisions of this Article shall survive the Termination Date or earlier termination of this Lease.

D.     No act done by Landlord or Landlord's agent(s) shall be deemed an acceptance of a surrender of the demised premises, and no agreement to accept such surrender shall be valid unless expressly acknowledged in a writing signed by Landlord. The delivery of keys to any employee of Landlord or of Landlord's agent(s) shall not operate as a termination of this Lease or as a surrender of the demised premises.

## 57. RECORDING PROHIBITED

Tenant shall not record this lease or any memorandum of this Lease. If Tenant violates the provisions of the preceding sentence, this Lease, at Landlord's sole option, shall become null and void and of no further force and effect and all of Tenant's rights hereunder shall cease and terminate. In the event Landlord elects to terminate the Lease, Landlord shall have all of its rights and remedies as against Tenant, all of which are expressly reserved.

## 58. SIGNS

Subject to all applicable laws and regulations, Tenant shall have the right, at its own cost and expense and upon Landlord's prior written consent, to install and maintain interior signs and a single exterior sign at the demised premises provided same relate to Tenant's permitted business at the demised premises. Any exterior sign (including any illuminated, neon, or other signs located inside the demised premises which are visible from outside the building) shall be subject to Landlord's approval as to plans, type, style, size specifications, design, quantity and location ("Sign Criteria"). Tenant shall, prior to erecting any such sign, submit to Landlord final drawings of the sign proposed to be installed by Tenants showing the Sign Criteria and manner of affixation to the demised premises. Prior to the erection of any such sign, Tenant shall, at its sole cost and expense, obtain such permits as Tenant may be required to obtain from any and all public authorities having jurisdiction with respect to the erection, installation, maintenance or use of said sign. At the expiration or earlier termination of this Lease, Landlord may require Tenant to remove, at Tenant's sole expense, any sign installed at or on the demised premises, and to restore the demised premises to its pre-existing condition as nearly as may be practicable (ordinary wear and tear excepted). Tenant shall not place, post, or permit to be posted any signs or advertisements on or at the demised premises other than signs relating to Tenant's permitted business at the demised premises and any signs which Tenant is required by applicable law to post and/or maintain on or at the demised premises.

## 59. BROKER

Landlord and Tenant each covenant, warrant and represent to the other that NO broker had any involvement in the negotiation or consummation of this Lease, and that it had neither conversations nor negotiations with any broker, salesperson, finder, or other such person or entity concerning the renting of the demised premises. The parties shall defend, indemnify and hold the other, and its members, managers, agents and/or employees, harmless from and against any loss, liability, claim or expense including, without limitation, court costs and reasonable attorneys fees, suffered or incurred by the other and/or its members, managers, agents and employees and their successor(s)-in-interest, directly or indirectly, as a consequence of any claim, action, suit, or proceeding by any persons or entities for the recovery of any brokerage commission or other such compensation with respect to this Lease.

## 60. MECHANIC'S LIENS

A.     Tenant shall have no power to do any act or make any contract which may create or be the basis of any lien upon the fee interest of Landlord, the demised premises or the real property on which it is located, it being agreed that should Tenant cause any alterations, changes, additions, improvements or repairs to be made to the demised premises, or materials furnished or labor performed therein or thereon, neither Landlord nor the demised premises nor the real property on which it is located shall, under any circumstances, be liable for the payment of any expenses incurred or for the value of any such work done or materials furnished, and that all such alterations, changes, additions, improvements or repairs and all such labor and materials shall be at Tenant's sole expense, and Tenant shall be solely responsible to all contractors and subcontractors furnishing labor and materials to the demised premises for or on behalf of Tenant.

B.     Tenant shall not suffer or permit any mechanic's liens to be filed against Landlord's fee ownership of the demised premises or the real property on which it is located nor against Tenant's leasehold interest in the demised premises, by reason of any work, labor, services or materials supplied or claimed to have been supplied to or on behalf of Tenant. If any mechanic's lien shall at any time be filed against the demised premises or the real property on which it is located as a result of Tenant's performance of, arranging for, or consenting to such work, labor, services or materials, Tenant shall, at it sole cost and expense, cause same to be canceled and discharged of record by surety bond or otherwise within sixty (60) days after the date of filing of such lien, and Tenant shall indemnify and hold Landlord harmless from and against any claim, liability, loss, cost, damage or expense resulting there from or by reason thereof. Tenant shall also defend, on behalf of Landlord and at Tenant's sole cost and expense, any action, suit or proceedings which may be brought thereon or for the enforcement of such lien by foreclosure or otherwise, and Tenant shall pay any damages and satisfy and discharge any judgment entered thereon and hold Landlord harmless from and against any claim or damage resulting there from.

C.     If Tenant shall fail to discharge such mechanic's lien within the aforesaid period, then, in addition to any other right or remedy Landlord, Landlord may, but shall not be obligated to, discharge such mechanic's lien either by paying the amount claimed to be due or procuring the discharge of lien by deposit in court or bonding or otherwise, and in any event, Landlord shall be entitled, if Landlord so elects, to compel the prosecution of an action for the foreclosure of such mechanic's liens by the lienor and to pay the amount of the judgment, if any, in favor of the lienor, with interest, costs and allowances.

D.     Any amount paid by Landlord for any of the aforesaid charges, and all reasonable legal and other expenses of Landlord incurred in defending any such action or in procuring the discharge of such liens, with all necessary disbursements in connection therewith, shall be charged to Tenant as Additional Rent and shall be paid be Tenant within fifteen (15) days after written demand by Landlord.

Case 1:20-cv-06369-FB-TAM  Document 86-5  Filed 12/10/23  Page 62 of 74 PageID #: 1644

## 61. NOTICES

**A.** All notices required or desired to be given to Landlord pursuant to this Lease shall be in writing, and given in person or by certified mail, return receipt requested, or by overnight courier (using a recognized courier with a national reputation such as Federal Express), to Landlord at 86-22 Broadway, 2nd Floor, Elmhurst, NY 11373.

**B.** All notices required or desired to be given to Tenant pursuant to this Lease shall be in writing, given in person or by certified mail, return receipt requested, or by overnight courier (using a recognized courier with a national reputation such as Federal Express), to Tenant at the demises premises.

**C.** Either party may, by notice given pursuant to this Article, designated a different address or addresses for notices intended for it under this Lease, provided, however, that such notice shall only be deemed given upon actual receipt by the addressee.

**D.** Except as set forth in the preceding paragraph, all notices given hereunder in the manner specified in this Article shall be deemed received (i) upon receipt, if sent by hand, (ii) three (3) business days after deposit, postage prepaid, in a United States post office station or letter box within the continental United States, if sent by certified mail, return receipt requested; or (iii) on the next business day after deposit with a recognized overnight courier, if sent by overnight courier.

**E.** To the extent this provision conflicts with any applicable statue governing the giving of notice, notice shall be given in accordance with such applicable statue.

## 62. CONDEMNATION

**A.** If title to the entire demised premise shall be taken or condemned in an eminent domain or similar proceeding, this Lease shall terminate and expire on the date that title vests in the condemning authority. In such event, the rental and all other charges to be paid by Tenant hereunder shall be apportioned and paid to such date. Tenant shall have no claim against Landlord or the authority for the value of any unexpired term of this Lease or of the leasehold value of Tenant's interests in the demised premises. In the event of a taking or condemnation of the entire demised premises, the entire amount of any condemnation award or other compensation paid on account of such taking shall be paid to and shall remain the sole property of Landlord. Nothing herein shall be construed to prohibit Tenant's asserting and prosecuting any separate claim allowed by law in consequence of such condemnation, provided the award payable to Landlord or Landlord is not reduced thereby.

**B.** In the event that part of the demised premises shall be taken in any such proceeding, this Lease shall remain in full force and effect, except that if the total ground floor area of the structure on the demised premises after such taking is reduced by more than twenty-five (25%) of the original ground floor area, then either Landlord or Tenant may terminate this Lease by giving to the other party not less than fifteen (15) days notice of such termination within thirty (30) days after notice of such taking or condemnation. Upon such termination of this Lease, the rent shall be apportioned as of the date of termination, and Tenant shall surrender and redeliver the demised premises to Landlord. If this Lease is not terminated and continues in effect after such taking or condemnation of part of the demised premises, the description of the demised premises shall thereafter be deemed not to include the part of the demised premises taken or condemned. If any portion of the demised premises is taken and this Lease is not terminated and continues in effect, then the Base Rent payable for the remainder of the term of this Lease shall be reduced, effective as of the date that title to the part taken passes to the condemning authority, in the same ratio as the floor area so taken bears to the original floor area of the building on the demised premises existing on the Commencement Date. The entire amount of any condemnation award or other compensation paid on account of such taking shall belong to the Landlord. Tenant shall have no claim against Landlord or against the proceeds of any award paid on account of such taking by reason of any partial taking or condemnation affecting the demised premises. Notwithstanding the foregoing, Tenant shall not be precluded from prosecuting against the condemning authority any separate claim it may have for any loss, cost, damage or expense incurred by Tenant by reason of such taking or condemnation, as allowed by law provided that the award payable to Landlord is not reduced thereby.

**C.** In the event Tenant receives any notice of any taking or condemnation proceeding affecting the demised premises, Tenant shall promptly notify Landlord as to the same. For the purpose of this Lease, all amounts paid pursuant to any agreement in, or in lieu of, any condemnation or other eminent domain proceedings affecting the demised premises shall be deemed to constitute an award made in such proceeding.

## 63. DEFAULT

**A.** In addition to the events of default specified in Article 17 of the printed portion of this Lease, the occurrence of any one or more of the following events shall constitute a default by Tenant under this Lease:

(1) If Tenant shall fail to pay any installment of Base Rent or Additional Rent as when the same shall become due and payable;

(2) If Tenant shall fail to perform or comply with any of the terms, covenants, agreements, conditions or provisions of this Lease;

(3) If Tenant shall make any alteration, addition or improvement to the demised premises, except as expressly permitted hereunder;

(4) If Tenant shall attempt to assign, mortgage, sublet, pledge, or otherwise encumber, transfer or convey this Lease or any interest therein, except as expressly permitted hereunder;

(5) If Tenant shall use or occupy or permit the use and occupancy of the demised premises for any purpose not expressly permitted hereunder; or

FILED: QUEENS COUNTY CLERK 02/12/2021 03:50 PM INDEX NO. 703462/2021

NYSCEF DOC. NO. 1    Case 1:20-cv-06369-FB-TAM   Document 86-5   Filed 12/10/23   Page 63 of 74 PageID #: 1645   RECEIVED NYSCEF: 02/12/2021

(6) If there shall be any dissolution or liquidation of Tenant, or if Tenant shall make an assignment for the benefit of creditors.

B.    If any event of default enumerated in this Article or in Article 17 of the printed portion of the Lease occurs, Tenant shall cure such default within ten (10) days (except if the Tenant fails to pay an installment of base rent and additional rent as and when same becomes due and payable, Landlord shall be required to give three (3) days to cure such default) from the date which Landlord gives Tenant written notice to cure, specifying the nature of such default, or, if such default is not a monetary payment default and cannot be reasonably cured within such ten (10) day period, Tenant shall promptly proceed in good faith to cure such default and thereafter prosecute the curing of such default with due diligence and actually complete such cure within thirty (30) days after Landlord's initial written notice of default.

C.    If Tenant fails to cure any default within the ten (10) day cure period provided for in this Article, or if Tenant shall not have diligently proceeded in good faith to cure any non-monetary default which could not reasonably have been cured within such period, Landlord may, in addition to the remedies specified in Article 17 of the printed portion of this Lease and any other remedies specified elsewhere in this Lease or otherwise existing, exercise any of the following rights without further notice or demand of any kind to Tenant or any other person, except as required by applicable provisions of law:

(1)    Landlord may terminate this Lease and the Tenant's right to possession of the demised premises by written notice to Tenant, effective on a date specified in such notice, but not less than three (3) days from the mailing of such notice; and to re-enter the Demised Premises, take possession thereof and remove all persons therefrom, following which Tenant shall have no further claim thereon or under this Lease; or

(2)    Landlord may, without terminating this Lease, terminate Tenant's right to possession if the demised premises, and re-enter the demised premises and occupy the whole or any part thereof for and on account of Tenant and collect any unpaid rentals and other charges which have become payable, or which may thereafter become payable; or

(3)    Landlord may, even though it may have re-entered the demised premises in accordance with subparagraph (2) of paragraph C of this Article, thereafter terminate this Lease as specified in subparagraph (1) of paragraph C of this Article.

If Landlord re-enters the demised premises under the provisions of subparagraph (2) of paragraph C of this Article, Landlord shall not be deemed to have terminated this Lease or have accepted a surrender thereof by any such re-entry, unless Landlord shall have notified Tenant in writing that it has elected to terminate this Lease and Tenant's right to possession. Tenant further covenants that the service by Landlord of any notice pursuant to any applicable unlawful detainer and the surrender of possession of possession pursuant to such notice shall not be deemed to be a termination of this Lease unless Landlord elects to the contrary in writing at the time of, or at any time subsequent to, the serving os such notice. In the event of any re-entry or taking possession of the demised premises as aforesaid, Landlord shall have the right, but not the obligation, to remove therefrom all or any part of the merchandise, fixtures, or personal property located therein and place the same in storage at a public warehouse at the expense and risk of Tenant. The rights and remedies given to Landlord in this Article shall be in addition and supplemental to all other rights or remedies which Landlord may have under this Lease or any applicable law.

If Landlord shall terminate either this Lease or Tenant's right to possession of the demised premises as herein provided, Tenant shall quit and peacefully surrender the demise premises to Landlord. If Tenant shall fail to surrender the demised premises to Landlord, Landlord may, by summary proceeding or by any lawful action or proceeding, remove such persons or property from the demised premises. In any such events, Landlord shall have the right to re-enter the demised premises and to repossess and enjoy the same. Such rights of re-entry shall be in addition to any other right or remedy which Landlord may have by reason of this Lease, at law or in equity.

E.    In the event of termination either of this Lease or Tenant's right to possession of the demised premises as herein provided, or in the event of any entry or re-entry by Landlord, whether by summary proceeding or otherwise, Tenant shall remain liable under this Lease for the payment of all rentals and the observance and performance of all other covenants on its part to be performed. In such event, Tenant shall remain liable for the payment of all installments of Base Rent, Additional Rent, and other charges which would have become due and payable hereunder had this Lease not been terminated. Tenants liability hereunder shall be deemed to continue whether the demised premises be relet or remain vacant. Landlord shall have the right to lease or let the demised premises or any portion thereof, for such periods of time as such rentals and for such use and upon such covenants and conditions as Landlord may elect. Landlord shall apply the net rentals or proceeds of such letting first to the payment of Landlord's expenses, including, but not limited to, attorneys fees in dispossessing Tenant and the costs or expenses of making such improvements, alterations or remodeling the demised premises as may be necessary in order to enable Landlord to relet the same. Landlord shall next apply the net rentals to the payment of any brokerage commissions or other necessary expenses of Landlord in connection with such reletting, including, but not limited to, attorneys' fees. The balance, if any, shall be applied by Landlord monthly on account of the rents and other sums due or payable by Tenant hereunder. Landlord reserves the right to commence any action or proceeding which Landlord deems appropriate for the recovery of any deficits remaining unpaid, without being obligated to await the end of the term originally demised hereby for final determination of Tenant's account. For the purposes of any such action or proceeding, all monetary or other obligations of Tenant shall be deemed to accelerate to become due upon the date that this Lease shall cease and terminate as herein provided. The commencement or maintenance of any one or more actions shall not bar Landlord from the bringing other or subsequent actions for other accruals of Base Rent, Additional Rent, or other charges or moneys due from Tenant to Landlord under this Lease in accordance with this Article. Landlord shall have no liability to Tenant for any failure to relet the demised premises or any part thereof, or for any failure to collect any rent to do upon such reletting.

F.    Under any of the circumstances in which Landlord shall have the right to hold Tenant liable under this Lease for the payment of Base Rent or Additional Rent, Landlord may elect in lieu of holding Tenant so liable, to recover liquidated damages against Tenant, as damages for loss of the bargain and did not as a penalty. Liquidated damages shall be an amount equal to the difference between the Base Rent, Additional Rent and other charges reserved hereunder for the period that otherwise would have constituted the balance of the term and the rental value of the demised premises at the time of such election

for such period, both discounted to present worth, all of which will be immediately due and payable by Tenant to Landlord. Nothing herein contained, however, shall limit or prejudice the right of Landlord to prove in any proceeding and obtain as liquidated damages an amount equal to the maximum allowed by any statute or rule of law in effect at the time. Tenant agrees to pay, in addition to the rental and other sums agreed to be paid hereunder, such additional sums as the court may adjudge reasonable as attorneys' fees in any successful suit or action instituted by Landlord to enforce the provisions of this Lease or the collection of rent or other sums due Landlord hereunder.

G.    No receipt of moneys by Landlord from Tenant after cancellation or termination of this Lease, in any manner as herein provided, shall reinstate, constitute or extend the term, operate as a waiver of the right of Landlord to enforce the payment of Base Rent and Additional Rent then due or thereafter falling due, or to recover possession of the demised premises by proper suit, action, proceeding or other remedy.

H.    In the event of a breach or threatened breach by Tenant of any of the agreements, terms, covenants or conditions hereof, Landlord shall have, in addition to all of Landlord's other rights and remedies, the right of injunction to restrain the same and the right to invoke any remedy which Landlord may have at law or inequity.

I.    The enumeration anywhere in this Lease of certain rights or remedies of Landlord shall not be construed to be in the exclusion or substitution of any other rights conferred under this Lease or applicable law. All of the rights and remedies herein granted in the Landlord shall be construed as creating distinct, separate and cumulative remedies, and no one of them, whether exercised by Landlord or not, shall be deemed to being exclusion of any of the others.

### 64. ADDITIONAL REMEDIES OF LANDLORD

In addition to Landlord's other remedies the Lease in the event of any default, re-entry, expiration and/or dispossess by summary proceedings or otherwise, Tenant shall, at Landlord's sole option, pay Landlord, as liquidated damages for the failure of Tenant to observe and perform said Tenant's covenants herein contained, an amount by which the present value of the rent reserved hereunder for the unexpired portion of the initial term of this Lease exceeds the fair and reasonable rental value of the demised premises for the same period. In the computation of such liquidated damages, the difference between any installment of rent becoming due hereunder after the date of termination and the fair and reasonable rental value of the demised premises for the period for which such installment was payable shall be discounted to the date of termination at the rate of four (4) percent per annum.

### 65. ASSIGNMENT AND SUBLETTING

A.    Tenant shall not, whether voluntarily, involuntarily, or by operation of law or otherwise: (a) sublet the demised premises in whole or in part; (b) assign or otherwise transfer this Lease or the term and estate hereby granted; or (c) mortgage, pledge, hypothecate or otherwise encumber this Lease or the demised premises or any part thereof in any manner whatsoever, without in each instance obtaining the prior written consent of Landlord, which shall not be unreasonably withheld or delayed in accordance with the following terms and conditions:

1.    At the time Tenant requests Landlord's consent to assign this Lease or sublet all or a portion of the demised premises, and at the time said assignment or sublease is to take effect, Tenant shall not be in default of any of its monetary obligations or any of its material non-monetary obligations under this Lease beyond any applicable notice and cure periods;

2.    Any assignment or sublease shall be only for the purpose permitted by this Lease;

3.    In Landlord's reasonable judgment, the proposed assignee or subtenant shall have sufficient financial worth and an adequate credit history given the nature of the responsibilities involved and Landlord shall be furnished with adequate proof thereof;

4.    In the case of an assignment, the assignee shall assume and agree to perform all of the terms, covenants, conditions and obligations on the part of Tenant to be observed and performed from and after the effective date of such assignment;

5.    Prior to the effective date of any assignment or sublease, a duplicate original assignment and assumption agreement duly executed and acknowledged by Tenant and the proposed assignee (in the case of an assignment), or a duplicate original sublease agreement duly executed by Tenant and the proposed subtenant (in the case of an sublease) shall be delivered to Landlord; and

6.    In the event of assignment or sublease, Tenant shall pay Landlord an assignment/sublet fee in an amount of $1,500.00 in effect at the time the assignment or sublease for preparation for assignment or sublease to take effect.

7.    Prior to the effective date of any such assignment or sublease, and as a condition to the validity and effectiveness thereof, Tenant shall, in addition to satisfying all other requirements hereunder: In the event the proposed assignee or subtenant is a corporation, partnership, limited liability company, or other entity, deliver to Landlord a possession guaranty (personal guaranty) in form and substance acceptable to Landlord executed by such of the principals of the assignee or subtenant in their individual capacities as Landlord shall designate.

B.    If this Lease is assigned without the consent of the Landlord, in violation of this Article, Landlord may, without prejudice to any of Landlord's rights and remedies, collect rent directly from the assignee. If the demised premises or any part thereof are sublet or used or occupied by anyone other than Tenant in violation of this Article, Landlord may, without prejudice to any of Landlord's rights and remedies, collect rent directly from such subtenant or occupant. In either event, Landlord may apply the net amount collected to the Base Rent and Additional Rent reserved under this Lease, but no such assignment, subletting, occupancy or collection shall be deemed a waiver of any of the provisions of this Article, or the acceptance of the assignee, subtenant, or occupant as tenant, or a release of Tenant from the performance of any of Tenant's obligations under this Lease.

C.      No assignment shall be effective unless and until the assignee shall have executed, acknowledged, and delivered to Landlord an original agreement.in form and substance satisfactory to Landlord whereby the assignee shall assume and agree to perform all of the obligations of this Lease on the part of Tenant to be performed and observed and whereby the assignee shall agree that the provisions of this Article shall, notwithstanding such assignment, continue to be binding on it in respect of all future assignments.

D.      Whenever Tenant shall submit to Landlord any plan, application, agreement, proposal, or other document for Landlord's consent or approval (except when submitted at Landlord's request and such submission to Landlord is not required under the terms of this Lease), and Landlord shall require the opinion of its counsel, architect, engineer, or other professional as to the form or substance thereof, Tenant shall pay the reasonable fee of such counsel, architect, engineer, or professional person for reviewing the same.

E.      Tenant shall conduct its business exclusively inside the demised premises and no business of any kind shall be conducted outside of the demised premises. Tenant agrees that a violation of this paragraph shall be deemed a material and substantial breach of this Lease.  Notwithstanding the preceding sentence and subject to all applicable laws, codes, rules and regulations, Tenant shall be permitted to install one or more automatic teller machines through the exterior wall of the demised premises.  In addition, subject to all applicable laws, codes, rules and regulations, Tenant may install security-related antennae on the roof and parapet of the demised premises provided same do not project over the building line and do not adversely affect adjacent tenants in the building.

F.      No failure or delay of either party in the exercise of any right or remedy given to such party hereunder or the waiver by any party of any condition hereunder for its benefit (unless the time specified herein for the exercise of such right or remedy has expired) shall constitute a waiver of any other right or remedy nor shall any single or partial exercise of any right or remedy preclude any other or further exercise thereof or any other right or remedy.  No waiver by either party of any breach hereunder or failure or refusal by the other party to comply with its obligations shall be deemed a waiver of any other or subsequent breach, failure or refusal to so comply.

G.      Tenant and Landlord, and each of the persons executing this Lease on behalf of Tenant and Landlord, do hereby warrant that the party for which they are executing this Lease (i) is a duly authorized and existing person or entity, (ii) is qualified to do business in the State of New York, and (iii) has full right and authority to enter into this Lease, and that any person signing on behalf of such party is authorized to do so.  Upon either party's request, the other party shall provide evidence reasonably satisfactory to the requesting party confirming the foregoing warranties.

H.      This Lease shall be interpreted and enforced in accordance with the laws of the State of New York and shall be binding on Tenant and its successors and assigns.

## 66. NO ORAL CHANGES

This Lease may not be changed or terminated orally.

## 67. WAIVER OF TRIAL BY JURY

A.      It is mutually agreed by and between Landlord and Tenant that the respective parties hereto shall and they hereby do waive trial by jury in any action, proceeding or counterclaim brought by either of the parties hereto against the other on any matters whatsoever arising out of or in any connected with this Lease, including without limitation, the relationship of Landlord and Tenant, Tenant's use of or occupancy of the Demised Premises, and any emergency statutory or any other statutory remedy.

B.      Regardless of the nature or ground of any summary or ground of any summary proceeding brought by Landlord to recover possession of the Demised Premises, Tenant will not interpose any counterclaim of whatever nature or description in any such proceeding.

## 68. NO WAIVER

The failure of Landlord to seek redress of violation of, or to insist upon the strict performance of any covenant or condition of this Lease or of any of the Rules or Regulations set forth or hereafter adopted by Landlord, shall not prevent a subsequent act which would have originally constituted a violation from having all the force and effect of an original violation. The receipt by Landlord of Minimum Base Rent and Additional Rent with knowledge of the breach of any covenant of this Lease shall not be deemed a waiver of such breach and no provision of this Lease shall be deemed to have been waived by Landlord unless such waiver be in writing signed by Landlord. No payment by Tenant or receipt by Landlord of a lesser amount than the monthly Minimum Base Rent and Additional Rent herein stipulated shall be deemed to be other than on account of the earliest stipulated Minimum Base Rent and Additional Rent, nor shall any endorsement or statement of any check or any letter accompanying any check or payment as rent be deemed an accord and satisfaction and Landlord may accept such check or payment without prejudice to Landlord's right to recover the balance of such rent or pursue any other remedy in the Lease provided. No act or thing done by Landlord or Landlord's agents during the Term shall be deemed an acceptance of a surrender of the Demised Premises and no agreement to accept such surrender shall be valid unless in writing signed by Landlord. No employee of Landlord or Landlord's agent shall have any power to accept the keys of the Demised Premises prior to the termination of the Lease and the delivery of keys to any such agent or employee shall not operate as a termination of the Lease or a surrender of the Demised Premises.

## 69. LANDLORD'S RIGHT TO PERFORM COVENANTS OF TENANT

If Tenant shall default in the observance or performance of any term or covenant of Tenant's part to be observed or performed under or by virtue of any of the terms or provisions in any article of this Lease, then, unless otherwise provided elsewhere in this Lease, Landlord may immediately or at any time thereafter, on ten (10) days notice except in an emergency, perform the obligation of Tenant thereunder, and if Landlord, in connection therewith or in connection with any default by Tenant in the covenant to pay rent, including Minimum Base Rent and Additional Rent, hereunder, makes any expenditures or incurs any obligations for the payment of money, including but not limited to attorney's fees, in instituting, prosecuting or defending any action or proceeding, such sums so paid or obligations incurred with interest and costs shall be deemed to be Additional Rent hereunder and shall be paid by Tenant to landlord within five (5) days of rendition of any bill or statement to Tenant therefore, and if Tenant's lease obligations, such sums shall be recoverable by Landlord as damages. In addition, to the extent that Landlord shall pay or incur any expenses in connection with performing the obligations of the Tenant hereunder, then it agrees to reimburse Landlord 150% of the expenses so incurred in order to offset the Landlord's additional overhead expense, etc. as a result of the Tenant's failure to perform covenants that could have or should have been performed without the involvement of the Landlord.

## 70. ACCESS TO PREMISES

Landlord or Landlord's agent shall have the right (but shall not be obligated) to enter the Demised Premises in any emergency at any time, and, at other reasonable times, to examine the same and to make such repairs, replacement and improvement as Landlord may deem necessary and reasonably desirable to the Demised Premises or which landlord may elect to perform following Tenant's failure to make repairs or perform any work which Tenant is obligated to perform under this Lease, or for the purpose of complying with laws, regulations and other directions of governmental authorities. Tenant shall permit Landlord to reasonably use and maintain and replace pipes and conduits in and through the Demised Premises or through the walls, columns and ceilings therein, and to erect new pipes and conduits therein and provided it does not substantially interfere Tenant's use of the demised premises. Landlord may, during the progress of any work in the Demised Premises, take all necessary material and equipment into said premises without the same constituting an eviction nor shall the Tenant be entitled to an abatement of rent while such work is in progress nor to any damages by reason of loss or interruption of business or otherwise.

## 71. SUBORDINATION; ATTORNMENT

This Lease is subject and subordinate to all ground or underlying leases (the "superior leases") and to all mortgages "(the "superior mortgages") which may now or hereafter affect such leases or the Real Estate and to all renewals, modifications, consolidations, replacements and extensions of any such superior leases and superior mortgage. This clause shall be self-operative and no further instrument of subordination shall be required by any ground or underlying lease or by any mortgagee, affecting any lease or the Real Estate. In confirmation of such subordination, Tenant shall, at its sole costs and expense, execute promptly and certificate that Landlord may request, and hereby appoints Landlord its attorney-in-fact to execute any such instrument on behalf of Tenant. In the extent, in the event and hereby, and such other terms at the period of the other rent, those to which it is more of course of execution, and i.e. to collected it estate, without provision, unless colored valid and be enforced to the full extent permitted by law.

## 72. RELEASE

The Landlord and the Tenant hereby release the other party (which term as used in this Article includes such party's employees, agents, officers, shareholders and directors) from all liability, whether for negligence or otherwise, in connection with any loss covered by insurance policies which the releaser carries with respect to the demised premises or any interest or property therein or thereon (whether or not such insurance is required to be carried under this Lease), but only to the extent that such loss is collectible under such insurance policies. Such release is also conditioned upon the inclusion of the applicable policy or policies of a provisions whereby any such release shall not adversely affect said policies or prejudices any right of the releaser to recover thereunder. Each party agrees that its insurance policies aforesaid will include a provision so long as the same shall be obtainable without extra cost, or if extra cost shall be charged therefor, so long as the other party is willing to pay such extra cost. If extra costs shall be chargeable thereof, the holder of the policy shall advise the other party of the amount of the extra cost, and the other party at its election may pay the same, but shall not be obligated to do so.

## 73. RIGHTS AND REMEDIES

Each right and remedy in this Lease will be cumulative and will be in addition to every other right or remedy in this Lease or existing at law or in equity or by statue or otherwise, including without limitation, suits for injunctive relief and specific performance. The exercise or beginning of the exercise by the Landlord of any such rights or remedies will not preclude the simultaneous or later exercise by the Landlord of any other such rights or remedies. All such rights and remedies are cumulative and nonexclusive.

## 74. INVALIDITY OF PARTICULAR PROVISIONS

If any provision of this Lease or the application thereof to any person or circumstances shall to the extent be invalid or the unenforceable, the remainder of this lease, or the application of such provision to persons and circumstances other than those to which it is invalid or unenforceable, shall not be affected thereby, and each provision to persons and circumstances other than those to which it is invalid or unenforceable, shall not be affected thereby, and each provision of this Lease shall be valid and be enforced to the full extent permitted by law.

## 75. TENANT'S CERTIFICATE

Supplementing the provisions in furtherance of Article 38 hereof, at any time and from time to time, within ten (10) days after request by the Landlord, the Tenant shall certify to the Landlord, any mortgagee, assignee of the mortgage, any purchaser, or any other person specified by the Landlord, in a writing duly executed and acknowledged, to the effect that (a) the Tenant is in possession of the demised premises; (b) this Lease is unmodified and in full force and effect (or if there has been

modification, that the same is in full force and effect as modified and setting forth such modification); (c) whether or not there are then existing set-offs and defenses against the enforcement of any right or remedy of the Landlord, or any duty or obligation of the Tenant (and if so, specifying the same); and (d) the dates, if any, to which any rent or other charges have been paid in advance.

## 76. LANDLORD'S RESERVATION

The Owner hereby reserved the following rights and privileges:

(A) An easement to permit all existing wires, pipes, lines and conduits now running on, under, and over the demised premises to remain in the location in which they are situated.

(B) The right to install new wires over, and new pipes, wires and conduits under the demised premises.

(C) The right to use any of the foregoing for the purpose for which they are intended.

(D) The right to enter the demised premises from time to time to repair, replace and enlarge or alter the foregoing.

## 77. ENFORCEABILITY

If any provision of the Lease shall be held invalid or unenforceable, such invalidity or unenforceability shall affect only such provision and shall no in any manner affect or render invalid or unenforceable any other provision of this Lease and this Lease shall be enforced as if such invalid or unenforceable provision were not contained herein.

## 78. AGENT'S NOTICES OR COMMUNICATIONS

Whenever the Landlord is required or desires to send any notice or other communication to the Tenant under or pursuant to this Lease, it is understood and agreed that such notice or communication, if sent by the Landlord's agent (of whose agency the Landlord shall have advised the Tenant), or attorney, shall, for all purposes, be deemed to have been sent by the Landlord.

## 79. SUBMISSION OF LEASE TO TENANT NOT BINDING UPON LANDLORD

Neither the submission of this Lease form to, nor the execution thereof by, the Tenant shall constitute an offer by the Landlord to lease the space herein described as the demised premises to the Tenant. This Lease form shall not be or become binding upon the Landlord to any extent or for any purpose unless and until it is executed by the Landlord and a fully executed copy thereof is delivered to the Tenant.

## 80. EXTERMINATING SERVICES

Tenant, at its own cost and expense, shall use all possible diligence in accordance with the best prevailing methods, for the prevention and extermination of vermin, rats or mice in the demised premises, and if, in the reasonable judgment of the Landlord, Tenant shall fail to do so or shall fail to adopt and employ the most improved methods therefor within ten (10) days from receipt of a written notice from Landlord, Landlord shall have the right to incur any disbursements necessary or advisable, in its judgment, to effect such purpose, and any sums so disbursed by Landlord shall be repayable to it by Tenant in accordance with statements thereof to be rendered by Landlord to Tenant, and, upon failure to pay, the same within ten (10) days after presentation thereof, the same shall be added to and form a part of the next or any subsequently recurring installment of rent, and shall be collectible as such. Tenant shall exterminate the basement and common areas one time per month. Tenant will exterminate the interior of it's premises one time per month.

## 91. REPAIRS BY LANDLORD

Other than in the event of an emergency, the Landlord, its agents, servants, employees, licensees, contractors, subcontractors and materialmen shall have the right, upon reasonable notice and at reasonable times, to enter in or upon any part of the demised premises during normal business hours for the purpose of drawing, placing, connecting, changing, altering and repairing steam pipes, steam lines, heating and electrical wires, duct work, television cables, fuels, fixtures, appliances and equipment for use in the demised premises or any part of the building, without any interference on the part of the Tenant whatsoever. Landlord will use its best efforts to perform such work at such times as to avoid unreasonable interference with Tenant's business. In the event of an emergency, which shall be determined in the reasonable judgment of the Landlord, the Landlord shall be permitted to enter the demised premises at any time without prior notice. Tenant agrees that it will not make any claim whatsoever as against Landlord by reason of any interference, damage or inconvenience incurred by or resulting therefrom directly or indirectly, nor will it make any claim for any apportionment or abatement of rent by reason thereof.

## 82. END OF TERM.

A. **Surrender of Demised Premises.** Upon the expiration or other termination of the Term, Tenant shall quit and surrender to Landlord the Demised Premises, broom clean, in good order and condition, ordinary wear and tear and damage for which Tenant is no responsible under the terms of this Lease excepted, and Tenant shall remove all Alterations and property pursuant to Article 5 hereof. Tenant's obligation to observe or perform this covenant shall survive the expiration or sooner termination of the Term. If the last day of the Term or any renewal thereof falls on Saturday or Sunday, this Lease shall expire on the business day immediately preceding.

B. **Restoration of Demised Premises.** All furniture, furnishings and movable fixtures and removable partitions installed by Tenant must be removed from the Demised Premises by Tenant, at Tenant's expense, prior to the Expiration Date. All Alterations in and to the Demised Premises which may be made by Landlord or Tenant prior to and during the Term, or any renewal thereof, shall become the property of Landlord upon the Expiration Date or earlier end of the Term or any renewal thereof, and shall not be removed from the Demised Premises by Tenant unless Landlord, at Landlord's option by notice to Tenant prior to the Expiration Date, elects to have them removed from the Demised Premises by Tenant, in which event the same shall be removed from the Demised Premises by Tenant, at Tenant's expense, prior to the Expiration Date. In the event Landlord elects to have Tenant remove such Alterations, Tenant shall repair and restore in a good and workmanlike manner to Building standard

original condition (reasonable wear and tear excepted) any damage to the Demised Premises or the Building caused by such removal. Any of such Alterations or other property not so removed by Tenant at or prior to the Expiration Date or earlier termination of the Term shall become the property of Landlord, but nothing herein shall be deemed to relieve Tenant of responsibility for the cost of removal of any such Alterations or other property which Tenant is obligated to remove hereunder.

C.   **Holdover by Tenant.** Tenant acknowledges that the damage to Landlord resulting from any failure by Tenant to timely surrender possession of the Demised Premises as aforesaid will be substantial, will exceed the amount of the monthly installments of the rent theretofore payable hereunder, and will be impossible to accurately measure. Such damage, by way of example, may consist of, but not be limited to, costs (including reasonable attorneys' fees) and liability resulting from such failure to timely surrender, including claims made by any succeeding tenant founded upon such failure to surrender, and lost profits to Landlord resulting therefrom. Tenant therefore agrees that if possession of the Demised Premises is not surrendered to Landlord upon the Expiration Date or sooner termination of the Term, in addition to any other rights or remedy Landlord may have hereunder or at law or equity, Tenant shall pay to Landlord for each month and for each portion of any month during which Tenant holds over in the Demised Premises after the Expiration Date or sooner termination of this Lease, a sum equal to two (2) times the then escalated rent the aggregate of that portion of the Rent and the additional rent which was payable under this Lease during the last month of the Term without set-off or deduction. The parties agree that same is a fair and reasonable liquidated damage calculation, because in the event Tenant fails to surrender the Demised Premises, Landlord will sustain damages in an amount that is not currently, readily ascertainable. Nothing herein contained shall be deemed to permit Tenant to retain possession of the Demised Premises after the Expiration Date or sooner termination of this Lease and no acceptance by Landlord of payments from Tenant after the Expiration Date or sooner termination of the Term shall be deemed to be other than on account of the amount to be paid by Tenant in accordance with the provisions of this Article 24, which provisions shall survive the Expiration Date or sooner termination of this Lease.

LANDLORD:

8225 Queens Mansion LLC.

By: _____

TENANT:

Simply Milan, Inc.

By: X Xi a
XIAO MEI LI, PRESIDENT

## GOOD GUY GUARANTY

**GUARANTY OF LEASE** for value received and in consideration of an inducement for the granting execution and delivery of certain lease dated as of August 10, 2015 by and between 8225 Queens Boulevard LLC, as Landlord, and Simply Milan, Inc., as Tenant for the premises known as 82-25 Queens Boulevard, Unit 1A & 1B, Elmhurst, NY 11373.

Xiao Mei Li (Guarantor), (SS no. _____ his or her successors and assignees hereby guarantees absolutely unconditionally landlord the full payment and performance of (1) All obligation of tenant pursuant to the lease including without limitation, base rent and additional rent for such period up to assignment or expiration of the lease or (2) Upon the date that the tenant delivers vacant possession of the premises to the landlord after giving THREE (3) months prior written notice to Landlord in the condition required by the lease together with declaration signed by the tenant to costs incurred by landlord in seeking termination of the lease and recovering vacant possession of the premises including without limitation reasonable attorney's fees and disbursements. (3) The cost incurred to satisfy any mechanics liens arising out of any improvements or alterations performed by Simply Milan, Inc. in no event shall the amount paid by the guarantor pursuant to this guarantee be reduced by the amount of the security deposit held by the landlord.

In order to induce the Landlord to enter into the foregoing Lease Agreement and for other valuable considerations, the receipt whereof is hereby acknowledged, the undersigned hereby makes the following guarantee and agreement with and in favor of Landlord and its respective legal representations and assigns.

This Guaranty shall be a continuing guaranty, and the liability of Guarantor hereunder shall in no way be affected, modified or diminished by reason of (a) any renewal, modification amendment or extension of the lease , or (b) any modification or waiver of or change in any of the terms, covenants and conditions of the Lease by Landlord and Tenant, or (c) any extension of the time that may be granted by Landlord to Tenant (d) any consent, indulgence or other action , inaction omission under or in respect of the Lease, or (e) any dealings or transactions or matter or thing occurring between Landlord and Tenant, or (f) any bankruptcy, insolvency, reorganization, liquidation, arrangement, assignment for the benefit of creditors, receivership, trusteeship or similar proceeding affecting Tenant, whether or not notice of any is given to Guarantor.

No delay on the part of the landlords in exercise any rights, power, or privilege under this guaranty or failure to exercise the same shall operate as a waiver of or otherwise affect in any way any such power right or privilege nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right power or privilege, no waiver or modification of any provision of this guaranty nor any termination of this guaranty shall be affective unless in writing signed by the landlord nor such any such waiver be applicable except in the specific instance in which it is given.

The provisions of this Guaranty and/or the aforementioned notice, surrender and delivery of the Premises shall not be construed to diminish, limit, or otherwise reduce any liability or obligation that Tenant would otherwise have under the Lease.

2.    This guarantee is absolute and unconditional and is a guarantee of payment.

The Guarantor hereto waive all notice of non-payment, non-performance, non-observance or proof, or notice, or demand, whereby to charge the undersigned therefor, all of which the undersigned expressly waive and expressly agree that the validity of this Agreement, and the obligation of the Guarantor(s) hereto shall in no way be terminated, affected or impaired by reason of the assertion by

Landlord against Tenant of any of the rights or remedies reserved by Landlord pursuant to the performance of the within Lease. The undersigned further covenants and agrees that this guarantee shall remain and continue in full force and effect, as to any renewal, modification or extension, and during any period when Tenant is occupying the premises as a "statutory tenant". As a further inducement to Landlord to make this Lease and in consideration thereof, Landlord and the undersigned covenant and agree that in any action or proceeding brought by either Landlord or the undersigned against the other on any matters whatsoever arising out of, under, or by virtue of the terms of this Lease or of this guarantee that Landlord and the undersigned shall and do hereby waive trial by jury. Additionally, Guarantor agrees to pay to Landlord, its successors and assigns reasonable attorney's fees incurred in the collection of rent or additional rent by Landlord, its successors or assigns or the enforcement of rights by Landlord under the Lease. Further, Guarantor hereby agrees that it shall in no matter interpose any counterclaim of whatever nature or description whatsoever in any proceeding under the terms of the Lease or this Guarantee. Performance, and enforcement of this guaranty shall be governed by and construed in accordance with the laws of the state of New York.

The Guarantor hereby submits himself to the jurisdiction of the courts of New York in any action or proceeding against the guarantor arising out of this guaranty.

Any notice given pursuant to the provision of this guaranty shall be in writing and shall be given by mailing same by certified mail return receipt requested, and if sent to Landlord at 86-22 Broadway, 2nd Floor, Elmhurst, NY 11373, and to Tenant at the Demised Premises or at such other address as designated by either party by written notice as required herein.

As used herein the terms, successors and signs shall be deemed to include the heirs and legal representative of tenant and guarantor as the case may be. There is more than one guarantor the liability hereunder shall be joint and several. All terms and words used in this guaranty regardless of the number and gender in which they are used shall be deemed to include any other number and any other gender as the context may require.

This guaranty shall terminate upon assignment of the lease provided that all prior rent and additional rent are up to date and there is a new guaranty by the assignee.

This Guarantee shall be construed in accordance with the laws of the State of New York.

IN WITNESS WHEREOF, the undersigned has set his hand as of this 6th day of August, 2015.

_____
Xiao Mei Li

STATE OF NEW YORK ) ss.:
COUNTY OF _NEW YORK_ )

On the 6th day of August in the year 2015 before me the undersigned, a Notary Public in and for said State, personally appeared _XIAO MEI LI_, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

SEAN LIN
NOTARY PUBLIC STATE OF NEW YORK
No. 01LI6227062
Qualified in Queens County
My Commission Expires Aug. 30, 2018

_____
Notary Public

INDEX NO. 703462/2021
Case 1:20-cv-06369-FB-TAM   Document 86-5   Filed 12/10/23   Page 71 of 74 PageID #: 1653
RECEIVED NYSCEF: 02/12/2021

# EXHIBIT D

FILED: QUEENS COUNTY CLERK 02/12/2021 03:50 PM
NYSCEF DOC. NO. 1
INDEX NO. 703462/2021
RECEIVED NYSCEF: 02/12/2021

**ADVANTAGE FORECLOSURE SERVICES, INC.**

Title No. ████████████

**SCHEDULE A**
**DESCRIPTION**

**Block 1542 and Lot 1102**

The unit known as Unit 1B (hereinafter the "Unit") in the premises known as and by Queens Mansion Condominium and located at 82-25 Queens Boulevard, Elmhurst, Queens County, City and State of New York, designated and described as Unit 1B in the Declaration establishing a plan for condominium ownership of the Building and the Land on which it is erected (hereinafter called the "Property") made by 82-25 Queens Mansion LLC under the Condominium Act of the State of New York (Article 9-B of the Real Property Law of the State of New York), dated September 4, 2014, recorded in the Office of the City Register of the City of New York on the 1st day of October, 2014 in CRFN 2014000323486 (hereinafter the "Declaration"), and also designated as Tax Lot 1102 in Block 1542 on the Tax Map of the Real Property Assessment Department of the State of New York, County of Queens.

TOGETHER with an undivided 6.8780% undivided interest for Unit 1B in the common elements of the Property (hereinafter called the "Common Elements").

**Premises known as 82-25 Queens Boulevard, Unit 1B, Elmhurst, New York 11373**

Case 1:20-cv-06369-FB-TAM   Document 86-5   Filed 12/10/23   Page 73 of 74 PageID #: 1655

Exhibit E

| DEFENDANTS | CAPACITY |
|---|---|
| 82-25 Queens Mansion LLC<br><br>3237 214th Place<br>Bayside, NY 11361<br><br>-and-<br><br>82-25 Queens Blvd.<br>Elmhurst, NY 11373 | Owner of Mortgaged Premises; Obligor and Mortgagor by virtue of the Note and Mortgage dated January 11, 2016, described here in Paragraphs 2 and 3, and attached hereto as Exhibit "A" and as part of Exhibit "B". |
| Wing Fung Chau<br>3237 214th Place<br>Bayside, NY 11361 | Guarantor pursuant to the Unlimited Guaranty dated January 11, 2016, guaranteeing performance of 82-25 Queens Mansion LLC pursuant to the Note and Mortgage, described herein in Paragraph 5 and attached hereto as part of Exhibit "B". |
| Simply Milan, Inc.<br>82-25 Queens Blvd.<br>Elmhurst, NY 11373 | Tenant pursuant to the Standard Form of Store Lease dated August 10, 2015, described herein in Paragraph 9 and attached hereto as Exhibit "C". |
| New York State Department of Taxation and Finance<br>Harriman Campus Rd.<br>Albany, NY 12226 | Possible franchise taxes owed by 82-25 Queens Mansion LLC to the State of New York |
| New York City Department of Finance<br>66 John St.<br>2nd Floor<br>New York, NY 10038 | Possible business taxes owed by 82-25 Queens Mansion LLC to the City of New York |
| John Doe #1 through #6, and Jane Doe #1 through #6 | These names being fictitious, it being the intention of Plaintiff to designate any and all occupants, tenants, persons or corporations, if any, having or claiming an interest in or lien upon the premises being foreclosed herein. |

9573-0003

Case 1:20-cv-06369-FB-TAM Document 86-5 Filed 12/10/23 Page 74 of 74 PageID #: 1656

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

U.S. Bank National Association, as Trustee for
Velocity Commercial Capital Loan Trust 2016-1,

Plaintiff,

vs.

82-25 Queens Mansion LLC, et al,

Defendants.

# SUMMONS & COMPLAINT
## FOR MORTGAGE FORECLOSURE

## McCalla Raymer Leibert Pierce, LLC
420 Lexington Avenue, Suite 840
New York, New York 10170
Phone: 347-286-7409
Fax: 347-286-7414
Attorneys for Plaintiff: U.S. Bank National Association, as Trustee for Velocity Commercial Capital
Loan Trust 2016-1
File No. 9573-0003

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the Courts of New York State, certifies that upon information and belief and reasonable inquiry, the contentions contained in the annexed document are not frivolous.

Dated:

Service of a copy of the within _____ is hereby admitted.

Dated:

_____
Attorney(s) for:

PLEASE TAKE NOTICE

☐· that the within a (certified) true copy of a
entered in the office of the clerk of the within named Court on                    20
☐· that an Order of which the within is a true copy will be presented for settlement to the
Hon.                          On of the judges of the within named Court,
At
on                          20   , at
Dated:

9573-0003